COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.

A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

COURT PLAZA NORTH

25 MAIN STREET

P.O. BOX 800

HACKENSACK, NEW JERSEY 07602-0800

(201) 489-3000

FAX (201) 489-1536

————

460 PARK AVENUE
NEW YORK, NEW YORK 10022-1906
(212) 752-8000
FAX (212) 752-8393

Stuart Komrower
Member of the Firm
NJ & NY

REPLY TO HACKENSACK OFFICE

WRITER'S DIRECT LINE:
(201) 525-6331

WRITER'S DIRECT FACSIMILE:
(201) 678-6331

WRITER'S EMAIL ADDRESS:
skomrower@coleschotz.com

February 10, 2006

**VIA ELECTRONIC FILING**

Honorable Donald H. Steckroth, U.S.B.J.
Martin Luther King, Jr. Fed. Bldg. & Cthse., 3rd Floor
50 Walnut St.,
Newark, NJ 07102

   Re: In re NJ Affordable Homes Corp., Case No. 05-60442 (DHS)
      Motion of Unity Bank For Relief From the Order Continuing Injunctive
      Relief In This Action and For Relief From Related Restraints
      (Doc. No. 132)
      Hearing Date: February 6, 2006

Dear Judge Steckroth:

  We are special counsel for Charles M. Forman, Chapter 7 Trustee (the "Trustee") for NJ Affordable Homes Corp. (the "Debtor"). On February 6, 2006, Your Honor conducted a hearing on the motion of Unity Bank ("Unity Bank") for relief from an order previously entered by the United States District Court for the District of New Jersey (the "District Court") on December 6, 2005.

  At the conclusion of the hearing, Your Honor authorized the Trustee to submit additional evidence supporting his argument that the Debtor has an interest in the real property located at 119-121 Watchung Avenue, North Plainfield, New Jersey (the "Property"). On February 8, 2006, the Trustee filed a supplemental response in furtherance of his opposition to Unity Bank's motion. On February 9, 2006, Unity Bank filed a

Cole, Schotz, Meisel, Forman & Leonard, P.A.
   Attorneys at Law

Honorable Donald H. Steckroth, U.S.B.J.
February 10, 2006
Page 2

response to address the Trustee's supplemental submission ("Unity Bank's Supplemental Response").[1]

  The Trustee feels compelled to briefly respond to Unity Bank's Supplemental Response because it obfuscates the issues before the Court and is misleading. Specifically, Unity Bank argues that (a) Unity Bank's lien is valid because Unity Bank could not have known that another entity might have a property interest, and (b) equitable ownership principles do not apply to interests in real property. Both of these arguments woefully miss the mark.

  Notwithstanding Unity Bank expending six of ten pages of its Supplemental Response addressing the validity of its mortgage, as set forth in the Trustee's supplemental brief, the validity of Unity Bank's lien is not an issue before the Court at this time. The issue is whether the Debtor has an interest in the Property. The documentation previously provided to this Court evidencing the interrelationship between Mark Ward ("Ward"), the Debtor and its affiliates was intended to show that an equity interest exists. Whether Unity Bank knew or should have known of that relationship, and the validity and priority of Unity Bank's lien, are issues that will be determined after discovery and in the adversary proceeding that will likely ensue.[2]

---

[1] As to United Bank's "housekeeping", notwithstanding the assertion in Unity Bank's Supplemental Response, Unity Bank did in fact advise that it could not go forward with a deposition on February 13, 2006, and it is for that reason the deposition was adjourned.

[2] Contrary to Unity Bank's contention that it need not investigate matters for its lien to be valid, it also is true that Unity Bank cannot turn a blind eye. Cf. Howard v. Diolosa, 241 N.J. Super. 222, 234 (App. Div. 1990) ("A bank can choose to take property for loan security . . . but only at the risk that its lien will be subject to the equities arising out of the irregular transaction whose likely voidability was revealed to the loan officer by the prospective buyer."). At this time it does not appear that any of the following documents, among others, were provided to Unity Bank: (a) 2002 tax returns, which were a condition to Unity Bank's decision to lend, (b) monthly, quarterly or yearly statements evidencing that Ward actually had funds with the Debtor (or that such funds were segregated in separate accounts), and (c) receipts or other evidence that Ward's allegedly owned properties were receiving sufficient rent to cover the mortgage payments because Ward's income could not provide sufficient cash to cover shortfalls. The Trustee believes that based on Unity Bank's
(continued on next page)

43251/0001-1423535v1

Cole, Schotz, Meisel, Forman & Leonard, P.A.
       Attorneys at law

Honorable Donald H. Steckroth, U.S.B.J.
February 10, 2006
Page 3

      With respect to Unity Bank's other argument, Unity Bank is incorrect when it states that an equitable or resulting trust cannot be created for real property. New Jersey courts have long recognized that equitable interests can be created in real property even if title is in the name of another and even if a written agreement does not exist. See Weisberg v. Koprowski, 17 N.J. 362 (1955) (holding that "resulting trust" was created for real property); Mitchell v. Oksienik, 380 N.J. Super. 119, 129 (App. Div. 2005) ("Although the parties had not entered into a written agreement with regard to the purchase of the real property, formal written agreements are not necessary for a joint enterprise to exist"); Coney v. Coney, 207 N.J. Super. 63, 74 (Chancery Div. 1985) ("I find that the real property in this case was indeed acquired in contemplation of marriage. That contract was not expressed but certainly implied by all of the actions of the parties. . . The Court may impose a resulting trust where one party purchases property with consideration furnished in whole or in part by the other party with the intention by the title holder to hold the title in trust . . .").[3]

      The interrelationships that exist between Ward and the Debtor are sufficient evidence that an agreement, whether written or oral, existed and it was expected that the Debtor and its affiliates were the true owners (whether in full or in part) of the Property. Indeed, it is telling that Ward, who Unity Bank concedes has an equity cushion of more than $100,000, has not even appeared. If Ward truly owned the Property he likely would have appeared to protect his interest. The evidence presented to the Court, both documentary and circumstantial, support the fact that the Property is property of the Debtor's estate under Section 541 of the Bankruptcy Code, which includes all legal and equitable interests of the Debtor in property.

      Unity Bank makes the totally unsupported suggestion that the Debtor acted as Mr. Ward's "property manager" and that the funds used to purchase the Property and to make

---

(continued from previous page)
own analysis, these documents should have been reviewed as part of its loan approval process and Unity Bank should not have ignored their absence from its files.

[3] Unity Bank's contention that the cash to pay closing costs was from Ward's account and therefore belongs to Ward ignores the Ponzi scheme and the fact that "when a debtor obtains money by fraud and mingles it with other money . . . the money is 'property' of the estate." County of Orange v. Merrill Lynch & Co., Inc. (In re County of Orange), 191 B.R. 1005, 1015 (Bankr. C.D. Cal. 1996) (citing Merril v. Abbott (In re Indep. Clearing House Co.), 77 B.R. a843, 854 (Bankr. D. Utah 1987).

43251/0001-1423535v1

Cole, Schotz, Meisel, Forman & Leonard, P.A.
Attorneys at law

Honorable Donald H. Steckroth, U.S.B.J.
February 10, 2006
Page 4

mortgage payments were those of Mr. Ward. This argument ignores the allegations of the Trustee and the SEC of the existence of a massive Ponzi scheme involving the commingling of funds from all investors. Unity Bank, despite ample opportunity, provides absolutely no documentary or other evidence of its incorrect theories. The Trustee should be afforded an opportunity to take discovery on these issues.

  Moreover, Unity Bank misunderstands the Trustee's arguments about the validity of its mortgage and the elements of the good faith lender defense under the Bankruptcy Code and New Jersey's Uniform Fraudulent Transfer Act. Despite Unity Bank's contention that it was free to put its head in the sand and ignore the indicia of fraud surrounding the granting of its mortgage lien, Unity Bank's knowledge is relevant. Knowledge of voidability of a mortgage does not require a "complete understanding" of the facts and "some lesser knowledge will do." Bonded Financial Services v. European Am. Bank, 838 F.2d 890, 898 (7th Cir. 1998). A transferee has knowledge if he "knew facts that would lead a reasonable person to believe that the property transferred was recoverable." In re Medic Village, Inc., 915 F.2d 1049, 1055 (6th Cir. 1990). As noted in the Trustee's initial submission, Unity Bank's own underwriting notes reflect that its borrower, who earned $43,255 per year in 2001 working as a supermarket dairy manager, but nevertheless "owned" five other investment properties that had lost $25,000, was "moving too fast." See Supplemental Komrower Affidavit dated February 8, 2006, Exhibit E.

  The Trustee respectfully submits that there is more than ample evidence that the Debtor has an equitable interest in the Property and that Unity Bank's argument that the Property is not property of the Debtor's estate, and that the restraints imposed by the District Court's order should not apply to the Property, should be rejected. For these and the other reasons articulated by the Trustee, Unity Bank has not carried its burden to demonstrate sufficient cause to vacate the order entered by the District Court.

           Respectfully submitted,

           COLE, SCHOTZ, MEISEL,
           FORMAN & LEONARD, P.A.

           */s/ Stuart Komrower*

           Stuart Komrower

SK/jmt/paf

43251/0001-1423535v1

Cole, Schotz, Meisel, Forman & Leonard, P.A.
Attorneys at law

Honorable Donald H. Steckroth, U.S.B.J.
February 10, 2006
Page 5

cc:   Jay Samuels, Esq.
      Charles M. Forman, Esq.

43251/0001-1423535v1