**PORZIO, BROMBERG & NEWMAN, P.C.**
(Mail to) PO Box 1997, Morristown, NJ  07962-1997
(Delivery to) 100 Southgate Parkway, Morristown, NJ  07960
Telephone (973) 538-4006
Facsimile (973) 538-5146

Attorneys Appearing: John S. Mairo (JM-0670)
                                 Brett S. Moore (BM-0014)

Counsel for GreenPoint Mortgage Funding, Inc. and MortgageIT, Inc.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 7 |
| NJ AFFORDABLE HOMES CORP., | Case No. 05-60442 (DHS) |
| Debtor. | |

**RESPONSE OF GREENPOINT MORTGAGE FUNDING, INC. AND MORTGAGEIT, INC. TO CERTAIN BORROWER/TITLE HOLDER OBJECTIONS TO TRUSTEE'S APPLICATION TO SELL REAL PROPERTY AND FOR OTHER RELIEF**

GreenPoint Mortgage Funding, Inc. ("GreenPoint") and MortgageIT, Inc. ("MortgageIT" and together with GreenPoint, collectively, the "Secured Parties") hereby file this response (the "Response") to the argument raised by certain of their borrowers/title holders (collectively, the "GP/MIT Individuals")[1] that the proposed Second Supplemental Sale Order

---

[1] The GP/MIT Individuals and their property numbers as identified by the Trustee are as follows:  Frank Carullo (15), Nancy Barrett (86, 305), Herbert Sudzin (131), William Gottschall (4), Mark Ward (153), Anthony Casino (161, 256, 410), Sohan Pahar (82), Bartholomew O'Connor (257), Raymond Reynolds (272), Kenneth Lukowiak (172), Melvyn Barenholtz (7, 60, 304), Dennis Orsini (174), Navinchandra Patel (146), Bruce Puff (157), Jamie Haberman (170), Paul Boucher (239), Joseph Huschle (273) and Mark Cammissa (280).

1026276

should not be approved unless the Secured Parties agree to waive their deficiency claims against them (the "Deficiency Argument").

## RELEVANT BACKGROUND

1. On November 22, 2005, a chapter 7 petition was filed on behalf of NJ Affordable Homes Corp. (the "Debtor") in the United States Bankruptcy Court for the District of New Jersey. On November 23, 2005, Charles M. Forman was appointed as the trustee (the "Trustee") for the Debtor's Chapter 7 estate.

A.  Sale/Financing Motion And Related Orders

2. On January 11, 2006, the Trustee filed a motion for an order authorizing the Trustee: (1) to sell 390 parcels of real property which the Trustee asserted the estate held interests in; (2) to retain a joint venture to sell those properties; and (3) to obtain post-petition financing to market, preserve and maintain the properties (the "Sale/Financing Motion").

3. On April 17, 2006, the Court entered an order authorizing the sale of approximately 144 properties (the "Sale Order") which are titled in the name of the Debtor.

B.  Supplemental Sale Orders

4. The Sale/Financing Motion with respect to the remaining properties is scheduled for May 31, 2006. In connection with the May 31, 2006 hearing, the Trustee has served two supplemental sale orders: the First Supplemental Sale Order and Second Supplemental Sale Order. The Trustee requests the approval of both supplemental sale orders.

5. The First Supplemental Sale Order is similar to the Sale Order in that it seeks to: (i) overrule all objections raised regarding the sale of the properties subject to the order; (ii) authorize the joint venture to sell the subject properties; and (iii) permit the Trustee to utilize the post-petition financing to preserve and maintain the subject properties.

6. The Second Supplemental Sale Order is quite different than the First Supplemental Sale Order in that, among other things, it provides that: (a) certain institutional lenders withdraw their objections; (b) the Trustee and such institutional lenders will exchange mutual releases; and (c) a subsequent hearing will be scheduled to confirm such institutional lenders' lien priority and credit bid amounts.

## LEGAL ARGUMENT

7. As is reflected by the terms of the Second Supplemental Sale Order, the Secured Parties were not willing to withdraw their objection to the Sale/Financing Motion if parties other than the Trustee (and estate) were released. During negotiations over the terms of the Second Supplemental Sale Order, the Secured Parties consistently took the position that they needed to reserve their rights to pursue any third parties, *e.g.*, borrowers, appraisers, title insurers. Aside from preserving their available remedies, the Secured Parties believed then (and do now) that providing releases to third parties as part of the Second Supplemental Sale Order would be an improper limitation of the Secured Parties' rights and is simply not a prerequisite for the Court to approve the relief requested in the Sale/Financing Motion. Accordingly, the Court should enter the Second Supplemental Sale Order and reject the Deficiency Argument, which seeks to release the GP/MIT Individuals of any deficiency liability.

8. Moreover, the Deficiency Argument should be rejected because it is black letter law that a promissory note "is a contract by the obligor to pay a debt." First Union National Bank v. Penn Salem Marina, Inc., et al., 383 N.J. Super. 562, 569 (App. Div. 2006); see also BLACK'S LAW DICTIONARY 1089 (8th ed. 1999) (defining promissory note as "[a]n unconditional written promise, signed by the maker, to pay absolutely and in any event, a certain sum of money either to, or to the order of, the bearer or a designated person."). Thus, the Secured Parties

clearly have the right to institute suits against the GP/MIT Individuals based upon their respective promissory notes.

9. Furthermore, until the property sales occur, it will not be known if the GP/MIT Individuals have any deficiency liability. Indeed, if the property sales are successful, then the GP/MIT Individuals may not face any deficiency liability. Thus, the Deficiency Argument should not delay the entry of the Second Supplemental Sale Order because the argument may be moot based upon the success of the sale process.

10. Finally, the Secured Parties recognize that they will need to institute separate actions outside of this Court against each of the GP/MIT Individuals in order to obtain a deficiency judgment. Consequently, the GP/MIT Individuals will get their "day in court" to raise defenses to their deficiency liability if and when any such deficiency actions are brought against them.[2]

## CONCLUSION

For the foregoing reasons, the Court should enter the Second Supplemental Sale Order and reject the Deficiency Argument.

**PORZIO, BROMBERG, & NEWMAN, P.C.**
Attorneys for GreenPoint Mortgage Funding, Inc.
and MortgageIT, Inc.

Dated: May 26, 2006         By:_____/s/ John S. Mairo_____
John S. Mairo (JM-0670)

---

[2] Similarly, in response to arguments raised by borrowers/title holders that "their" property cannot be sold until "ownership" of the property is determined, the Trustee has taken the position that the property sales can go forward and the parties can fight later over entitlement to any proceeds that exist after valid debts/liens are paid. See Trustee's Response to Objection of Herman Gross [Dkt. No. 229], ¶ 2.