**NOT FOR PUBLICATION**

**FILED**
JAMES J. WALDRON, CLERK

**AUGUST 11, 2006**

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: s/ RONNIE PLASNER, DEPUTY

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | Case No.: 05-60442 (DHS) |
| **NJ AFFORDABLE HOMES CORP.**, | Chapter 7 |
| Debtor. | Judge:   Donald H. Steckroth, U.S.B.J. |

## OPINION

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court are four independent motions for a stay of this Court's June 29, 2006 written Opinion and accompanying Order pending appeal to the District Court for the District of New Jersey. The motions for stay pending appeal can best be categorized by the identity of the moving parties; that is, three of the motions for stay pending appeal have been filed by "investors" in the Debtor, NJ Affordable Homes

Corporation, while a host of institutional "lenders" have jointly filed a fourth motion for a stay pending appeal. More particularly, the following investors have filed motions for a stay pending appeal: 1) Herman Gross and Quality Homes Development Corporation; 2) Peter Burboeck, Axel Burboeck and Bernd Hefele, Esq.; and 3) Stephen Theriault, Jamie Haberman, Ken Lukowiak, James and Laura Butterworth, Frank Carullo, Dennis Orsini, Michelle Mosoglo and Melvyn Barenholtz.[1] In addition, the following institutional lenders filed a joint motion for a stay pending appeal: Lehman Brothers Bank, FSB; National City Mortgage Company; American Fidelity Mortgage Corporation; Countrywide Home Loans, Inc.; Credit Suisse; Option One Mortgage; Washington Mutual Bank; Fremont Investment & Loan; GMAC Mortgage Corporation; and HomeComings Financial Network.[2] For the reasons that follow, all of the motions for a stay pending appeal are hereby denied.

**I.    Background Leading To The Current Motions**

As this Court stated in its June 29, 2006 Opinion, this is a bankruptcy case involving allegations of a complicated "Ponzi" scheme committed by the Debtor NJ Affordable Homes Corporation (hereinafter "NJAH"), its principal, Wayne Puff (hereinafter "Puff"), and various corporate and individual affiliates of either NJAH or Puff.[3] To briefly summarize, NJAH and Puff orchestrated a massive scheme to defraud numerous investors and lending institutions of millions of dollars. The fraud perpetrated by NJAH and Puff involved inducing unsophisticated investors, hungry for a large return, to invest funds in exchange for

---

[1] The individual investors will hereafter be referred to collectively as the "Investors."

[2] The institutional lenders will hereafter be referred to collectively as the "Lenders."

[3] The Court will not restate the entire and quite extensive procedural history and factual background of this case for purposes of deciding these motions. Instead, the Court incorporates by reference those findings in this opinion.

promissory notes secured by mortgages on designated properties that far exceeded the actual value of the mortgaged properties, with the promise to the investors of annual rates of return between 15% to 20%. Since the debts owed to investors significantly exceeded the property values, NJAH and Puff relied on raising money from new investors to pay the promised returns to investors whose investments had matured and who did not re-invest their money with NJAH or Puff. Simply put, NJAH and Puff used approximately 390 properties in furtherance of their fraudulent Ponzi scheme.

By way of background, the June 29, 2006 Opinion which engendered the various appeals stemmed from a motion filed by the Chapter 7 Trustee, Charles M. Forman (hereinafter the "Trustee"), seeking authorization to sell approximately 248 properties titled in the name of non-debtor entities free and clear of all liens, claims and interests at auction pursuant to §§ 363 and 105 of the Bankruptcy Code. In its motion, the Trustee sought authority to sell the properties in a structured, professional program designed to maximize the value obtained on behalf of all persons and entities harmed by the fraudulent and unlawful activities of NJAH and Puff, including investors, tenants, lending institutions, and taxing authorities. In seeking such relief, the Trustee maintained that his proposed sale process would provide the most efficient and economical means of providing redress for the fraud committed by NJAH and Puff. The Trustee's motion for authority to sell these 248 properties was met with strong resistance by several investors and a host of institutional lenders. This Court ultimately granted the Trustee's motion in the Opinion of June 29, 2006, thereby permitting him to sell the 248 properties through his proposed auction process. The parties listed above appear to have filed timely appeals from the June 29, 2006 written Opinion and accompanying Order. However, despite the obvious implications of the June 29, 2006 Opinion for individual investors

and lending institutions alike, motions for a stay pending appeal were not filed until approximately one month later, on or after July 24, 2006.[4]

It is significant in deciding the motions for a stay pending appeal to revisit the procedural history of this matter, and, in particular, the findings and conclusions reached by the District Court that served as the genesis for the Trustee's underlying motion to sell the 248 properties. The fraud committed by NJAH, its affiliated entities, and Puff was formally unmasked on September 12, 2005, when the Securities and Exchange Commission (hereinafter "SEC") filed a verified complaint against NJAH and Puff in the United States District Court for the District of New Jersey, Civil Action No. 05 Civ. 4403. Contemporaneously with the filing of its verified complaint, the SEC filed an application with the New Jersey District Court seeking temporary restraints against NJAH and Puff. As a result of the allegations raised by the SEC against NJAH and Puff, the New Jersey District Court issued an order to show cause preliminarily I) enjoining NJAH and Puff from violating Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933,[5] Section 10(b) of the Securities Exchange Act of 1934,[6] and Exchange Act Rule 10b-5; ii) freezing the assets of NJAH and Puff; iii) requiring NJAH and Puff to repatriate all assets held outside the United States; iv) appointing a receiver for NJAH; v) directing NJAH and Puff to provide updated verified accountings; and vi) prohibiting the destruction, alteration or concealment of documents (hereinafter "*Order to Show Cause*"). The District Court concluded that freezing the assets of NJAH and Puff was necessary

---

[4] Specifically, the motions for a stay pending appeal were filed on July 24, 2006, July 25, 2006, July 27, 2006, and August 4, 2006.

[5] 15 U.S.C. §§ 77e(a), 77e(c), and 77q(a).

[6] 15 U.S.C. § 78j(b).

to preserve the status quo, and to protect the Court's ability "to award equitable relief in the form of disgorgement of illegal profits from fraud and civil penalties, and to preserve the Court's ability to approve a fair distribution for victims of the fraud." The District Court also determined that the appointment of a receiver was necessary to I) preserve the status quo; ii) ascertain the true financial condition of NJAH and the disposition of investor funds; iii) prevent further dissipation of the property and assets of NJAH; iv) prevent the encumbrance or disposal of property or assets of NJAH and the investors; v) preserve the books, records and documents of NJAH; vi) bring NJAH into compliance with the law; vi) be available to respond to investor inquiries; and vii) determine if NJAH should undertake a bankruptcy filing.[7] The District Court appointed Nicholas H. Politan as the Receiver for NJAH. On September 26, 2005, the

---

[7] Pursuant to the order to show cause, any receiver appointed on behalf of NJAH would be empowered to: I) "take and retain immediate possession and control of all of the assets and property, and all books, records and documents of NJAH, and the rights and powers of it with respect thereto"; ii) "have exclusive control of, and be made the sole authorized signatory for all accounts at any bank, brokerage firm or financial institution that has possession or control of any assets or funds of NJAH"; iii) "pay from available funds necessary business expenses required to preserve the assets and property of NJAH and its investors, including the books, records and documents of NJAH . . ."; iv) "take preliminary steps to locate assets that may have been conveyed to third parties or otherwise concealed"; v) "take preliminary steps to ascertain the disposition and use of funds obtained by [NJAH and Puff] resulting from the sale of securities issued by NJAH"; vi) "engage and employ persons, including accountants, attorneys and experts, to assist in the carrying out of the receiver's duties and responsibilities hereunder"; vii) "make, demand, file or otherwise handle any claim under any insurance policy held by or issued on behalf of NJAH, or its officers, directors, agents, employees, trustees or other person affiliated with it, and to take any and all steps in connection with such policies"; viii) report to the Court regarding the assets and liabilities of NJAH; ix) "if appropriate, file for relief and protection under the federal Bankruptcy Code, on behalf of NJAH, after notice to all parties in this action"; x) "take discovery in this action without further order of the Court"; and xi) "take such further action as the Court shall deem equitable, just and appropriate under the circumstances upon proper application of the receiver." (*Order to Show Cause*, pgs. 10-11).

District Court granted the preliminary injunction (hereinafter "Preliminary Injunction Order") requested by the SEC.

On October 5, 2005, the District Court entered an Order amending the Preliminary Injunction Order in at least three significant ways. First, the Amended Preliminary Injunction Order restrained and enjoined all "persons"[8] from taking any actions against NJAH, any entities affiliated with NJAH, Wayne Puff, Kyu Nam Park, Gary Puff, Bruce Puff,[9] and "any investor or third-party who holds as of the date of this Order an interest in real or personal property and the proceeds thereof derived from transactions involving NJAH and/or [its affiliated entities], including property acquired with, from or through NJAH" (hereinafter "*Amended Order*").  Second, the Amended Order restrained all "persons" from I) the commencement or continuation, including the issuance or employment of process, or a judicial, administrative, or other action or proceeding against NJAH, any of its affiliated entities, the relatives of Wayne Puff, and any third-party property interests that were or could have been previously commenced or to recover such a claim against NJAH, any of its affiliated entities, the relatives of Wayne Puff, and any third-party property interests; ii) the enforcement of a judgment against any property of NJAH, any of its affiliated entities, the relatives of Wayne Puff, and any third-party property interests; iii) any act to create, perfect, enforce or foreclose any lien against NJAH, any of its affiliated entities, and any third-party property interests; iv) any act to obtain possession of or exercise control over the property of or from

---

[8]The Amended Order defined "persons" as "all individuals, partnerships, corporations, limited liability companies, municipalities, utilities and all creditors of, and parties who assert any lien, claim or interest in and to the assets of" NJAH, the affiliated entities of NJAH, Wayne Puff, Kyu Nam Park, Gary Puff, Bruce Puff, and any investor or third-party who holds an interest in real or personal property and the proceeds thereof derived from transactions involving NJAH or its affiliated entities, or both.

[9]Kyu Nam Park, Gary Puff, and Bruce Puff are allegedly relatives of Wayne Puff.

NJAH, any of its affiliated entities, and any third-party property interests; v) any act to collect, assess, or recover a claim against NJAH, any of its affiliated entities, and any third-party property interests that arose prior to the Amended Preliminary Injunction Order; and vi) the setoff of any debt owing to NJAH, any of its affiliated entities, or any third-party property interests that arose before the entry of the Amended Preliminary Injunction Order.  (*Amended Order*, pgs. 3-4).

Third, and most significantly, the Amended Order of the District Court expanded the powers and responsibilities of the Receiver for NJAH.  The Amended Order empowered the Receiver to, without limitation:

> (a) implement a sales process . . . to liquidate the real property and related assets of NJAH, [its affiliated entities], and any person or entity who holds title to real property acquired through investments and/or the purchase of securities from NJAH, and to hold the proceeds of such liquidation in trust for the benefit of creditors and other parties-in-interest to be paid in accordance with their lawful priorities under applicable law; (b) implement a process for the fair and equitable determination of investor and/or creditor claims through the submission of proofs of claim and interests and establishment of a bar date for the submission of such claims and interests by creditors and parties-in-interest; (c) review, reconcile and file appropriate applications with the Court to reduce, modify and/or expunge claims and interests as appropriate; (d) retain professionals, including but not limited to, attorneys, accountants, appraisers, auctioneers, sales agents, consultants and other professionals to assist the Receiver in carrying out his duties . . .; (e) engage in discovery concerning the acts, conduct, assets, liabilities, administration and other matters relevant to this action and the business of NJAH . . . ; and (f) institute proceedings to avoid and recover unlawful transfers and receivership property . . . .
>
> [(*Amended Order*, pgs. 5-6)].

On November 1, 2005, the Receiver filed a motion with the District Court seeking, *inter alia*, to file a bankruptcy petition on behalf of NJAH.  The District Court granted the Receiver's motion on

November 16, 2005. Consequently, on November 22, 2005, the Receiver filed a voluntary petition under Chapter 7 of the Bankruptcy Code on behalf of NJAH. Charles M. Forman was appointed the Chapter 7 Trustee for the bankruptcy estate of NJAH. By order dated November 22, 2005, the District Court withdrew the reference to the Bankruptcy Court pursuant to 28 U.S.C. § 157(d). However, by order dated December 6, 2005, the District Court referred the bankruptcy case to this Court. (hereinafter "*Order Continuing Injunctive Relief*").

In the December 6, 2005 Order Continuing Injunctive Relief referring the bankruptcy case to this Court, the District Court explicitly found it "necessary to continue the injunctive relief previously imposed and to grant to the Trustee certain of the powers, rights and responsibilities granted to the Receiver under the [Order to Show Cause, the Preliminary Injunction Order and the Amended Preliminary Injunction Order] so that the Trustee can properly and efficiently administer the Debtor's bankruptcy estate and to otherwise fulfill his statutory duties consistent with the Bankruptcy Code." (*Order Continuing Injunctive Relief*, pg. 3). Under the December 6, 2005 Order, the comprehensive injunction imposed by the District Court continues to apply in this Court. In addition, the December 6, 2005 Order specifically directed and empowered the bankruptcy trustee to:

> implement an expedited sales process in the Bankruptcy Court that is consistent with this Order to liquidate the real property and related assets of NJAH, [its affiliated entities], and any person or entity who holds title to real property acquired through investments and/or the purchase of securities from NJAH, and to hold the proceeds of such liquidation pending further Order or Orders of the Bankruptcy Court, provided that the Trustee shall retain the right to abandon any of the real property and related assets in accordance with the relevant provisions of the Bankruptcy Code . . . .

[(*Order Continuing Injunctive Relief*, pg. 7)].

On January 11, 2006, the Chapter 7 Trustee for NJAH filed the underlying motion for an order authorizing him to do the following: I) retain a "joint venture" comprised of DJM Asset Management, LLC and Sheldon Good & Company Auctions NorthEast, LLC (hereinafter collectively the "Joint Venture") to market and sell real properties pursuant to 11 U.S.C. §§ 327(a) and 328(a) of the Bankruptcy Code; ii) sell real properties free and clear of all liens, claims and interests at one or more auctions pursuant to §§ 363 and 105 of the Code; and iii) borrow up to $500,000.00 from DJM Asset Management, LLC and to provide first priority priming liens to DJM Asset Management, LLC pursuant to §§ 364 and 105 of the Bankruptcy Code.

In sum, the parties objecting to the Trustee's underlying sale motion raised several central arguments. First, the objecting parties argued that the properties, which are titled in the names of non-debtor third parties, did not constitute property of the bankruptcy estate pursuant to § 541 of the Bankruptcy Code. Second, the objecting parties contended that even if the Court concluded that NJAH possessed an equitable interest in the disputed properties, the Trustee could not satisfy § 363(f) of the Bankruptcy Code and sell the properties free and clear of all liens. Third, the Lenders argued that the Trustee should not be authorized to sell the disputed properties because he failed to offer adequate protection in connection with the proposed sale of the properties. The Court disagreed with the objecting parties' legal arguments and, as previously indicated, granted the Trustee's motion to sell the 248 properties through the proposed auction process.

## II.    Legal Discussion

Notably, all of the parties agree upon the standard governing the grant or denial of a stay pending appeal under Federal Rule of Bankruptcy Procedure 8005. Federal Rule of Bankruptcy Procedure 8005 provides in relevant part as follows:

> A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance. Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest. A motion for such relief, or for modification or termination of relief granted by a bankruptcy judge, may be made to the district court or the bankruptcy appellate panel, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge.

[*Fed. R. Bankr. P.* 8005 (West 2006)].

The standards for granting a stay pending an appeal are the same as those governing the grant of a preliminary injunction. *Lutin v. United States Bankruptcy Court (In re Advanced Mining Sys., Inc.)*, 173 B.R. 467, 468 (S.D.N.Y. 1994) (citation omitted). In order to determine whether to grant a stay pending appeal, a bankruptcy court must consider the following four factors: 1) whether the movant is likely to succeed on the merits of the appeal; 2) whether the movant will suffer irreparable injury if the stay is not granted; 3) whether a stay would substantially harm other parties in the litigation; and 4) whether a stay is in the public interest. *Family Kingdom, Inc. v. EMIF N.J. Ltd. P'ship (In re Family Kingdom, Inc.)*, 225 B.R. 65, 69 (D.N.J. 1998) (citations omitted); *see also Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991). All of the four factors must be satisfied as a condition

to the issuance of a stay pending appeal. *Hunter v. S.K. Austin Co. (In re Beck)*, 26 B.R. 945, 946-47 (Bankr. N.D. Ohio 1983) (citation omitted). *See also In re Bilzerian*, 264 B.R. 726, 729 (Bankr. M.D. Fla. 2001) ("The moving party must show satisfactory evidence on all four criteria. The failure to satisfy one prong of the standard for granting a stay pending appeal 'dooms his motion'") (citations omitted). Further, the decision to grant a stay pending appeal lies within the discretion of the bankruptcy court. *Green Point Bank v. Treston*, 188 B.R. 9, 11 (S.D.N.Y. 1995) (citations omitted).

The motions filed by the various Investors and Lenders all raise similar and overlapping arguments and, as such, will be addressed collectively.

The Investors claim that their interests will be irreparably harmed in the absence of a stay pending appeal because once the properties are sold, "they are gone, and any future value of the properties will be obliterated, especially since the Sale Order does not allow [the Investors] to credit bid the amount of their equity or contributions." The Investors further contend that "[e]ven if the proceeds of a sale are kept in a trustee's escrow account, the asset itself will nevertheless be gone, and monies recovered by [the Investors] from the sale of the [properties] would be reduced by the amount of the Trustee's fees and expenses, as well as those of his professionals associated with the sale of the properties." In a nutshell, the thrust of the Investors' objections to the sale of the properties centers on a potential diminished financial recovery based upon a loss of "future value" or a reduction based upon the fees to the Trustee or the Joint Venture. In similar fashion, the Lenders contend that the Trustee's proposed auction sale process "creates a probability that the Non-Debtor Properties will not be sold for full value . . . . With the [Lenders] unable

-11-

to bid freely[10] to protect their interests, there is a very real likelihood that [the] auction process will not bring sale prices sufficient to satisfy the [Lenders'] mortgage liens.

It is fundamental that, and as the Third Circuit Court of Appeals explicitly recognized in *Adams v. Freedom Forge Corp.*, the irreparable harm requirement is satisfied only if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages.  204 F.3d 475, 484-85 (3d Cir. 2000).  In this instance, any loss suffered by the Investors and Lenders as a result of the Trustee's sale of the properties is economic in nature and entirely compensable by monetary damages.  Because of this, the possible loss to the Investors and Lenders as a result of the forthcoming sale auction is simply not the type of risk that can be characterized as "irreparable harm" warranting the entry of a stay pending appeal.  As the Trustee rightfully submits, "it is clear that any harm to the Movants by virtue of the sale of the Properties would be compensable by money damages since they will retain whatever allowable interest they originally had in the Properties in the proceeds of the sale . . . ." (*See Brief of Charles M. Forman, Chapter 7 Trustee, in Opposition to Motions for Stay Pending Appeal Filed By: (I) American Fidelity Mortgage Corporation, Countrywide Home Loans, Inc., Credit Suisse, Fremont Investment & Loan, GMAC Mortgage Corporation, Homecomings Financial Network, Lehman Brothers Bank, FSB, National City Mortgage Company, Option One Mortgage and Washington Mutual Bank; (II) Herman Gross and Quality Homes Development Corp.; (III) Stephen Theriault, Jamie Haberman, Ken Lukowiak, James and Laura Butterworth, Frank Carullo, Dennis Orsini, Michelle Mosoglo and Melvyn Barenholtz; and (IV) All Other Parties who Seek a Stay Pending Appeal*, pg. 26 (hereinafter "*Trustee Br.*").  Consequently, the Investors' and

---

[10]The Lenders submit that their right to credit bid at the sale "is substantially impaired by the possibility that their liens might later be invalidated."

Lenders' motions for a stay pending appeal must be denied because they have failed to demonstrate an "irreparable harm," and thus have failed to satisfy each of the four factors as a condition precedent to the entry of a stay pending appeal.

Moreover, the Investors and Lenders claim that they will be irreparably harmed in the absence of a stay pending appeal because their appeals may be rendered moot if the properties are sold pending the District Court's decision. This, of course, is always a concern with orders approving sales under § 363 and the implications of § 363(m). However, the fact that an appeal may be rendered moot is not sufficient, in and of itself, to meet the irreparable harm requirement. *See In re 203 North LaSalle St. P'ship*, 190 B.R. 595, 598 (N.D. Ill. 1995) ("It is well settled that an appeal being rendered moot does not itself constitute irreparable harm") (citing *In re Pub. Serv. Co. of N.H.*, 116 B.R. 347, 349-50 (Bankr. D.N.H. 1990); *see also Commonwealth of Va. v. Shenandoah Realty Partners, L.P. (In re Shenandoah Realty Partners, L.P.)*, 248 B.R. 505, 510 (W.D. Va. 2000) (articulating same standard). Taken to the extreme, the argument advanced by the Investors and Lenders would require all sales to be stayed pending appeal. In short, that is not, and cannot be, the law. Consequently, neither the Investors nor Lenders have demonstrated an irreparable injury sufficient to warrant the entry of a stay pending appeal. Nonetheless, and for purposes of completeness, the Court will also address the remaining factors for the issuance of a stay pending appeal.

While the Investors and Lenders contend that the Trustee will not be harmed by a stay pending appeal, that contention is directly refuted by the Trustee. On this note, the Trustee submits in relevant part as follows:

-13-

> Simply put, Movants cannot demonstrate that they will suffer irreparable harm if the Properties are sold because such a sale will merely convert troubled and eroding real property assets into cash, to be distributed to creditors, including the Movants, to the extent those creditors can establish an entitlement to the proceeds of the sale. Moreover, Movants' disingenuous claim of irreparable harm completely ignores the substantial damage that a stay pending appeal would cause to the nominal owners of the Properties, the numerous tenants of the Properties, the holders of liens on the Properties, the municipalities in which the Properties are located and other creditors of NJAH's bankruptcy estate. The Properties are in dire need of maintenance that has been deferred during the pendency of this Chapter 7 proceeding. Among other things, the Trustee is required to respond on a daily basis to complaints that utility services to tenants were disrupted, to requests for repairs by tenants and by housing authorities who pay their rents, and to possible municipal code violations in the towns where the Properties are located. Absent an expeditious marketing and sale of the Properties by the Trustee, who lacks sufficient funds to implement the required maintenance or to pay real estate taxes, the interests of nominal owners, lien holders, tenants, municipalities, and NJAH's investors and creditors will be severely harmed.
>
> In addition, a stay pending appeal would cause undue hardship to the Trustee, by, among other things: greatly increasing the Trustee's costs to administer the Properties; jeopardizing the effectiveness of the auction by suddenly removing 248 Properties from the auction, leaving only 144 properties (those titled in NJAH's name) to be sold; increasing the per-property costs of the sale; and causing a substantial increase in sale costs if a second auction had to be commenced after the Movants' appeals are denied. Thus, a stay pending appeal would cause far more harm to the estate and its creditors than to the Movants.[11]

---

[11] On this note, the Trustee further contends as follows: "The Trustee's office is required to respond on a daily basis to complaints that utility services to tenants were disrupted, to requests for repairs by tenants and by housing authorities who pay their rents, and to municipal code violations in the towns where the properties are located. Making matters worse is the fact that the monthly rental income received from the properties has decreased from $56,712.50 for April 2006 to just $28,107.00 for July 2006. This dramatic reduction is being caused by numerous tenants and housing authorities withholding their rent due to the deferred maintenance and deteriorating conditions at the properties. Thus, a sale of the properties to buyers who can and will invest necessary funds is critical and in the public interest. A stay pending appeal of the Sale Orders will also irreparably harm the

[(*Trustee Br.*, pgs. 3-4)].

In this Court's view, and in light of the burdens involuntarily placed upon the Trustee under the circumstances of this case, the Investors and Lenders have failed to satisfy their burden of demonstrating that the Trustee will not be harmed by a stay pending appeal. Moreover, other parties objecting to the motions for a stay pending appeal, namely GreenPoint Mortgage Funding, Inc. (hereinafter "GreenPoint") and MortgageIT, Inc. (hereinafter "MortgageIT"), submit that they will be harmed if a stay pending appeal is granted. GreenPoint and MortgageIT claim that they will suffer "substantial harm by any delay in the sale

---

Trustee and the Debtor's creditors. The auction scheduled for just several weeks from now will represent what is believed to be the largest auction of residential real property in the history of the state of New Jersey and one of the largest auctions of residential real property in the history of the United States. The sheer volume of properties scheduled to be sold – approximately 392 properties in all – and the events leading up to the sale give the Trustee the opportunity to obtain substantial press coverage and free publicity for the auction. In addition, the number of properties involved will allow the Trustee to achieve substantial economies of scale through one coordinated, well-planned advertising and marketing program. All of these benefits will be lost, however, if a stay is issued and the Trustee is forced to withdraw the 244 non-NJAH-titled properties from the auction. The resulting "bifurcated" sale would create tremendous confusion and a loss of credibility in the marketplace, where potential buyers have been advised that approximately 392 properties will be auctioned during the weekend of September 29-October 1, 2006. Because, in many cases, the Debtor-titled properties are in close proximity to the non-Debtor-titled properties, it may be impossible to explain to a party viewing signage in a neighborhood that the auction of certain properties will proceed while the auction on other properties will be postponed to some undetermined date. The resulting confusion would likely necessitate postponing the auction of the Debtor-titled properties for at least one to two months. Even if the auction of those properties proceeded on schedule, however, all economies of scale would be lost, as two separate auctions would cost almost twice what one unified auction procedure would entail. Moreover, market conditions have softened considerably over the past six months and that trend appears likely to continue in the near term. Thus, to avoid severe and irreparable harm to the Trustee, NJAH's creditors, tenants at the properties, the municipalities where the properties are located, and the nominal title holders of the properties, the stay motions must be denied." (*See Trustee Br.*, pgs. 17-18).

of the Non-Debtor Titled Properties because such delay will impede the ability of [GreenPoint and MortgageIT] to collect on their outstanding claims." (*See Objection to Application for the Entry of an Order for a Stay Pending Appeal Pursuant to Fed. R. Bankr. P. 8005*, pg. 6).

Most significantly, it is in the public interest to have these rapidly dilapidating properties liquidated in the near future by the Trustee. As this Court recognized in its June 29, 2006 Opinion, the Trustee is under a mandate from the District Court to fashion and implement an expedited process to sell all of the properties in order to attempt to provide distributions to the victims of the massive fraud perpetrated by NJAH and Puff. In the June 29, 2006 Opinion, this Court noted as follows:

> In granting the relief sought by the Trustee, the parties hopefully understand and appreciate that the scope of the fraud perpetrated by NJAH and Puff is larger than any single investor or financial lending institution, and that a global resolution towards liquidation and distribution is required. This was initially recognized by the District Court and is further acknowledged in this Opinion. The Court is mindful that not all parties will be satisfied, but it is simply impossible to fully remedy everyone's damages at this point. Notably, the Trustee is not the cause of the current predicament facing all parties affected by the fraudulent scheme. Rather, in taking directive from the District Court to liquidate all of the properties, the Trustee has presented a coherent and carefully crafted plan to provide some measure of relief to interested parties. Liquidating the properties will create a fund to help offset damages to individual investors, and all valid and perfected security interests in the properties will attach to the proceeds of sale. While the competing interests in the properties will be adjudicated at a later date, at least deteriorating assets will have been sold and proceeds made available.

As the Trustee contends, by providing NJAH's investors and creditors with a meaningful dividend sooner, rather than later, the public interest will be benefitted by an expeditious sale of all the properties. Simply put, it is in the public interest for municipal taxes to be finally paid, municipal codes to be complied with, and deteriorating and costly properties to be sold.

Finally, the Investors and Lenders have not demonstrated a likelihood of success on the merits of their appeal to warrant the issuance of a stay pending appeal.  For the reasons set forth in the June 29, 2006 Opinion, this Court finds that the Investors and Lenders are unlikely to succeed on the merits of their appeal.  All of the arguments raised by the Investors and Lenders in their motions for a stay pending appeal were considered by the Court (*i.e.,* whether the properties constitute "property of the estate" under § 541 of the Code, whether a "bona fide" dispute exists for purposes of § 363 of the Code, and whether the Investors and Lenders are adequately protected) and rejected.  A movant for a stay pending appeal cannot demonstrate a likelihood of success on the merits by simply restating the same arguments previously raised and rejected by the initial court.  *See, e.g., Bank of Nova Scotia v. Pemberton*, 964 F. Supp. 189, 191 (D.V.I. 1997) ("Defendant presents no new arguments as to why the summary judgment granted by the Court against defendant was improper.  From the pleadings currently before the Court, it can only be assumed that defendant intends to base his appeal on the same arguments which this Court considered and rejected when summary judgment was granted in plaintiff's favor against the defendant[;] [t]hose arguments possess no more merit now then they did previously"); *see also Botman Int'l, B.V. v. Int'l Produce Imports, Inc.*, No. Civ. A. 99-5088, 2006 WL 263619 (E.D. Pa. Jan. 31, 2006) (articulating the same standard);   Similarly, the arguments raised by the Investors and Lenders regarding the issues of property of the estate, a bona fide dispute under § 363, and adequate protection have already been ruled upon by this Court. Consequently, the Investors and Lenders cannot demonstrate a substantial likelihood of success on the merits, particularly in light of the District Court's clear direction to the Trustee to devise a coherent and efficient plan to liquidate the properties for the collective benefit of all involved.  In sum, the Court agrees with the Trustee's argument "that the movants' rehash of previous arguments made to and rejected

by the Court in its June 29, 2006 Opinion are simply insufficient to rise to the level of a 'strong showing of a likelihood of success on appeal.'"

Accordingly, because the Investors and Lenders have failed to satisfy the elements necessary for the issuance of a stay pending appeal, the pending motions for a stay pending appeal are hereby each denied in their entirety.

## III. Conclusion

Based on the foregoing, the motions filed by the individual investors and the institutional lenders for a stay of this Court's June 29, 2006 written Opinion and accompanying Order pending appeal to the District Court are hereby denied. An Order in conformance with this Opinion has been entered by the Court and a copy is attached.

s/    **Donald H. Steckroth**

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: August 11, 2006