**NOT FOR PUBLICATION**

<div style="border:1px solid black">

**FILED**

JAMES J. WALDRON, CLERK

**OCT. 22, 2007**

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY:  s/ Ronnie Plasner, DEPUTY

</div>

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | Case No.:  05-60442 (DHS) |
| **NJ AFFORDABLE HOMES CORP.,** | Chapter:   7 |
| Debtor. | Judge:     Donald H. Steckroth, U.S.B.J. |

**OPINION**

**APPEARANCES:**

Forman, Holt, Eliades & Ravin LLC
Michael E. Holt, Esq.
Harry M. Gutfleish, Esq.
218 Route Seventeen North
Rochelle Park, New Jersey 07662
***Counsel for Charles M. Forman, Chapter 7
Trustee for NJ Affordable Homes Corp.***

Carella, Byrne, Bain, Gilfillan, Cecchi,
Stewart & Olstein PC
Lindsey H. Taylor, Esq.
5 Becker Farm Road
Roseland, New Jersey 07068
***Counsel for the Irrevocable Trust FBO
Goldie Keitz, Beverly Keitz, Stuart Keitz
and Lois Perlman***

Greenbaum, Rowe, Smith & Davis LLP
Robert S. Underhill, Esq.
Metro Corporate Campus One
Woodbridge, New Jersey 07095
***Counsel for the Estate of Marvin Hyman
and the Marvin Hyman Defined Benefit
Plan***

Seiden Wayne LLC
Todd M. Galante, Esq.
Two Penn Plaza East, 10th Floor
Newark, New Jersey 07105
***Co-Counsel to AmericaFinance LLC, ABN
Amro Mortgage Group, Inc. as successor
in interest to certain mortgages of
Countrywide Home Loans, Inc., Sovereign
Bank, and Washington Mutual Bank***

Teich Groh LLC
Brian w. Hofmeister, Esq.
691 State Highway Thirty-Three
Trenton, New Jersey 08619
***Counsel for Stephen Theriault, Jamie
Haberman, Dennis Orsini, Melvyn
Barenholtz, Charles Hillman, Ruth
Hillman, Irving Golombeck, Marilyn
Golombeck, Salvatore Renna, Dianne
Musto, Darlene Musto, Dominick Musto,
Donna DeRosa, Vincent Fama, James
Molinari, and Catherine Brodo***

Scura, Mealey, Scura & Stack LLP
John J. Scura II, Esq.
1599 Hamburg Turnpike
Wayne, New Jersey 07470
***Counsel for Douglas Robertson***

Porzio, Bromberg & Newman PC
John S. Mairo, Esq.
Brett S. Moore, Esq.
100 Southgate Parkway
Morristown, New Jersey 07960
***Counsel for GreenPoint Mortgage
Funding, Inc. and MortgageIT, Inc.***

## THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE

Before the Court are two motions relating to adversary complaints within NJ Affordable Homes Corp.'s (hereinafter "Debtor") global proceeding filed by Charles M. Forman, as Chapter 7 Trustee for the Debtor (hereinafter "Trustee").  First, the Trustee seeks an Order authorizing settlements within approved parameters without further notice or hearing ("Settlement Motion"). Second, the Trustee requests that this Court establish a claims bar date and authorize use of a modified form of notice and proof of claim ("Claims Motion").  Multiple objections were filed with respect to each motion.[1]  Douglas Robertson filed a letter brief on behalf of himself and seven other individual defendants in support of the Trustee's motion on settlement procedures.  The Trustee subsequently filed a consolidated reply.

For the following reasons: (i) the Trustee's Settlement Motion is granted as conditioned herein; and (ii) the Trustee's Claims Procedures Motion is denied without prejudice.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, the Standing Order of Reference from the

---

[1] Parties objecting to the motion on settlement procedures include:

    A.    The Irrevocable Trust FBO Goldie Keitz, Beverly Keitz, Stuart Keitz, and Lois Perlman (two objections);

    B.    The Estate of Marvin Hyman and the Marvin Hyman Defined Benefit Plan;

    C.    AmericaFinance LLC, ABN Amro Mortgage Group, Inc. as successor in interest to certain mortgages of Countrywide Home Loans, Inc., Sovereign Bank, and Washington Mutual Bank;

    D.    Stephen Theriault, Jamie Haberman, Dennis Orsini, Melvyn Barenholtz, Charles Hillman, Ruth Hillman, Irving Golombeck, Marilyn Golombeck, Salvatore Renna, Diane Musto, Darlene Musto, Dominick Musto, Donna De Rosa, Vincent Fama, James Molinari and Catherine Brodo (by way of joinder); and

    E.    GreenPoint Mortgage Funding, Inc. and MortgageIT, Inc.

Parties objecting to the motion on claims procedures include:

    A.    The Irrevocable Trust FBO Goldie Keitz, Beverly Keitz, Stuart Keitz, and Lois Perlman (two objections); and

    B.    Stephen Theriault, Jamie Haberman, Dennis Orsini, Melvyn Barenholtz, Charles Hillman, Ruth Hillman, Irving Golombeck, Marilyn Golombeck, Salvatore Renna, Diane Musto, Darlene Musto, Dominick Musto, Donna De Rosa, Vincent Fama, James Molinari and Catherine Brodo (by way of joinder).

United States District Court for the District of New Jersey dated July 23, 1984, and the December 5, 2005 Order of Reference from the United States District Court for the District of New Jersey. As these matters concern the administration of the bankruptcy estate and are otherwise proceedings affecting the liquidation of assets of the bankruptcy estate with exceptions not relevant here, they constitute core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

<div align="center">**Statement of Facts and Procedural History**</div>

**A.      General Facts and History**

Prior to the petition date, the Securities and Exchange Commission brought an action against the Debtor and its principal, Wayne Puff, in the United States District Court for the District of New Jersey. The District Court appointed a receiver for the Debtor. The receiver was charged with instituting procedures to sell all properties owned by the Debtor and resolving claims therefrom against the Debtor. Upon rendering his initial report to the District Court, the receiver was authorized to file a voluntary petition on the Debtor's behalf under Chapter 7 of the Bankruptcy Code, which he did on November 22, 2005. On the following day, the Trustee was appointed.

Initially, the Trustee sought authority from this Court to sell 390 properties owned by the Debtor or in which the Debtor maintained at least an equitable interest as of the petition date. The Trustee's applications were granted by this Court. An auction sale of approximately one-third of the properties occurred but a sale of the remaining properties was stayed pending appeal to the District Court from this Court's Orders authorizing auction sales. A recent settlement regarding the appeals was approved by the Court and provides, in part, for an auction sale of the properties previously stayed currently scheduled for November 1-2, 2007. The settlement also resolved one

hundred thirty-four (134) adversary proceedings and resulted in the dismissal of the appeals pending in the District Court.

After the initial auction sale of properties, the Trustee filed approximately 400 adversary complaints, largely on a property-specific basis.  In the Trustee's complaints, he alleges that the Debtor and its principal perpetrated a massive fraud involving primarily two scams, referred to herein as the mortgage scam and the title scam, relating to 390 real properties, primarily located within the State of New Jersey.  The funds received from these scams were allegedly commingled by the Debtor and its affiliates and expended as necessary, without regard to property-specific proceeds, to pay investors, make mortgage payments, maintain properties, and benefit insiders of the Debtor.

The Trustee has instituted approximately 150 adversary proceedings as to properties titled in the Debtor's name against individual mortgagees seeking to avoid and preserve their asserted mortgage interests for the benefit of the bankruptcy estate (hereinafter "Title Complaints"). He also filed approximately 250 adversary complaints involving properties titled in the name of a third party against the nominal title holders, financial institutions, and individual investors (hereinafter "Lender Complaints").  The Lender Complaints seek a determination that the Debtor is the actual owner of the properties and that they should be sold subject to later determination of property interests in the proceeds of sale.

**B.      Legal Arguments Relating to the Settlement Motion**

During the course of settlement negotiations with investors, the Trustee developed two settlement options, divided between investors who received (i) less than or (ii) in excess of the principal paid by the investor.  The proposed settlements are limited to individuals, trusts, non-

institutional lenders or organizations, and defined benefit plans who invested in the Debtor and are now subject to preference actions. The proposed settlements involve investors who received funds[2] from the Debtor or its affiliates, or both, and are premised upon the aggregate amount of principal investment, exclusive of accrued and unpaid interest promised by the Debtor. *Trustee's Application in Support of Motion for Settlement Procedures*, ¶ 10. All accounts maintained on behalf of an investor are treated as a single account for purposes of settlement. *Id.* However, accounts held on behalf of separate individuals, even if related, are treated separately. *Id.*

Investors who received back less than 100% of their principal are divided into two subcategories. In a situation where the investor received a return of less than 50% of the total funds invested, the Trustee will agree to dismiss all adversary proceedings against the individual with prejudice provided a consent judgment is executed in favor of the Trustee. *Id.* at ¶ 11. The consent judgment would avoid the defendant's property interests, preserve said interests for the benefit of the bankruptcy estate, and waive any claim to the proceeds of sale as to related properties other than as a general unsecured creditor. *Id.* The Trustee also reserves his rights to object to allowance of proofs of claim filed. *Id.* Thus, the settlement allows for the investor to keep the funds received in consideration for the relief granted to the Trustee in the consent judgment. The consent judgments would be docketed in each adversary proceeding to which they apply.

---

[2] At oral argument on the Settlement Motion, the Trustee's counsel stated that a predominant reason for choosing the 50% cutoff for classifying investors who received less than their principal investment in return was an investor analysis based upon the Debtor's books and records. Looking to the investor analysis, this Court understands the calculation of "funds" paid out to investors to include total payments or withdrawals from the Debtor, whether delineated as principal or interest. This understanding is based upon the fact that the investor analysis contains columns delineated "Total Principal Payments" and "Total Withdrawals and Interest Payments," which, when combined, equate to 54.64% of deposits with the Debtor. *See Certification of Matthew Schwartz in Support of the Trustee's Request to Enter Default Judgment Against Wayne Puff*, Adv. No. 06-02111, Exhibits A and B. Either figure on its own would equate to approximately half that amount. *See id.*

In the case of a defendant who received a return of 50% to 100% of funds invested, the investor would be treated similarly, except that the investor would be required to waive any right to file a proof of claim or receive any distribution from the Debtor's bankruptcy estate. *Id.* at ¶¶ 12-13.

Finally, an investor who received a return in excess of 100% of funds invested would be treated similarly to settling defendants who received a return of 50% to 100% of principal as described above, with the exception that the consent judgment would provide for a payment to the bankruptcy estate equal to 65% of the amount received in excess of the total amount invested. *Id.* at ¶ 13.

To the extent any defendant received payments in the ninety (90) days prior to the petition date that may be avoided as preferential transfers, any settlement would be subject to a reduction of the proof of claim that the defendant may be entitled to assert in the amount of either the alleged transfers received or an alternate resolution acceptable to the parties. *Id.* at ¶ 14.

The Trustee seeks leave of Court to enter into consent judgments within these parameters without further notice or hearing. The gravamen of the Trustee's argument is that there exists over 2,000 parties entitled to receive notice in the Debtor's global case and that individual settlement hearings would be burdensome to the Court, the Trustee, and the bankruptcy estate. *Id.* at ¶ 17. As exhibits to his motion papers, the Trustee attaches the proposed settlement term sheet and the proposed forms of consent judgment. In his reply, the Trustee addresses the factors relevant to approval of settlements. *See generally Trustee's Reply Brief in Motion for Settlement Procedures.*

The objecting defendants argue either that the settlements are not justified or that they should issue only upon notice and hearing for the following reasons:

1.   The Trustee opted to file 400 separate adversary complaints and should not now be heard to complain of attendant notice and hearing requirements.

2.   The Trustee opposed the motion for class certification on the basis that the factual scenario of each investment was unique and now tries to lump defendants into classes without distinction.

3.   There is no way to consider or determine whether the proposed settlements are fair and reasonable to non-settling creditors without notice and a hearing.

4.   There is no way to determine whether *pro se* defendants are receiving proper legal advice when considering settlement. There is no indication of representations made to induce settlement.

5.   It is unclear whether settling defendants are advised that they may be subject to separate suits.

6.   The Trustee's proposed consent judgments do not address the effect of *res judicata* and collateral estoppel on subsequent actions currently held in injunctive abeyance.

7.   The settlements should determine the amount and allowance of a settling defendant's proof of claim with regard to preferential payments instead of permitting objection to subsequent proofs of claim filed. The Trustee's accountants should be able to determine the preferential payments made to each settling defendant, especially given the appointment of a pre-petition receiver.

8.   The settlement procedures motion is premature given the pending consolidated motions to dismiss and motion for class certification. Factual development via discovery is needed.

9.   There exists no consideration in exchange for settlements avoiding liens unsupported by equity.

10.  The Trustee's prior consent judgments for dismissal without prejudice were not on notice and hearing.

11.  The proposed settlement options will discourage remaining defendants from negotiating better terms and would enable the Trustee to lock remaining defendants into his settlement options.

12.  The Trustee has not explained the chosen percentage cutoffs and there exists no way to determine their reasonableness.

13.  Use of Federal Rule of Bankruptcy Procedure 9019(b) is improper in light of the complexity of these adversary proceedings.

- 8 -

14.  The Trustee seeks to determine property ownership by settling with the nominee title holder, subsequent to the institutional lenders granting loans upon representations of ownership, without the benefit of discovery. This determination of ownership is at the heart of the lender complaints involving numerous defendants.

15.  The burden to the Trustee, Court, and the estate can be addressed by way of omnibus motions to approve settlements on notice and hearing.

By way of reply, the Trustee points out that these are not cookie–cutter settlement options. *Trustee's Reply Brief in Motion for Settlement Procedures*, ¶ 7. Instead, they came as the result of extensive settlement negotiations with defendants throughout the course of the adversary proceedings. *Trustee's Application in Support of Motion for Settlement Procedures*, ¶ 8. In addition, the options delineate between defendants subject to preference actions and those who are not. *Trustee's Reply Brief in Motion for Settlement Procedures*, ¶ 10. They also distinguish between investors who received more than the amount invested and those that did not. *Id.* at ¶ 8. Further, they sub-categorize those defendants who received less than a 100% return. *Id.* at ¶ 9.

Second, the Trustee does not contradict his previous position on the class certification motions. While the facts surrounding acquisition of the mortgage interests are unique per defendant, settling on the terms proposed would avoid those interests and render the factual details moot, permitting the Trustee to propose broad settlements for the resolution of claims. *Id.* at ¶ 11.

Third, assuming, *arguendo,* the proposed settlement structure is approved, nothing prohibits a defendant from litigating its rights or negotiating a different settlement. *Id.* at ¶ 12. The proposed settlement procedures are not designed to be exclusive. "To the extent that the Trustee entertains alternative settlement structures, those proposed settlements will be presented to this Court as provided under the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules, or in

- 9 -

accordance with any subsequent Orders entered by this Court." *Id.* at ¶ 13. The proposed settlement structures simply attempt to obviate lengthy, complex, and expensive litigation in as uniform and efficient a manner as possible.

The Trustee argues that his settlement procedures are proposed so as to protect and/or benefit *pro se* litigants. *Id.* at ¶ 18. As is this Court, the Trustee is aware of the oft-repeated assertion that *pro se* litigants cannot afford legal counsel. *Id.* Therefore, the Trustee has sought to minimize scenarios requiring repayment to the bankruptcy estate. *Id.* The proposed terms were developed in light of the Trustee's determination that many of his choses in action against individual defendants can be resolved by claim reduction or waiver. *Id.* Claim reduction would serve the tri-partite purpose of minimizing administrative claims against the estate, litigation costs of the defendants, and claims for purposes of distribution.

Fifth, many settling defendants are represented by legal counsel. *Id.* at ¶ 25. These defendants' legal counsel see fit to settle the Trustee's adversary complaints in the same manner as *pro se* defendants. *Id.* Therefore, the settlements, while not acceptable to all litigants, survive scrutiny of members of the bar admitted to practice before this Court. *Id.* No representations other than the terms of settlement were made to *pro se* defendants to induce settlement. *Id.* at ¶ 26. Further, each *pro se* defendant is advised to seek legal counsel prior to executing a consent judgment. *Id.*

The Trustee also argues that the proposed settlements may be made final. "To the extent that a defendant wishes to resolve its claim against the estate in the context of the proposed settlement, nothing in the proposed settlement bars that resolution." *Id.* at ¶ 28. In addition, the Trustee's reservation of rights to recover preferential payments exists only if the parties do not settle this

aspect.  *Id.* at ¶ 29.  However, "if a defendant has received a preferential transfer, and that preferential transfer cannot be resolved by the reduction of claim as proposed, the parties are required to negotiate an alternative resolution of that issue."  *Id.*  Upon agreement, each party will waive its rights.  *Id.*

As to the issue of consideration, defendants who have little or no gain to realize through litigation should not be required to do so.  *Id.* at ¶ 37.  The Trustee juxtaposes whether defendants whose mortgages were randomly assigned to properties with insufficient equity should be required to litigate without hope of meaningful recovery.  *Id.*

Looking to the terms of the proposed consent judgments, the Trustee argues that the doctrines of *res judicata* and collateral estoppel do not preclude subsequent litigation despite these settlements.  *Id.* at ¶¶ 46-47.  Additionally, the Trustee is aware of no legal authority that would preclude settlement with a defendant and subsequent use of that individual as a fact witness.  *Id.* at ¶ 45.  Finally, he notes that the objecting defendants fail to specify any adverse consequence to non-settling parties in permitting these settlement procedures.  *Id.* at ¶ 48.

Douglas Robertson, on behalf of himself and seven other individual defendants, filed a letter brief in support of the Trustee's settlement motion.  By way of support, their counsel explains that the eight settling defendants represented fall into different settlement classes.  *Letter Brief of Douglas Robertson et al. in Support of the Trustee's Motion for Settlement Procedures*, pp. 1-2.  In addition, the eight defendants hold various property interests including first mortgages, second mortgages and fractional interests therein.  *Id.* at 2.  Each defendant was counseled as to the advantages and disadvantages of the proposed settlement and has made an informed decision.  *Id.*

at 3.  Mr. Robertson's counsel also avers that he undertook like discussions with similarly situated clients who have chosen to litigate instead.  *Id.* at 3-4.

## C.      Legal Arguments Relating to the Bar Date and Claims Motion

At this juncture, the Trustee is unable to determine whether the estate will have funds sufficient to enable a distribution to unsecured creditors but believes it may be able to do so. *Trustee's Application in Support of Motion for Claims Procedures*, ¶¶ 4-5.  An auction sale of approximately one third of the properties at issue has already taken place.  *Id.* at ¶ 4.  A second auction will take place in early November 2007.  The Trustee's adversary proceedings seek, *inter alia*, to determine the extent and validity of liens.  *Id.*  Therefore, the Trustee believes it is timely for the Court to institute a claims bar date.  In addition, the Trustee has served over 2,000 parties entitled to notice in the global proceeding on two prior occasions and seeks authority to permit a claims and noticing agent, retained by the Trustee, to serve notice of the bar date.[3]  *Id.* at ¶¶ 6-7.

The Trustee anticipates that the majority of claims will relate to the amount of principal invested in the Debtor, interest thereon, and for liens against the properties sold.  *Id.* at ¶ 8.  As such, he requests permission to utilize the modified form of notice and proof of claim forms attached to his motion papers.  *Id.*  No party objects to use of these modified forms.

The Irrevocable Trust FBO Goldie Keitz, Beverly Keitz, Stuart Keitz, and Lois Perlman (hereinafter "Keitz Defendants") objects to the Trustee's Claims Motion arguing that claims procedures are not necessary at this point in time and would simply constitute another obstacle to

---

[3] Attendant to the claims motion, the Trustee filed an application to retain Garden City Group, Inc. as his claims and noticing agent.  This Court entered an Order granting the application for retention, as even the objectors to the claims procedures motion admitted that a claims procedure should be instituted at some point.  *First Objection of The Irrevocable Trust FBO Goldie Keitz, Beverly Keitz, Stuart Keitz, and Lois Perlman to the Trustee's Claims Procedures Motion*, p. 1; *Second Objection of The Irrevocable Trust FBO Goldie Keitz, Beverly Keitz, and Lois Perlman to the Trustee's Claims Procedures Motion*, p. 2.

paying investors the amounts owed them.  *First Objection of the Keitz Defendants to the Trustee's Motion for Claims Procedures*, pp. 1-2.  Second, the Trustee's proposed settlement procedures permit a reservation of his rights to object to subsequent claims.  *Second Objection of the Keitz Defendants to the Trustee's Motion for Claims Procedures*, p. 2.  It is argued this constitutes the true reason why the Claims Procedures Motion was filed.  *Id.*  When taken together, the motions are designed to force individual defendants to give up any leverage they may possess by virtue of their alleged liens in exchange for future litigation involving claims objections.  *Id.*  For these reasons, the Keitz Defendants request that the claims procedure be postponed until final resolution of the adversary proceedings, at which point the only remaining issue is the amount of each claim.  *Id.* at 3.

### Discussion

**A.**     **Settlement Motion**

    **i.**     **Reasonableness of Settlement**

As representative of the bankruptcy estate, a trustee maintains a fiduciary relationship with estate creditors.  *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996) (citing *see Commodity Futures Trading Comm. v. Weintraub*, 471 U.S. 343, 354-55 (1985)).  It is the trustee's duty to investigate the assets as well as sources of income to the estate and "collect and reduce to money the property of the estate. . . ."  11 U.S.C. § 704(a)(1) (2007).  In so doing, the trustee is "bound to be vigilant and attentive in advancing [the estate's] interests."  *In re Martin*, 91 F.3d at 394 (emphasis in original) (citation omitted).

Federal Rule of Bankruptcy Procedure 9019 governs compromises to which a trustee in bankruptcy is a party.  A bankruptcy court may approve a compromise or settlement on motion of a trustee after notice and hearing as provided in Federal Rule of Bankruptcy Procedure 2002.  *See*

- 13 -

F<span>ED</span>. R. B<span>ANKR</span>. P. 9019(a).  A trustee bears the burden to show that a proposed settlement is in the

best interests of the estate and the debtor.  *See In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798,

804 (E.D. Pa. 1986).   In assessing the best interest to the debtor, the Court must look to the

consideration for settlement.  *Id.*  This analysis pits the value of rights relinquished by the debtor

versus the value received in return.  *Id.*  In determining whether to approve a proposed settlement,

a court is permitted to "take judicial notice of the record in prior related proceedings, and draw

reasonable inferences therefrom."  *Id.* at 804 (citation omitted); *see* F<span>ED</span>. R. E<span>VID</span>. 201.  "To

minimize litigation and expedite the administration of a bankruptcy estate 'compromises are favored

in bankruptcy.'"  *In re Martin*, 91 F.3d at 393 (citing 9 C<span>OLLIER ON</span> B<span>ANKRUPTCY</span> ¶ 9019.03[1]

(15th ed. rev. 1993)).  The Third Circuit has clearly stated that, in determining whether to approve

a settlement, the court must analyze:

> (1) the probability of success in litigation; (2) the likely difficulties
> in collection; (3) the complexity of the litigation involved, and the
> expense, inconvenience and delay necessarily attending it; and (4) the
> paramount interest of the creditors.

*In re Martin*, 91 F.3d at 393 (citing *see In re Neshaminy Office Bldg. Assocs.*, 62 B.R. at 803); *see*

*Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006) (quoting *In*

*re Martin*, 91 F.3d at 393).

Furthermore, the Third Circuit has found that:

> [i]n determining whether to approve the trustee's application to settle
> a controversy, the Bankruptcy Court does not substitute its judgment
> for that of the trustee.  'Nor is the court 'to decide the numerous
> questions of law and fact raised by [objections] but rather to canvass
> the issues to see whether the settlement fall[s] below the lowest point
> in the range of reasonableness."

- 14 -

*In re Neshaminy Office Bldg. Assocs.*, 62 B.R. at 803 (citations omitted). Stated otherwise, it is not a court's role to substitute its own discretionary judgment for that of a trustee. Instead, a court must determine whether the trustee has not settled too cheaply or compromised too much.

"It is axiomatic that settlement will almost always reduce the complexity and inconvenience of litigation." *In re Nutraquest, Inc.*, 434 F.3d at 646 (citing *see, e.g., Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 434 (1968) (superseded by statute on other grounds) ("Litigation and delay are always the alternative to settlement, and whether that alternative is worth pursuing necessarily depends upon a reasoned judgment as to the probable outcome of litigation.")). Balancing the complexity and delay of litigation with the benefits of settlement is part in parcel of the probability of success in litigation factor. *See In re Nutraquest, Inc.*, 434 F.3d at 646 (citation omitted).

Clearly, no one disputes that the litigation of these adversary complaints is complex and very expensive. The litigation expense is absorbing most, if not all, of the estate's assets. Continuing litigation will surely require extensive discovery relating to each of the large number of defendants. This is further exacerbated by required discovery as to each property. A large number of the properties at issue are mortgaged in excess of value. Based upon property values obtained at auction, extended and complex litigation costs could consume the proceeds of sale. Therefore, both the Trustee and defendants face the prospect of extraordinary legal fees that may swallow any possible distribution. Even if distribution were not completely precluded, its amount would be greatly diminished. Finally, the complexity of the litigation is necessarily attended by substantial delays in resolution.

- 15 -

On numerous occasions, this Court has discussed the turmoil caused to *pro se* defendants by the Debtor's conduct. The import of these defendants' *pro se* status is significant. First, many *pro se* defendants are left without the financial wherewithal to hire counsel. Indeed, some lost their life savings and do not have the resources to make ends meet. Second, given this lack of resources, collection efforts against *pro se* defendants would likely be fruitless and certainly burdensome given the necessary costs to effect collection. Third, many *pro se* defendants have addressed the Court and asked that they be dismissed from the adversary proceedings given the Debtor's initial fraud and the Trustee's subsequent attempts to exact additional payment from them. Frankly, what they seek is finality to this chapter in their lives.

Moreover, the defendants' desire to settle must be addressed within the context of the Debtor's alleged schemes to defraud. Many defendants have lost a large portion of their investment with the Debtor, only to be left with an undersecured mortgage due either to insufficient equity or a depressed sale market. For these defendants, the success of litigation is hollow. The only prospect litigation provides is increased cost without reward. To require these defendants to litigate as opposed to cut their losses is punitive and unfair. Surely, certain defendants are left with secured positions and deep pockets to drive the litigation. While there exists some benefit of litigation to certain defendants in these or similar positions, their will should not be impressed upon the whole.

Importantly, the Trustee's settlement procedures provide for the interest of all creditors. Upon settlement, factually unique litigation involving each defendant and each property may be resolved and rendered moot. In addition, the estate will not bear the burden of funding further litigation with little or no reward. Remaining defendants will also benefit by settlement due to more efficient and timely resolution of their claims, resulting in simplified litigation and expedited

distribution, if any.  Defendants permitted to file proofs of claim will be relinquished to general unsecured status.  As to Defendants who received in excess of their principal investment, other creditors will benefit by collection of additional monies available for distribution.

The logic and reasonableness of the Trustee's settlement structure is apparent.  As a whole, investors are grouped and measured by their aggregate amount of investment.  Given the Debtor's operation as a Ponzi scheme to defraud investors, it is reasonable to permit those investors to retain whatever portion of principal was repaid to them.  In addition, while not attempting to equalize principal retained by settling investors, the Trustee attempts to minimize the variation in payment to each. The Trustee's proposed settlement procedures also resolve, at a minimum, complex adversary proceedings.  Settling defendants that maintain the right to file an unsecured proof of claim may also resolve any possible objection within the settlement itself.  Therefore, the Trustee's procedures provide to each settling defendant the option of finality of litigation with the Trustee.

Some investors argue that the Trustee should not be permitted to reserve his rights to object to a claim on the basis of preferential transfers if this issue is not settled as part of the proposed consent judgment.  Essentially, they argue the Trustee should not be given a second bite at the apple.  However, the instant litigations are in the pleading stage and while the Trustee has alleged that defendants were paid preferential transfers, this point has not been litigated on the merits.  Therefore, an objection to a claim on account of a preferential transfer would be the first instance in which the issue was decided.  In addition, the Court notes that a pre-petition receiver was in place for forty (40) days prior to the petition date, severely impacting the extent of preferential payments.  Moreover, even with a reservation on the preference issue, what is now complex litigation would be greatly minimized.

- 17 -

At oral argument, the Trustee's counsel explained the settlement cutoffs of 50% and 100%. The 50% figure was chosen based upon an investor analysis of the Debtor's books and records. Specifically, the analysis determined that all investors in the Debtor received an average payout of 54.64% of the total amount invested with the Debtor.  *See Certification of Matthew Schwartz in Support of the Trustee's Request to Enter Default Judgment Against Wayne Puff*, Adv. No. 06-02111, Exhibits A and B.  The 100% figure serves to distinguish between investors who gained on their investment versus those who lost.

Looking to the arguments relating to the reasonableness of the settlements themselves, the Trustee is correct that resolution of the adversary complaints may be done in group fashion as the potentially unique circumstances of each defendant and litigation only surface upon discovery.  The Trustee has averred, under oath, that neither he nor his counsel has made any representations to induce settlement other than the terms of the proposed settlement structure.  It is the Court's obligation to ascertain whether the Trustee's proposed treatment of defendants is reasonable.  In judging this, the Court is mindful that the motion was filed in the Debtor's global proceeding and notice was given to all defendants, only a limited few of which opposed this motion.  Further, the Trustee owes a duty to the creditor body as a whole and seeks to settle litigation in an effort to minimize expenses and thus benefit the estate and the creditors by way of preservation of assets for distribution.

It is argued that the proposed settlement options will discourage remaining defendants from negotiating better terms and effectively lock those defendants into the settlement procedures. However, there is no mandate that the defendants enter into settlements with the Trustee.  In addition, the investors who do not wish to settle with the Trustee on the proffered terms are free to

negotiate separate terms and conditions of settlement to be approved by this Court upon notice and hearing.

The defendants next argue that the Settlement Motion is premature given pending motions to dismiss and for class certification. This argument puts the cart before the horse. An auction of numerous properties has taken place with another auction sale scheduled. Given the amount of sale proceeds generated, the Trustee believes a distribution is possible as evidenced by his filing this motion shortly after auction. Motions to dismiss were not properly filed by each defendant and were not filed in every adversary proceeding. Even if this Court did permit a class action, defendants would still be permitted the right to opt out of any class certified under Federal Rule of Civil Procedure 23, made applicable in adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7023. Finally, this argument presumes the outcome of those motions. The defendants next point to the lack of consideration[4] in settling with defendants whose liens are unsupported by equity. Again, this argument presumes the outcome of litigation and that liens with an alleged higher priority are valid in substance and amount. Without settlement, the outcome of litigation can only be had at the expense of the estate. Litigation is inherently risky. In addition, the instant litigation is complex. The Trustee is willing to forego his ability to prosecute these adversary complaints in exchange for the cessation of litigation, and in some cases the repayment of funds to the estate. In addition, the settling defendants could prevail as to the validity of their own liens while purported senior liens are rendered invalid. Therefore, the settling defendants are also compromising their legal rights in exchange for retention of principal paid and the possibility for

---

[4] "The essential requirement of consideration is a bargained-for exchange of promises or performance that may consist of an act, a forbearance, or the creation, modification, or destruction of a legal relation." *Martindale v. Sandvik, Inc.*, 173 N.J. 76, 87 (N.J. 2002) (quoting *Shebar v. Sanyo Bus. Sys. Corp.*, 111 N.J. 276, 289 (N.J. 1988) (questioned on other grounds) (internal citation omitted)).

some to file an unsecured claim against the estate.  Therefore, there exists valid consideration for

the proposed settlements.

Finally, some defendants argue that a settling defendant would be precluded from acting as

a fact witness in the context of other adversary proceedings or subsequent litigation.  Federal Rule

of Evidence 408 specifically contemplates the ability of a settling party to act as a fact witness and

merely limits the admissibility of compromises and attempts to compromise, as well as statements

made therein and evidence garnished therefrom.  *See* FED. R. EVID. 408.  However, Rule 408 does

not limit the ability of a settling party to testify.  *See id*; *Neuberger v. Shapiro*, 110 F. Supp. 2d 373,

385 (E.D. Pa. 2000).

### ii.     Form of Settlements / Consent Judgments

The defendants also take issue with the form of the consent judgments, arguing that their

preclusive effect prejudices decisions upon the merits in subsequent litigations due to doctrines

including entire controversy, *res judicata,* and collateral estoppel.  The Trustee counters that these

doctrines do not inhibit subsequent litigation.  A review of the proposed consent judgments makes

no mention of any preclusive doctrine.  In an effort to avoid any prejudicial effect upon  subsequent

proceedings, the Trustee is directed to add language to the proposed consent judgments to state that

they do not modify, alter, or impinge upon the rights of persons or entities not party to the agreement

under doctrines including, but not limited to, entire controversy, *res judicata*, and collateral estoppel.

In addition, the Court hereby requires that the proposed consent judgments provide language

stating that the settlement serves only to resolve the claims brought by the Trustee and does not

affect any other legal claims properly brought at a later time by any other person or entity.

### iii.     Settlement Without Notice

"After a hearing on such notice as the court may direct, the court may fix a class or classes of controversies and authorize the trustee to compromise or settle controversies within such class or classes without further hearing or notice." FED. R. BANKR. P. 9019(b).  Pursuant to 11 U.S.C. § 105, a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a) (2007).  "[T]he purpose of Rule 9019 is to protect the interest of others who are not parties to the agreement and whose rights may be affected." *Nelson Co. v. Amquip Corp. (In re Nelson Co.)*, 117 B.R. 813, 820 n.19 (Bankr. E.D. Pa. 1990), *aff'd*, 128 B.R. 930 (E.D. Pa. 1991), *aff'd*, 959 F.2d 1260 (3d Cir. 1992).

As stated in the Advisory Committee Note to the original enactment of Federal Rule of Bankruptcy Procedure 9019, "subdivision (b) is the same as former Rule 8-514(b), which was applicable to railroad reorganizations.  Subdivision (b) permits the court to deal efficiently with a case in which there may be a large number of settlements." FED. R. BANKR. P. 9019, 1983 Advisory Committee's Note.  The Advisory Committee's Note to former Rule 8-514(b) explains that it "was intended to address those circumstances where 'compliance with the hearing requirement of subdivision (a) is neither practical nor efficient. . . .'" *In re Found. for New Era Philanthropy*, 1996 Bankr. LEXIS 1892, at *42 n.23 (Bankr. E.D. Pa. Aug. 21, 1996).

In review of this area of bankruptcy procedure, scant explanation exists as to the intended scope or limitation on the use of Federal Rule of Bankruptcy Procedure 9019(b).  Indeed, the leading treatise on bankruptcy expounds upon this rule in only two paragraphs.

> There are occasions in which a trustee will file a large number of complaints against many individual defendants. For example, actions to recover preferences may involve similar issues and seek recovery of relatively small amounts.  In such situations, many settlements are

often reached during the course of the litigation.  Recognizing that forcing the trustee to file a new motion each time a settlement is reached would be onerous, expensive and burdensome, Rule 9019(b) authorizes the court, after hearing on such notice as the court directs, to fix a class or classes of controversies and authorize the trustee to compromise or settle controversies within such class or classes without further hearing or notice.

In the example postulated above, involving numerous preference actions, the court may enter an order authorizing the trustee to settle any such matter without further hearing as long as the compromise amount is not less than a certain percentage of the recovery sought in the complaint. Other conditions for the permissible range of settlements without further court order may be imposed as the court sees fit.

10 COLLIER ON BANKRUPTCY ¶ 9019.03 (Alan N. Resnick & Henry J. Sommer eds.,15th ed. rev.);

*see In re Found. for New Era Philanthropy*, 1996 Bankr. LEXIS 1892, at *42 (permitting a trustee

to enter into a group settlement with donors to an alleged pyramid or Ponzi scheme, operated by the

debtor as benefactor of donations, promising donors that their donations would be matched by

anonymous donations and routed to the charities of their choice) (citing *Boyd v. N. End Auto Sales,*

*Inc. (In re Check Reporting Services, Inc.)*, 137 B.R. 653, 656 (Bankr. W.D. Mich. 1992) (trustee

authorized to settle class of preference claims for not less than 25% of asserted preference amount);

*see also Bartel v. Bar Harbor Airways, Inc.*, 196 B.R. 268, 271 (S.D.N.Y. 1996) (affirming a

bankruptcy court order allowing the trustee to enter into a group settlement, with an elective opt-out

provision, relating to employee claims)).

The objectors first argue that the Trustee's attempt to utilize Federal Rule of Bankruptcy

Procedure 9019(b) to settle these complex adversary proceedings is improper as it is designed for

simple settlements, such as in preference actions.  This argument is without logic or support and is

belied by the use of Rule 9019(b) in large, complex cases such as *In re Found. for New Era*

- 22 -

*Philanthropy* and *Bartel* cited above.  In addition, *Collier's* reference to preference actions is only illustrative of the types of issues that may be settled under Rule 9019(b).  Indeed, neither the language of Rule 9019(b) nor that of former Rule 8-514(b), to which Rule 9019(b) is substantially similar, limits its application to particular causes of actions or complexity of actions.

Second, the defendants point to the Trustee's choice to file the numerous adversary proceedings and ask the Court to hold the Trustee accountable to the notice requirements triggered by his decision.  This argument ignores the purpose of Rule 9019(b), which is practicality and efficiency, as opposed to reciprocity.  *See* FED. R. BANKR. P. 9019, 1983 Advisory Committee's Note.  Seemingly, the defendants would require the Trustee to provide notice to over 2,000 individuals or entities and the Court to conduct separate hearings on each settlement.  That procedure is rejected as being onerous, expensive, and burdensome.

Certain defendants argue that the Trustee should instead be required to submit omnibus motions for settlements on notice and hearing.  While more efficient than requiring a hearing on each settlement motion, this proposition also misses the mark.  If a settlement procedure is approved previously, there would exist no reasonable purpose for requiring a subsequent hearing for an identical settlement as to another defendant.  Instead, Rule 9019(b) exists for an intended purpose, the settlement of classes of controversies without further notice and hearing upon approval of the underlying settlement procedures.  The case *sub judice* is advanced by utilization of a Rule 9019(b) procedure.

Finally, the defendants argue that there exists no way to determine whether a proposed settlement is fair and reasonable to non-settling creditors without notice and hearing.  This argument is controverted by two responses.  If fairness and reasonableness cannot exist without repeated

- 23 -

notice and hearing, then there is no purpose for Federal Rule of Bankruptcy Procedure 9019(b).  A basic canon of statutory interpretation is to effectuate all of the provisions of a statute so as not to render any portion superfluous.  *See Jarecki v. G. D. Searle & Co.*, 367 U.S. 303, 307-08 (1961) (citing *see, e.g., U.S. v. Menasche*, 348 U.S. 528, 538-39 (1955)).  In addition, the reasonableness of the settlement procedures has already been determined *supra*.  In its analysis, this Court accounted for "the paramount interest of the creditors."  *In re Martin*, 91 F.3d at 393 (citing *see In re Neshaminy Office Bldg. Assocs.*, 62 B.R. at 803); *see In re Nutraquest, Inc.*, 434 F.3d at 644 (quoting *In re Martin*, 91 F.3d at 393).

For these reasons, the Trustee is permitted to enter into the proposed settlements, within the parameters set forth herein without further notice or hearing, pursuant to Rule 9019(b).

**B.**     **Claims Motion**

On or about November 30, 2005, the Clerk of the Bankruptcy Court sent a notice to all parties listed on the Debtor's bankruptcy petition as potential creditors.  The notice advised potential creditors that there appeared to be no assets available to make a distribution and that they should not file a proof of claim unless subsequently advised to do so.  Now, by way of application on this motion before the Court, the Trustee advises this Court that payment of a dividend now appears possible.  Federal Rule of Bankruptcy Procedure 2002(e) provides that:

> In a chapter 7 liquidation case, if it appears from the schedules that there are no assets from which a dividend can be paid, the notice of the meeting of creditors may include a statement to that effect; that it is unnecessary to file claims; and that if sufficient assets become available for the payment of a dividend, further notice will be given for the filing of claims.

FED. R. BANKR. P. 2002(e).

If a notice of insufficient assets was issued previously and the trustee subsequently notifies the court that a payment appears possible, "the clerk shall notify the creditors of that fact and that they may file proofs of claim within 90 days after the mailing of the notice." FED. R. BANKR. P. 3002(c)(5). "Matters concerning claims administration, including such issues as proof of claim forms and claims bar dates are governed by the federal Bankruptcy Code and Rules. In these areas the Court has some limited discretion." *In re USG Corp.*, 290 B.R. 223, 225 (Bankr. D. Del. 2003) (formulating claims procedures and setting a claims bar date for cancer claimants in asbestos litigation, but refusing to do so for tort claimants).

The sum and substance of the Trustee's application to institute a claims bar date at this juncture is as follows.

> The Trustee conducted a public auction of real estate owned by the Debtor and is pursuing adversary proceedings to determine, among other things, the extent, validity and priority of the liens against that real property. *The Trustee is unable to determine at this time how much, if any, of the funds generated from the sale will be available to pay unsecured creditors.* However, creditors should be advised to file proofs of claim at this time.

*Trustee's Application for an Order Establishing a Claims Bar Date*, ¶ 4 (emphasis added).

Here, after conducting a three-day auction sale and generating millions of dollars in liquid assets for the benefit of the estate, the Trustee acknowledges that he is unable to determine whether a distribution to unsecured creditors is possible. In addition, a sale of remaining properties is pending and additional available funds may be realized.

However, the bedrock of this global proceeding consists of approximately 400 litigious adversary proceedings with numerous counts of affirmative relief sought by the Trustee. The parties to those adversary proceedings have not had the benefit of discovery. Moreover, defending parties

- 25 -

are currently stayed from filing cross-claims, counter-claims, and third-party claims against individuals or entities alleged to be instruments of the Debtor's fraud. Essentially, the Court does not have before it anything more than the Trustee's allegations against the defending parties, upon which the Trustee asks this Court to determine that claims procedures are necessary for the efficient administration of the Debtor's global proceeding. While the prospect of settlement with many defendants exists, it surely does not exist with all. To permit the institution of claims procedures at this juncture would be to permit the Trustee to assert the affirmative relief he seeks against the defending parties in the underlying adversarial litigations in the form of claims objections. At the same time, the defending parties are enjoined from making assertions against the Debtor or the instruments of its fraud. Finally, to the extent the Trustee's positions in the litigations and claims objections are duplicative, the cost of prosecuting same would constitute a waste of estate assets until the majority of settlements are reached.

For these reasons, the Trustee's motion to institute a claims bar date and claims procedures at this time is denied without prejudice. Once sufficient settlements have been obtained, the pending adversary complaints reduced in number, and the size of the estate better quantified, the issue can be revisited. There may well come a time to set a claims bar date, but that time is not now.

## Conclusion

Based upon the foregoing, the Trustee's motion to enter into settlements without further notice or hearing, as described and conditioned in this Opinion, is hereby granted. The Trustee's motion to institute a claims bar date and permit modified claims and notice procedures is hereby denied without prejudice.

An Order in conformance with this Opinion has been entered by the Court and a copy is

attached hereto.


/s / *Donald H. Steckroth*
_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: October 22, 2007