NOT FOR PUBLICATION

FILED

JAMES J. WALDRON, CLERK

**NOV. 8, 2013**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ *Ronnie Plasner*

JUDICIAL ASSISTANT

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | Case No.: 05-60442 (DHS) |
| **NJ AFFORDABLE HOMES CORP.,** | Chapter: 7 |
| Debtor. | Judge: Donald H. Steckroth, U.S.B.J. |

### [ADVERSARY PROCEEDINGS AND APPEARANCES ATTACHED]

### OPINION

# ADVERSARY PROCEEDINGS AND APPEARANCES

| ADV. PRO. | DEFENDANT | COUNSEL |
|---|---|---|
| 06-2275 | Profit Making Ventures, LLC | Reed I. Altholz, Esq.<br>19 Florence Drive<br>P.O. Box 5634<br>Clark, New Jersey  07066 |
| 06-2305 | Steven Theriault | Teich Groh<br>Brian W. Hofmeister, Esq.<br>691 State Highway 33<br>Trenton, New Jersey 08619 |
| 06-2469 | Albert Roy Karajian | Jennifer V. Hetrick, Esq.<br>56 Main Street, Suite 2B<br>Flemington, New Jersey    08822 |
| 06-2469 | American Home Mortgage Acceptance Inc. | Stern, Lavinthal, Frankenberg & Norgaard<br>Gary K. Norgaard, Esq.<br>184 Grand Avenue<br>Englewood, New Jersey 07631<br><br>Weiner Brodsky Sidman Kider PC<br>David M. Souders, Esq.  (pro hac vice)<br>Nancy W. Hunt, Esq.  (pro hac vice)<br>1300 19th Street, NW, Fifth Floor<br>Washington, DC 20036 |
| 06-2573 | Joseph Auricchio | Ravin Greenberg, PC<br>Bruce J. Wisotsky, Esq.<br>101 Eisenhower Parkway<br>Roseland, New Jersey  07068 |
| 06-2587 | Jeff L. Ribley | Forman Holt Eliades & Youngman LLC<br>Harry M. Gutfleish, Esq.<br>80 Route 4 East - Suite 290<br>Paramus, New Jersey 07652<br>Counsel for Charles M. Forman, Chapter 7 Trustee |

| ADV. PRO. | DEFENDANT | COUNSEL |
|---|---|---|
| 06-2594 | Betty Rosa Trust | Greenbaum, Rowe, Smith & Davis LLP<br>Nancy Isaacson, Esq.<br>75 Livingston Avenue<br>Roseland, New Jersey 07068 |
| 06-2594 | Joseph Auricchio | Ravin Greenberg, PC<br>Bruce J. Wisotsky, Esq.<br>101 Eisenhower Parkway<br>Roseland, New Jersey  07068 |
| 06-2604 | Charles and Virginia Hopkins | Stark & Stark, PC<br>Timothy P. Duggan, Esq.<br>993 Lenox Drive, Bldg. 2<br>P.O. Box 5315<br>Princeton, New Jersey 08543-5315 |
| 06-2605 | Profit Making Ventures,  LLC | Reed I. Altholz, Esq.<br>19 Florence Drive<br>P.O. Box 5634<br>Clark, New Jersey  07066 |
| 06-2618 | Reginald Tuggle | Forchelli, Curto, Schwartz, Mineo, Carlino & Cohn<br>Gary M. Kushner, Esq.<br>330 Country Road<br>P. O. Box 31<br>Mineola, New York 11501 |
| 06-2629 | Evette Beckett-Tuggle | Forchelli, Curto, Schwartz, Mineo, Carlino & Cohn<br>Gary M. Kushner, Esq.<br>330 Country Road<br>P. O. Box 31<br>Mineola, New York 11501 |
| 06-2654 | Diane Musto | Teich Groh<br>Brian W. Hofmeister, Esq.<br>691 State Highway 33<br>Trenton, New Jersey 08619 |
| 06-2656 | Betty Rosa | Greenbaum, Rowe, Smith & Davis LLP<br>Nancy Isaacson, Esq.<br>75 Livingston Avenue<br>Roseland, New Jersey 07068-3701 |

| ADV. PRO. | DEFENDANT | COUNSEL |
|-----------|-----------|---------|
| 06-2657 | Betty Rosa | Greenbaum, Rowe, Smith & Davis LLP<br>Nancy Isaacson, Esq.<br>75 Livingston Avenue<br>Roseland, New Jersey 07068-3701 |
| 06-2657 | Robert Rosa ITF Melissa Rosa | Greenbaum, Rowe, Smith & Davis LLP<br>Nancy Isaacson, Esq.<br>75 Livingston Avenue<br>Roseland, New Jersey 07068-3701 |
| 06-2657 | Melissa Rosa | Greenbaum, Rowe, Smith & Davis LLP<br>Nancy Isaacson, Esq.<br>75 Livingston Avenue<br>Roseland, New Jersey 07068-3701 |
| 06-2683 | Joseph Auricchio | Ravin Greenberg, PC<br>Bruce J. Wisotsky, Esq.<br>101 Eisenhower Parkway<br>Roseland, New Jersey  07068 |
| 06-2683 | Vladimir Maskileyson | Reed I. Altholz, Esq.<br>19 Florence Drive<br>P.O. Box 5634<br>Clark, New Jersey  07066 |
| 06-2684 | Joseph Auricchio | Ravin Greenberg, PC<br>Bruce J. Wisotsky, Esq.<br>101 Eisenhower Parkway<br>Roseland, New Jersey  07068 |
| 06-2685 | John Koenigshof | Greenbaum, Rowe, Smith & Davis LLP<br>Nancy Isaacson, Esq.<br>75 Livingston Avenue<br>Roseland, New Jersey 07068-3701 |
| 06-2685 | Beverly Koenigshof | Greenbaum, Rowe, Smith & Davis LLP<br>Nancy Isaacson, Esq.<br>75 Livingston Avenue<br>Roseland, New Jersey 07068-3701 |
| 06-2685 | Kimberly Koenigshof | Greenbaum, Rowe, Smith & Davis LLP<br>Nancy Isaacson, Esq.<br>75 Livingston Avenue<br>Roseland, New Jersey 07068-3701 |

| ADV. PRO. | DEFENDANT | COUNSEL |
|-----------|-----------|---------|
| 06-2687 | Reginald Tuggle | Forchelli, Curto, Schwartz, Mineo, Carlino & Cohn<br>Gary M. Kushner, Esq.<br>330 Country Road<br>P. O. Box 31<br>Mineola, New York  11501 |
| 06-2704 | Robert E. Rosa Trust | Greenbaum, Rowe, Smith & Davis LLP<br>Nancy Isaacson, Esq.<br>75 Livingston Avenue<br>Roseland, New Jersey 07068-3701 |
| 06-2707 | Reginald Tuggle | Forchelli, Curto, Schwartz, Mineo, Carlino & Cohn<br>Gary M. Kushner, Esq.<br>330 Country Road<br>P. O. Box 31<br>Mineola, New York  11501 |
| 06-2709 | Evette Beckett-Tuggle | Forchelli, Curto, Schwartz, Mineo, Carlino & Cohn<br>Gary M. Kushner, Esq.<br>330 Country Road<br>P. O. Box 31<br>Mineola, New York  11501 |
| 06-2711 | Reginald Tuggle | Forchelli, Curto, Schwartz, Mineo, Carlino & Cohn<br>Gary M. Kushner, Esq.<br>330 Country Road<br>P. O. Box 31<br>Mineola, New York  11501 |
| 06-2712 | Joseph Auricchio | Ravin Greenberg, PC<br>Bruce J. Wisotsky, Esq.<br>101 Eisenhower Parkway<br>Roseland, New Jersey  07068 |
| 06-2716 | Vladimir Maskileyson | Reed I. Altholz, Esq.<br>19 Florence Drive<br>P.O. Box 5634<br>Clark, New Jersey  07066 |
| 06-2720 | Nancy Beavers | Ravin Greenberg, PC<br>Bruce J. Wisotsky, Esq.<br>101 Eisenhower Parkway<br>Roseland, New Jersey  07068 |

| ADV. PRO. | DEFENDANT | COUNSEL |
|---|---|---|
| 06-2720 | Joseph Auricchio, Custodian for Nancy Beavers | Ravin Greenberg, PC<br>Bruce J. Wisotsky, Esq.<br>101 Eisenhower Parkway<br>Roseland, New Jersey  07068 |
| 06-2726 | Robert Rosa | Greenbaum, Rowe, Smith & Davis LLP<br>Nancy Isaacson, Esq.<br>75 Livingston Avenue<br>Roseland, New Jersey 07068-3701 |
| 06-2726 | Robert E. Rosa Trust | Greenbaum, Rowe, Smith & Davis LLP<br>Nancy Isaacson, Esq.<br>75 Livingston Avenue<br>Roseland, New Jersey 07068-3701 |
| 06-2726 | Reginald Tuggle | Forchelli, Curto, Schwartz, Mineo, Carlino & Cohn<br>Gary M. Kushner, Esq.<br>330 Country Road<br>P. O. Box 31<br>Mineola, New York  11501 |
| 06-2727 | Joseph Auricchio | Ravin Greenberg, PC<br>Bruce J. Wisotsky, Esq.<br>101 Eisenhower Parkway<br>Roseland, New Jersey  07068 |
| 06-2727 | Charles and Virginia Hopkins | Stark & Stark, PC<br>Timothy P. Duggan, Esq.<br>993 Lenox Drive, Bldg. 2<br>P.O. Box 5315<br>Princeton, New Jersey 08543-5315 |
| 06-2733 | Nancy Beavers | Ravin Greenberg, PC<br>Bruce J. Wisotsky, Esq.<br>101 Eisenhower Parkway<br>Roseland, New Jersey  07068 |
| 06-2733 | Reginald Tuggle | Forchelli, Curto, Schwartz, Mineo, Carlino & Cohn<br>Gary M. Kushner, Esq.<br>330 Country Road<br>P. O. Box 31<br>Mineola, New York  11501 |

| ADV. PRO. | DEFENDANT | COUNSEL |
|---|---|---|
| 06-2733 | Joseph Auricchio | Ravin Greenberg, PC<br>Bruce J. Wisotsky, Esq.<br>101 Eisenhower Parkway<br>Roseland, New Jersey  07068 |
| 06-2733 | Joseph Auricchio as Custodian for Nancy Beavers | Ravin Greenberg, PC<br>Bruce J. Wisotsky, Esq.<br>101 Eisenhower Parkway<br>Roseland, New Jersey  07068 |
| 06-2740 | Bobby Joe Sweetser | Meyner and Landis<br>One Gateway Center, Suite 2500<br>Newark, New Jersey  07102 |
| 06-2741 | Keith Luberger | Scura, Mealey, Wigfield & Heyer<br>P. O. Box 2031<br>1599 Hamburg Turnpike<br>Wayne, New Jersey  07470-4024 |
| 06-2741 | Vladimir Maskileyson | Reed I. Altholz, Esq.<br>19 Florence Drive<br>P.O. Box 5634<br>Clark, New Jersey  07066 |
| 06-2742 | Nancy Beavers | Ravin Greenberg, PC<br>Bruce J. Wisotsky, Esq.<br>101 Eisenhower Parkway<br>Roseland, New Jersey  07068 |
| 06-2742 | Joseph Auricchio, Custodian for Nancy Beavers | Ravin Greenberg, PC<br>Bruce J. Wisotsky, Esq.<br>101 Eisenhower Parkway<br>Roseland, New Jersey  07068 |
| 06-2742 | Reginald Tuggle | Forchelli, Curto, Schwartz, Mineo, Carlino & Cohn<br>Gary M. Kushner, Esq.<br>330 Country Road<br>P. O. Box 31<br>Mineola, New York  11501 |
| 06-2742 | Estate of Samuel Weeks | Teich Groh<br>Brian W. Hofmeister, Esq.<br>691 State Highway 33<br>Trenton, New Jersey 08619 |

| ADV. PRO. | DEFENDANT | COUNSEL |
|-----------|-----------|---------|
| 06-2745 | Olga Diamond | Greenbaum, Rowe, Smith & Davis LLP<br>Nancy Isaacson, Esq.<br>75 Livingston Avenue<br>Roseland, New Jersey 07068-3701 |
| 06-2745 | John H. Alschuler, Jr. | Greenbaum, Rowe, Smith & Davis LLP<br>Nancy Isaacson, Esq.<br>75 Livingston Avenue<br>Roseland, New Jersey 07068-3701 |
| 06-2745 | Charles and Virginia Hopkins | Stark & Stark, PC<br>Timothy P. Duggan, Esq.<br>993 Lenox Drive, Bldg. 2<br>P.O. Box 5315<br>Princeton, New Jersey 08543-5315 |
| 06-2745 | Carol Scott | Carol Scott (Pro Se)<br>798 Ponce de Leon Road<br>Boca Raton, Florida  33432 |
| 06-2753 | Robert Rosa | Greenbaum, Rowe, Smith & Davis LLP<br>Nancy Isaacson, Esq.<br>75 Livingston Avenue<br>Roseland, New Jersey 07068-3701 |
| 06-2753 | Robert E. Rosa Trust | Greenbaum, Rowe, Smith & Davis LLP<br>Nancy Isaacson, Esq.<br>75 Livingston Avenue<br>Roseland, New Jersey 07068-3701 |
| 06-2753 | Reginald Tuggle | Forchelli, Curto, Schwartz, Mineo, Carlino & Cohn<br>Gary M. Kushner, Esq.<br>330 Country Road<br>P. O. Box 31<br>Mineola, New York  11501 |
| 06-2761 | Charles and Virginia Hopkins | Stark & Stark, PC<br>Timothy P. Duggan, Esq.<br>993 Lenox Drive, Bldg. 2<br>P.O. Box 5315<br>Princeton, New Jersey 08543-5315 |

| ADV. PRO. | DEFENDANT | COUNSEL |
|---|---|---|
| 06-2770 | Nancy Beavers | Ravin Greenberg, PC<br>Bruce J. Wisotsky, Esq.<br>101 Eisenhower Parkway<br>Roseland, New Jersey  07068 |
| 06-2770 | Joseph Auricchio | Ravin Greenberg, PC<br>Bruce J. Wisotsky, Esq.<br>101 Eisenhower Parkway<br>Roseland, New Jersey  07068 |
| 06-2770 | Edward Heimrich | Ravin Greenberg, PC<br>Bruce J. Wisotsky, Esq.<br>101 Eisenhower Parkway<br>Roseland, New Jersey  07068 |
| 06-2770 | Joseph Auricchio, Custodian for Nancy Beavers | Ravin Greenberg, PC<br>Bruce J. Wisotsky, Esq.<br>101 Eisenhower Parkway<br>Roseland, New Jersey  07068 |
| 06-2772 | Albert Roy Karajian | Jennifer V. Hetrick, Esq.<br>56 Main Street, Suite 2B<br>Flemington, New Jersey    08822 |
| 06-2817 | Milton Loshin | Reed I. Altholz, Esq.<br>19 Florence Drive<br>P.O. Box 5634<br>Clark, New Jersey  07066 |
| 06-2883 | Credit Suisse First Boston Financial Corporation | Sills Cummis Epstein & Gross P.C.<br>Charles N. Panzer, Esq.<br>One Riverfront Plaza<br>Newark, New Jersey 07102<br><br>Stern, Lavinthal, Frankenberg & Norgaard, LLC<br>Robert A. Pinel, Esq.<br>293 Eisenhower Parkway, Suite 300<br>Livingston, New Jersey 07039 |
| 06-2894 | National City Mortgage Co. | Stevens & Lee<br>Ronald L. Glick, Esq.<br>1415 Marlton Pike East – Suite 506<br>Cherry Hill, New Jersey 08034 |

| ADV. PRO. | DEFENDANT | COUNSEL |
|-----------|-----------|---------|
| 06-2894 | Commonwealth United Mortgage Company | Stevens & Lee<br>Ronald L. Glick, Esq.<br>1415 Marlton Pike East – Suite 506<br>Cherry Hill, New Jersey 08034 |
| 06-2896 | Steven Theriault | Teich Groh<br>Brian W. Hofmeister, Esq.<br>691 State Highway 33<br>Trenton, New Jersey 08619 |
| 06-2919 | Profit Making Ventures LLC | Reed I. Altholz, Esq.<br>19 Florence Drive<br>P.O. Box 5634<br>Clark, New Jersey  07066 |
| 06-2947 | National City Mortgage Co | Stevens & Lee<br>Ronald L. Glick, Esq.<br>1415 Marlton Pike East – Suite 506<br>Cherry Hill, New Jersey 08034 |
| 06-2957 | Robert Rosa | Greenbaum, Rowe, Smith & Davis LLP<br>Nancy Isaacson, Esq.<br>75 Livingston Avenue<br>Roseland, New Jersey 07068-3701 |
| 06-2957 | Robert E. Rosa Trust | Greenbaum, Rowe, Smith & Davis LLP<br>Nancy Isaacson, Esq.<br>75 Livingston Avenue<br>Roseland, New Jersey 07068-3701 |
| 06-2957 | Vladimir Maskileyson | Reed I. Altholz, Esq.<br>19 Florence Drive<br>P.O. Box 5634<br>Clark, New Jersey  07066 |
| 06-2958 | Robert Rosa ITF Melissa Rosa | Greenbaum, Rowe, Smith & Davis LLP<br>Nancy Isaacson, Esq.<br>75 Livingston Avenue<br>Roseland, New Jersey 07068-3701 |
| 06-2958 | Melissa Rosa | Greenbaum, Rowe, Smith & Davis LLP<br>Nancy Isaacson, Esq.<br>75 Livingston Avenue<br>Roseland, New Jersey 07068-3701 |

| ADV. PRO. | DEFENDANT | COUNSEL |
|-----------|-----------|---------|
| 06-2982 | Vladimir Maskileyson | Reed I. Altholz, Esq.<br>19 Florence Drive<br>P.O. Box 5634<br>Clark, New Jersey  07066 |
| 06-2982 | Reginald Tuggle | Forchelli, Curto, Schwartz, Mineo, Carlino & Cohn<br>Gary M. Kushner, Esq.<br>330 Country Road<br>P. O. Box 31<br>Mineola, New York 11501 |
| 07-2295 | Thomas Ciacciarelli | Rabinowitz Lubetkin & Tully, LLC<br>Barry J. Roy , Esq.<br>293 Eisenhower Parkway, Suite 100<br>Livingston, New Jersey  07039 |
| 07-2296 | Dudley Christie | Novlet M. Lawrence, Esq.<br>55 Washington St.<br>Suite 304<br>East Orange, NEW JERSEY 07017 |
| 07-2299 | Louis Caporusso, Jr. | Leech Tishman Fuscaldo & Lampl, LLC<br>Gregory W. Hauswirth, Esq.<br>1105 North Market Street<br>Suite 1050<br>Wilmington, Delaware  19899-8985 |
| 07-2300 | Gladys Carullo | Gladys Carullo (Pro Se)<br>48 Ogle Road<br>Old Tappan, New Jersey  07675 |
| 07-2301 | Haimonti Chaudhuri | Riker, Danzig, Scherer, Hyland & Perretti, LLP<br>Joseph L. Schwartz, Esq.<br>Headquarters Plaza<br>One Speedwell Avenue<br>Morristown, New Jersey  07962-1981 |
| 07-2304 | Robert J. Fournier | Teich Groh<br>Brian W. Hofmeister, Esq.<br>691 State Highway 33<br>Trenton, New Jersey 08619 |

| ADV. PRO. | DEFENDANT | COUNSEL |
|---|---|---|
| 07-2306 | Irving Golombeck | Teich Groh<br>Brian W. Hofmeister, Esq.<br>691 State Highway 33<br>Trenton, New Jersey 08619 |
| 07-2310 | Catherine A. Brodo | Teich Groh<br>Brian W. Hofmeister, Esq.<br>691 State Highway 33<br>Trenton, New Jersey 08619 |
| 07-2311 | Leonard A. Feitell and Linda J. Feitell | Day Pitney LLP<br>John J. O'Reilly , Esq.<br>P. O. Box 1945<br>Morristown, NEW JERSEY 07962 |
| 07-2313 | Edith C. Debbs | Leech Tishman Fuscaldo & Lampl, LLC<br>Gregory W. Hauswirth, Esq.<br>1105 North Market Street<br>Suite 1050<br>Wilmington, Delaware  19899-8985 |
| 07-2315 | Ellen Kelleher | Law Office of Paul N. Mirabelli<br>Paul N. Mirabelli, Esq.<br>3400 Highway 35<br>P. O. Box 378<br>Hazlet, New Jersey  07730 |
| 07-2319 | Edwin W. Johnson | Riker, Danzig, Scherer, Hyland & Perretti, LLP<br>Joseph L. Schwartz, Esq.<br>Headquarters Plaza<br>One Speedwell Avenue<br>Morristown, New Jersey  07962-1981 |
| 07-2320 | Wendy Hall-Davis | Riker, Danzig, Scherer, Hyland & Perretti, LLP<br>Joseph L. Schwartz, Esq.<br>Headquarters Plaza<br>One Speedwell Avenue<br>Morristown, New Jersey  07962-1981 |
| 07-2323 | Charles A. Hillman | Teich Groh<br>Brian W. Hofmeister, Esq.<br>691 State Highway 33<br>Trenton, New Jersey 08619 |

| ADV. PRO. | DEFENDANT | COUNSEL |
|-----------|-----------|---------|
| 07-2324 | Cornelius Guendel | Davis & Stern, Esq.<br>60 Washington St<br>Morristown, NJ 07960 |
| 07-2341 | Joseph M. Auricchio | Ravin Greenberg LLC<br>Chad Brian Friedman, Esq.<br>101 Eisenhower Parkway<br>Roseland, New Jersey  07068 |
| 07-2345 | Bobby Sweetser | Meyner and Landis<br>One Gateway Center, Suite 2500<br>Newark, New Jersey  07102 |
| 07-2346 | Inna Stavitsky | Teich Groh<br>Brian W. Hofmeister, Esq.<br>691 State Highway 33<br>Trenton, New Jersey 08619 |
| 07-2351 | Aron Haikin and Inna Stavitsky | Teich Groh<br>Brian W. Hofmeister, Esq.<br>691 State Highway 33<br>Trenton, New Jersey 08619 |
| 07-2382 | John H. Alschuler, Jr. | Greenbaum, Rowe, Smith & Davis LLP<br>Nancy Isaacson, Esq.<br>75 Livingston Avenue<br>Roseland, New Jersey 07068-3701 |
| 07-2387 | Carol Scott | Carol Scott (Pro Se)<br>798 Ponce de Leon Road<br>Boca Raton, Florida  33432 |
| 07-2393 | Carol M. Rost | Leech Tishman Fuscaldo & Lampl, LLC<br>Gregory W. Hauswirth, Esq.<br>1105 North Market Street<br>Suite 1050<br>Wilmington, Delaware  19899-8985 |
| 07-2396 | Robert Handwerker | Reed I. Altholz, Esq.<br>19 Florence Drive<br>P.O. Box 5634<br>Clark, New Jersey  07066 |

| ADV. PRO. | DEFENDANT | COUNSEL |
|-----------|-----------|---------|
| 07-2398 | Robert E. Rosa | Greenbaum, Rowe, Smith & Davis LLP<br>Nancy Isaacson, Esq.<br>75 Livingston Avenue<br>Roseland, New Jersey 07068-3701 |
| 07-2416 | Huimin Sun | Leech Tishman Fuscaldo & Lampl, LLC<br>Gregory W. Hauswirth, Esq.<br>1105 North Market Street<br>Suite 1050<br>Wilmington, Delaware  19899-8985 |
| 07-2425 | Salvatore Micchelli | Leech Tishman Fuscaldo & Lampl, LLC<br>Gregory W. Hauswirth, Esq.<br>1105 North Market Street<br>Suite 1050<br>Wilmington, Delaware  19899-8985 |
| 07-2432 | Estelle Levine | Leech Tishman Fuscaldo & Lampl, LLC<br>Gregory W. Hauswirth, Esq.<br>1105 North Market Street<br>Suite 1050<br>Wilmington, Delaware  19899-8985 |
| 07-2433 | Kung-Jen Liu | Riker, Danzig, Scherer, Hyland & Perretti, LLP<br>Joseph L. Schwartz, Esq.<br>Headquarters Plaza<br>One Speedwell Avenue<br>Morristown, New Jersey  07962-1981 |
| 07-2436 | Naba Chaudhuri | Riker, Danzig, Scherer, Hyland & Perretti, LLP<br>Joseph L. Schwartz, Esq.<br>Headquarters Plaza<br>One Speedwell Avenue<br>Morristown, New Jersey  07962-1981 |
| 07-2438 | Michael Bradley | Greenbaum, Rowe, Smith & Davis LLP<br>Nancy Isaacson, Esq.<br>75 Livingston Avenue<br>Roseland, New Jersey 07068-3701 |

| ADV. PRO. | DEFENDANT | COUNSEL |
|-----------|-----------|---------|
| 07-2439 | Donna Comparetto | Scura, Mealey, Wigfield & Heyer<br>John J. Scura, III, Esq.<br>1599 Hamburg Turnpike<br>P. O. Box 2031<br>Wayne, New Jersey  07470 |
| 07-2440 | Fiorenza Bertieri | Fiorenza Bertieri (Pro Se)<br>211 West 53rd Street, Apt. 4-F<br>New York, NEW YORK 10019 |
| 07-2444 | Mary E. Hafenbreadl | Riker, Danzig, Scherer, Hyland & Perretti, LLP<br>Joseph L. Schwartz, Esq.<br>Headquarters Plaza<br>One Speedwell Avenue<br>Morristown, New Jersey  07962-1981 |
| 07-2447 | Sally Greenberg | Hellring, Lindeman, Goldstein & Siegal<br>Richard Honig, Esq.<br>One Gateway Center<br>8th Floor<br>Newark, NEW JERSEY 07102 |
| 07-2450 | Bernard Aquilino | Leech Tishman Fuscaldo & Lampl, LLC<br>Gregory W. Hauswirth, Esq.<br>1105 North Market Street<br>Suite 1050<br>Wilmington, Delaware  19899-8985 |
| 07-2454 | Donald B Wain | Leech Tishman Fuscaldo & Lampl, LLC<br>Gregory W. Hauswirth, Esq.<br>1105 North Market Street<br>Suite 1050<br>Wilmington, Delaware  19899-8985 |
| 07-2455 | Michael Wachur | Kurtzman Matera, P.C.<br>Rosemarie E. Matera, Esq.<br>664 Chestnut Ridge Road<br>Spring Valley, New York  10977 |
| 07-2457 | Montanya Knight | Leech Tishman Fuscaldo & Lampl, LLC<br>Gregory W. Hauswirth, Esq.<br>1105 North Market Street<br>Suite 1050<br>Wilmington, Delaware  19899-8985 |

| ADV. PRO. | DEFENDANT | COUNSEL |
|---|---|---|
| 07-2464 | Abraham Barth Pension Trust at Waterhouse | Riker, Danzig, Scherer, Hyland & Perretti, LLP<br>Joseph L. Schwartz, Esq.<br>Headquarters Plaza<br>One Speedwell Avenue<br>Morristown, New Jersey  07962-1981 |
| 07-2464 | Abraham Barth | Riker, Danzig, Scherer, Hyland & Perretti, LLP<br>Joseph L. Schwartz, Esq.<br>Headquarters Plaza<br>One Speedwell Avenue<br>Morristown, New Jersey  07962-1981 |
| 07-2470 | Laurel Priber and Olga Diamond | Greenbaum, Rowe, Smith & Davis LLP<br>Nancy Isaacson, Esq.<br>75 Livingston Avenue, 3rd Floor<br>Roseland, New Jersey 07068-3701 |
| 07-2471 | The Lauren Esnes Scott Irrevocable Trust | The Lauren Esnes Scott Irrevocable Trust<br>798 Ponce DeLeon Road<br>Boca Raton, Florida  33432 |
| 07-2482 | James S. Desimone | Ralph A Ferro, Jr, Esq Law Offices<br>Ralph A Ferro, Jr., Esq.<br>66 East Main Street, 3rd Floor<br>Little Falls, New Jersey 07424 |
| 07-2484 | Cecil Wayne Robinson | Leech Tishman Fuscaldo & Lampl, LLC<br>Gregory W. Hauswirth, Esq.<br>1105 North Market Street<br>Suite 1050<br>Wilmington, Delaware  19899-8985 |
| 07-2505 | Inge Auerbacher | Teich Groh<br>Brian W. Hofmeister, Esq.<br>691 State Highway 33<br>Trenton, New Jersey 08619 |
| 07-2519 | Peter W. O'Neil and Joanne K. O'Neil | Leech Tishman Fuscaldo & Lampl, LLC<br>Gregory W. Hauswirth, Esq.<br>1105 North Market Street<br>Suite 1050<br>Wilmington, Delaware  19899-8985 |

| ADV. PRO. | DEFENDANT | COUNSEL |
|---|---|---|
| 07-2521 | William Berman | Riker, Danzig, Scherer, Hyland & Perretti, LLP<br>Joseph L. Schwartz, Esq.<br>Headquarters Plaza<br>One Speedwell Avenue<br>Morristown, New Jersey  07962-1981 |
| 07-2522 | Robert C. Storrs | Leech Tishman Fuscaldo & Lampl, LLC<br>Gregory W. Hauswirth, Esq.<br>1105 North Market Street<br>Suite 1050<br>Wilmington, Delaware  19899-8985 |
| 07-2523 | David K. Lenkowsky | Teich Groh<br>Brian W. Hofmeister, Esq.<br>691 State Highway 33<br>Trenton, New Jersey 08619 |
| 07-2527 | Michael Debbs | Leech Tishman Fuscaldo & Lampl, LLC<br>Gregory W. Hauswirth, Esq.<br>1105 North Market Street<br>Suite 1050<br>Wilmington, Delaware  19899-8985 |
| 07-2528 | Vipul Parikh | Leech Tishman Fuscaldo & Lampl, LLC<br>Gregory W. Hauswirth, Esq.<br>1105 North Market Street<br>Suite 1050<br>Wilmington, Delaware  19899-8985 |
| 07-2534 | John J. Carroll and Patricia G. Carroll as Trustees for the Caroll Living Trust Dated June 2, 1999 | Royer Cooper Cohen Braunfeld LLC<br>Barry L. Cohen, Esq.<br>101 W. Elm Street, Suite 220<br>Conshohocken, PA 19428 |
| 07-2535 | Darlene Caporusso | Leech Tishman Fuscaldo & Lampl, LLC<br>Gregory W. Hauswirth, Esq.<br>1105 North Market Street<br>Suite 1050<br>Wilmington, Delaware  19899-8985 |

| ADV. PRO. | DEFENDANT | COUNSEL |
|---|---|---|
| 07-2537 | Gene Monterastelli Pres. Agency Inc. | Leech Tishman Fuscaldo & Lampl, LLC<br>Gregory W. Hauswirth, Esq.<br>1105 North Market Street<br>Suite 1050<br>Wilmington, Delaware  19899-8985 |
| 07-2543 | Rachel Sabella Revocable Living Trust Dated 4/21/95 and Rachel Sabella, Trustee | Leech Tishman Fuscaldo & Lampl, LLC<br>Gregory W. Hauswirth, Esq.<br>1105 North Market Street<br>Suite 1050<br>Wilmington, Delaware  19899-8985 |
| 07-2546 | Frank J. Carullo and Fred J. Karagosian | Leech Tishman Fuscaldo & Lampl, LLC<br>Gregory W. Hauswirth, Esq.<br>1105 North Market Street<br>Suite 1050<br>Wilmington, Delaware  19899-8985 |
| 07-2562 | Nicolae Manea and Elena Manea | Nicolae and Elena Manea (Pro Se)<br>6034 70th Avenue<br>Ridgewood, NEW YORK 11385 |
| 07-2571 | Darlene Caporusso ACF Deanna Padin | Leech Tishman Fuscaldo & Lampl, LLC<br>Gregory W. Hauswirth, Esq.<br>1105 North Market Street<br>Suite 1050<br>Wilmington, Delaware  19899-8985 |
| 07-2573 | Kenneth M. Alterman | Riker, Danzig, Scherer, Hyland & Perretti, LLP<br>Joseph L. Schwartz, Esq.<br>Headquarters Plaza<br>One Speedwell Avenue<br>Morristown, New Jersey  07962-1981 |
| 07-2580 | Adrienne Berman | Riker, Danzig, Scherer, Hyland & Perretti, LLP<br>Joseph L. Schwartz, Esq.<br>Headquarters Plaza<br>One Speedwell Avenue<br>Morristown, New Jersey  07962-1981 |

| ADV. PRO. | DEFENDANT | COUNSEL |
|---|---|---|
| 07-2602 | Mapleshade Development Limited Partnership | Mapleshade Development Limited Partnership c/o Karagosian Financial Service, Inc. 560 Sylvan Avenue Englewood Cliffs, NEW JERSEY 07632 |
| 07-2605 | Charles Sabella Revocable Trust Dated 4/21/95 and Charles Sabella | Leech Tishman Fuscaldo & Lampl, LLC Gregory W. Hauswirth, Esq. 1105 North Market Street Suite 1050 Wilmington, Delaware  19899-8985 |
| 07-2613 | Edward Heimrich | Ravin Greenberg LLC Chad Brian Friedman, Esq. 101 Eisenhower Parkway Roseland, New Jersey  07068 |

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court are consolidated motions to dismiss filed by defendants in certain of the approximately 400 adversary complaints within NJ Affordable Homes Corp.'s (hereinafter "Debtor") global bankruptcy proceeding.  In addition to the motions, numerous notices of joinder were filed by additional defendants.   The adversary complaints at issue are brought by Charles M. Forman, as Chapter 7 Trustee for the Debtor (hereinafter "Trustee") against any individual or entity that holds or may hold an interest in 390 real properties either owned by the Debtor or in which the Debtor held an interest on the petition date (hereinafter "Defendants").   The Trustee filed a brief in opposition to the consolidated motions to dismiss.  For the reasons that follow, the consolidated motions to dismiss are granted in part and denied in part.

The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 1334, 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated September 18, 2012.   This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (F), (H), (K), and (O).  Venue is proper under 28 U.S.C. §§ 1408 and 1409(a).  The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## I.    Procedural History

On September 12, 2005, the Securities and Exchange Commission (hereinafter "SEC") filed a verified complaint against the Debtor, and its principal, Wayne Puff, in the United States District Court for the District of New Jersey, Civ. No. 05-4403.   The SEC's complaint alleged a scheme in which the Debtor and Mr. Puff engaged in unregistered and fraudulent offerings of securities to approximately 500 investors throughout the United States.   These included

1

promissory notes purportedly secured by real estate mortgages, investment contracts, and other evidences of indebtedness. The SEC complaint alleged that: (i) the real properties were overvalued; (ii) liabilities to investors greatly exceeded the Debtor's assets; (iii) the Debtor and Mr. Puff were using subsequent investments to pay prior investors their promised returns; (iv) the Debtor was at no time economically sustainable and operated as a Ponzi scheme; and (v) the Debtor was transferring substantial assets to Mr. Puff, his family, and personal friends.

Also on September 12, 2005, the District Court entered an "Order to Show Cause, Temporary Restraining Order and Order Freezing Assets and Granting Other Relief" in the SEC action (hereinafter "TRO"). The Debtor, Mr. Puff, and their affiliates were directed to preserve their assets and were precluded from disposing of or encumbering the same. Also pursuant to the TRO, the Honorable Nicholas H. Politan appointed a Receiver for the Debtor (hereinafter "Receiver"). The Receiver was to: (i) take control of all of the Debtor's assets, books and records; (ii) use the funds collected to preserve the assets and properties held in the names of the Debtor and its affiliates; (iii) investigate whether assets had been impermissibly transferred or disposed of; and (iv) investigate the disposition of the Debtor's funds derived from unlawful sales of securities.

On September 26, 2005, the District Court entered an Order granting preliminary injunction (hereinafter "PIO") with the consent of the Debtor and Mr. Puff, continuing the restraints and the receivership set forth in the TRO. On October 5, 2005, the court entered an amended order modifying the PIO (hereinafter "Amended PIO"), which authorized the Receiver to: (i) implement a sales procedure for the real properties owned by the Debtor, its affiliates, or investors; (ii) institute an equitable process for resolution of investors' claims and competing interests in the properties; and (iii) commence proceedings to recover unlawful transfers from the Debtor to third parties.

2

In addition, the Amended PIO imposed protections enjoining third parties from foreclosing on properties titled in the investors' names or suing investors to collect on debts arising from transactions involving the Debtor, Wayne Puff, or their affiliated entities.    The Amended PIO also imposed similar restraints preventing suit against the Debtor, Mr. Puff, their affiliated entities, and Mr. Puff's relatives, including Kyu Nam Park, Gary Puff, and Bruce Puff.

On October 31, 2005, the Receiver filed his preliminary report with the District Court.  In response, the District Court entered an Order authorizing the Receiver to file a bankruptcy petition on behalf of the Debtor.  On November 22, 2005, the Receiver filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on behalf of the Debtor in the United States Bankruptcy Court for the District of New Jersey, Case No. 05-60442 (DHS).

On November 23, 2005, Charles M. Forman was appointed as Chapter 7 Trustee for the Debtor.   On December 5, 2005, the United States District Court for the District of New Jersey entered an Order providing that "the TRO, the PIO and the Amended PIO shall continue in full force and effect in the Debtor's bankruptcy case" and referring the bankruptcy case to this Court.

Subsequently, the Trustee moved before this Court to sell all the properties at issue. The Trustee's request was granted and Orders were entered authorizing the Trustee to sell all of the properties at auction, free and clear of all liens and encumbrances.  Appeal was taken from the Court's Opinion and Order dated June 29, 2006, which authorized sale of 248 properties. The United States District Court for the District of New Jersey issued a stay pending appeal of the sale of approximately 180 properties. An auction of unaffected properties was conducted and generated proceeds in excess of $20,000,000.

The Trustee filed approximately four hundred (400) adversary complaints, the vast majority of which relate to a specific property in which the Trustee alleges the Debtor held an interest, either legal or equitable, on the petition date. Of the 400 complaints, approximately 150 involve properties titled in the name of the Debtor and seek to, among other things, avoid liens of individual defendants (hereinafter "title complaints"). In large part, the remaining complaints involve properties not titled in the Debtor's name and seek to, *inter alia*, avoid the liens of institutional lenders, such as banks and mortgage companies (hereinafter "lender complaints").

Motions to dismiss were filed pursuant to the Court's Case Management Order and, in the interest of preserving estate resources, the Trustee has been continuously and diligently working to, and in many instances did successfully, resolve the almost 400 adversary proceedings related to this bankruptcy. He has done so by consensual resolution and settlements while attempting to preserve estate assets. In this regard, the Court felt it prudent to afford the litigants sufficient time to resolve as many adversary proceedings as was possible and practicable under the circumstances. During this time, hundreds of adversary proceedings have been resolved, significantly reducing the number of claims before the Court. In an effort to aid in the resolution of the remaining adversary proceedings, the Court now addresses the remaining motions to dismiss filed in the unresolved adversary proceedings and the issues therein.

## II.       Trustee's Statement of Facts

On a motion to dismiss, this Court must assume the truth of all allegations in each complaint, their reasonable inferences, and any documents incorporated by reference therein. For the

purpose of practicality, this Court has surveyed the outstanding adversary complaints and compiled the following global statement of facts as alleged by the Trustee.

### A.    Previous Investigations of the Debtor

In 2002, the State of New Jersey commenced an action against the Debtor and Wayne Puff, its principal, that resulted in the issuance of a consent order whereby the Debtor agreed to comply with the securities laws of the State of New Jersey, not to employ any device or scheme to defraud, and to offer rescission to all investors whose mortgages were pooled on a single property.    In 2004, the Commonwealth of Pennsylvania barred the Debtor and Mr. Puff from issuing securities based upon the Debtor's failure to make material disclosures and willful violation of the state securities laws.

### B.    Ponzi Scheme

Prior to the filing of the bankruptcy petition, the Debtor purportedly operated as a real estate investment corporation registered in the State of New Jersey.    In fact, it operated as a Ponzi scheme to defraud investors, using funds borrowed from investors and financial institutions to purchase, renovate, and sell residential and commercial properties.    In true Ponzi scheme fashion, the Debtor and Mr. Puff relied on new investments to pay promised returns to prior investors on outstanding debts.

In an effort to artificially inflate property values and sale prices, Mr. Puff caused the Debtor and its affiliates to repeatedly transfer the properties back and forth between themselves. The investments and financing were also induced and justified by overvalued appraisals of the properties.  At its peak, the appraised value of properties exceeded their purchase price by 900%. In addition, from 1993 to 2005, the Debtor's sales data reflects that it was only able to realize an

average of 82% of appraised property values, which fell to 72% between 2004 and 2005.  In fact,

90% of the Debtor's total sales revenue from 2004 to 2005, or $30.4 million, was "generated from

sales to people closely connected to [the Debtor], such as investors, employees, insiders, affiliates,

or nominees who had previously bought properties from [the Debtor] and transferred it to an affiliate

of [the Debtor]."

The Debtor and Mr. Puff defrauded those involved by failing to disclose that: (i) the

properties securing the notes sold to investors were overvalued; (ii) the properties placed in the

investors' names were overvalued; (iii) the funds raised would not actually be used to renovate the

properties; (iv) the Debtor's liabilities greatly exceeded its assets at all relevant times; (v) the Debtor

and Mr. Puff used funds from new investors to pay principal and interest to previous investors;

(vi)  neither the Debtor nor Mr. Puff could maintain the excessive returns promised to investors;

and (vii)  the Debtor was transferring substantial assets to Mr. Puff, his affiliates, and his family

members.

Additionally, Wayne Puff spearheaded a marketing campaign, on behalf of the Debtor,

designed to solicit potential investors on the radio, in newspapers, and over the internet.  The

offering materials emphasized an investor's ability to double his or her money in less than five

years and represented that investors would retrieve their principal at the culmination of the

investment term. The Debtor and Mr. Puff also emphasized that prospective investors would receive

the best collateral available, a first mortgage on real property, *i.e.,* the identical security received

by a bank lending money to buy a home.  A key point in the sales pitch was the assurance of a

minimum 25% safety net of the appraised market value over the amount of the first mortgage,

implying to prospective investors that they need not be concerned about the prospect of a

default by the property owner.  Lastly, the Debtor paid a 4% commission on investment monies solicited through the sale of promissory notes to finders.

The "lifeblood" of the Debtor's fraud consisted of funds fraudulently obtained from investors and institutional lenders in exchange for mortgages secured by liens on real property.  The real property was owned directly by the Debtor, its affiliates, or by investors holding mere nominal title.

### C.      Mortgage Scams

At Mr. Puff's direction, the Debtor offered investors promissory notes secured by alleged first mortgages.   The notes required a one- to five-year investment in exchange for 15% compounded interest.  Generally, the interest and principal were not payable until the end of the term.   However, investors were attracted by the promise that they could double their money.   In addition, if a property was sold during the term, the investor would simply receive a first mortgage on a different property.   Also at Wayne Puff's direction, the Debtor offered promissory notes secured by second mortgages.  In exchange for their lower priority, investors were generally promised 16% to 25% compounded interest.   In either scenario, investors typically were not involved in the selection of property as collateral and interest accrued upon the deposit of investors' funds.

Investors were asked to execute an agreement with the Debtor, which represented that: (i) funds would be held by an attorney for the Debtor; (ii) the funds would only be released to secure the agreed mortgage; (iii) the investments would receive compound interest ranging from 15% to 25%; (iv) interest would accrue from the beginning and would be paid at the end of the investment term; (v) the mortgage loan would not exceed 75% of the value of the property, after

renovation; (vi) a 25% penalty would be charged for requesting an early payment of interest; and (vii) the investment would automatically be extended for one year if full payment was not requested of the Debtor before the end of the term.

Mr. Puff obtained investments and financing by utilizing overstated property appraisals. In addition, he ordered the transfer of title between numerous affiliated entities to artificially inflate the sales value of the properties. Nevertheless, had the defendants performed any due diligence prior to investing, they would have discovered that the alleged investments were illusory.

### D.    Title Scam

Wayne Puff enlisted the assistance of credit-worthy individuals and used their good credit to obtain additional financing. Generally, an investor would acquire nominal title to a property either acquired at the Debtor's cost or owned by the Debtor, its affiliated entities, or a previous investor. The new investor would then use his or her credit to arrange financing from an institutional lender. Generally, Mr. Puff provided new investors with an attorney to conduct the closing. In actuality, the attorney regularly performed legal services for the Debtor or its affiliates. All proceeds of the loans were remitted to the Debtor or Mr. Puff. In exchange, Wayne Puff caused the Debtor or one of its affiliated entities to pay the mortgages, taxes, insurance, and other payments relating to the property from commingled funds. The new investors did not select which property was titled in their name.

These straw man transactions achieved three goals: (i) the Debtor retained control over the properties; (ii) it was able to sell and record a valuation for the properties; and (iii) it obtained additional lump-sum proceeds to pay existing investors. In prototypical fashion, the investments and financing were induced by overstated property valuations.

8

Many of these transactions were effectuated by virtue of a "Special Specific Power of Attorney" executed as to a particular property, which the Debtor and Puff represented would "make it easier for [the Debtor] to exchange monthly payment information, tax, utility information and the like" with the respective mortgage companies. Generally, the Debtor utilized an exclusive list of closing attorneys, including George Otlowski, Esq., Anthony Natale, Esq., and Mitchell Fishman, Esq. Typically, one of the Debtor's agents acted as attorney-in-fact for the investors regarding all aspects of the closing.

However, in many of the transactions, instead of merely exchanging information, the mortgages and notes were executed by Mr. Puff or other agents of the Debtor without the investor's knowledge. In addition, some mortgage documents were not properly acknowledged, witnessed or delivered, and others were not recorded in the names of proposed sellers.

Therefore, the Trustee alleges there is a very real possibility that the Debtor holds either legal or equitable title to the properties because:

      i.     the Debtor and Wayne Puff directed all aspects of the purchase or sale of the properties;

      ii.    the investors paid nothing for the properties and did not maintain any true authority over the same;

     iii.   the Debtor or its affiliates paid the debt service, real estate taxes, and maintenance costs on the properties;

     iv.   loans and other documents were typically signed by an affiliate or employee of the Debtor, not the investors themselves;

      v.    the Debtor and its affiliates received income from the properties that were rented;

     vi.   most investors have neither asserted their ownership nor challenged the Debtor's legal ownership of the properties;

    vii.  some properties were sold without the nominal title holder's knowledge and without their receiving any consideration;

   viii.  all investor funds were held and commingled by the Debtor and its affiliates;

     ix.   the Debtor or its affiliates either instructed the investors as to which attorney they should retain for the property closings or

9

provided an attorney to purportedly represent them at the closings; and

x.    even if investors were aware that title was transferred to them, they relied upon the Debtor and/or its affiliates to bear the financial, managerial and logistical burdens of acquisition, maintenance, rehabilitation, and sale of the properties.

In either closing scenario, the representative attorney was selected by the Debtor or its affiliates, regularly performed legal services for same, and was involved in assisting Mr. Puff, the Debtor, and their affiliates in effectuating the Ponzi scheme.

E.    Use of Funds

All funds collected by the Debtor and its affiliates were commingled in accounts maintained by the Debtor, its affiliates, and others.  Those funds included all money "raised from investors, funds borrowed from institutions, rent paid by tenants, mortgage payments made by third-party property owners, and proceeds derived from property sales . . . ."  The funds were transferred among various entities and disbursed as needed, rather than being traced to a specific investor, property, or financial institution.   As examples, funds obtained from loan transactions on one property were used to pay expenses on other properties, and payments made to investors as well as lenders were not made from funds collected or traceable to the specific property or mortgage in which the investor believed he or she held an interest.

In addition, the three closing attorneys predominantly used by the Debtor and Mr. Puff commingled funds held in their attorney trust accounts in connection with the closing transactions. Additionally, the Debtor and its affiliates loaned funds to each other at the discretion of Mr. Puff, as evidenced by their corporate records.   This extensive commingling makes it extremely

difficult to distinguish the source of all the funds received by the Debtor or to trace all the funds it disbursed.

**F.      Insolvency**

The Debtor and its affiliated entities were insolvent and unable to pay their obligations as they became due from at least January 1, 1999 through June 30, 2005.   Wayne Puff and the Debtor relied upon continuously-infused financing to operate and pay promised returns to investors whose investments had matured and who had opted not to re-invest with the Debtor, investors who had contracted for monthly payments, and to investors selected by the Debtor and Mr. Puff.  Without these infusions of capital, the Debtor could not continue to operate.

The Debtor's insolvency is reflected in the following exemplary facts:

      i.      during the period of January 1, 1999 through June 30, 2005, the Debtor and its affiliated entities did not have the ability to pay the Debtor's obligations as they became due;

      ii.      in the same period, the Debtor and its affiliated entities did not generate sufficient financing to cover the cost of their operations;

      iii.      from January 1, 1999 through December 31, 2003, the Debtor and its affiliates suffered net losses in excess of $20 million;

      iv.      in the first six months of 2005, the Debtor and its affiliates were making average monthly mortgage payments of $350,000, while monthly rental income averaged $87,000;

      v.      the Debtor's balance sheet reflected property values in excess of their actual fair market value;

      vi.      the Debtor understated its liabilities by failing to account for accrued interest in its corporate records;

      vii.      the Debtor did not reflect in its balance sheet liabilities owed on properties titled in the names of shills but otherwise owned and controlled by the Debtor; and

      viii.      the Debtor's records failed to reflect in excess of $455,000 in loan obligations to insiders.

### G.    Other Capital Ventures

The Debtor also offered an "Asset Protection Guarantee" secured by guarantees executed by or on behalf of Mr. Puff, the Debtor, and/or its affiliates.    In return, the Debtor promised investors higher interest rates, such as 20%.  Investments secured by these guarantee agreements were to be "utilized towards the cost of the purchase, closing costs, repair and marketing of residential homes for resale."  Once again, the agreements did not list a specific property and the investors were not involved in the selection, renovation, or resale of the properties.

Similarly, the Debtor and Mr. Puff offered "Joint Venture Agreements" secured by guarantees executed by or on behalf of Mr. Puff, the Debtor, or its affiliates.   Generally, "joint venturers" were promised a 16% to 20% compounded return on investment.   The purpose of the joint venture was "to designate real property to acquire, develop, renovate and sell . . . ."  All decisions regarding the property, including its selection, resided with the Debtor, allegedly due to its experience in similar ventures.

### H.    General Allegations

The Trustee's complaints make substantial general allegations regarding the conduct of the parties involved in the various transactions.   The mortgage brokers or the initial mortgage lenders failed to adhere to the prudent lending practices prescribed by the Department of Housing and Urban Development (hereinafter "HUD") and the Federal Housing Authority (hereinafter "FHA") by either failing to realize, or permitting the following:

    i.    underwriting deficiencies, including:
       (a)    debt-to-income ratios, which exceeded HUD and/or FHA standards;
       (b)    inadequate documentation of deposit verifications;
       (c)    inadequate documentation of gifts;
       (d)    inadequate credit analyses;

12

(e)  inadequate documentation or support for income calculations and/or employment information of the borrower;

ii.  charging ineligible or unsupported fees, or both;

iii.  the alleged buyer's cash contribution at the closing approximated the fees paid to the mortgage broker;

iv.  a substantial number of properties were sold by and between the Debtor or its affiliates, or both, for little or no consideration before recording title in the name of a nominal owner;

v.  some title insurance commitments required transfer of the property from the owner to the seller, and then immediately to the mortgage loan applicant, rendering the loan ineligible for FHA insurance;

vi.  not implementing or following HUD, FHA, or prudent lending quality control plans, including:

(a)  maintaining the independence  of quality control personnel;

(b)  reviewing loans which defaulted in the first six months;

(c)  examining gift documentation;

(d)  properly selecting appraisals for review;

vii.  the appraisals were inflated to justify excessive loan proceeds;

viii.  the appraisal "income approach to value" was based upon patently fraudulent and incomplete information, if developed at all;

ix.  providing loans to investors who were unable to sustain their debt service payments;

x.  issuing multiple loans on multiple properties to the same investor despite standard terms and conditions requiring a borrower to use the property as a primary residence;

xi.  the same lender funded multiple transactions for the same mortgagor on different properties;

xii.  the same notaries and attorneys appeared on deeds and mortgages in the chain of title on repeated occasions;

xiii.  the mortgages and notes were signed by Mr. Puff and/or other representatives or agents of the Debtor or its affiliates;

xiv.  the Debtor or its affiliates, or both, would be servicing the debt;

xv.  the mortgage proceeds were not actually used to acquire the subject property but were commingled with other mortgage proceeds and investor funds;

xvi.  the Debtor was responsible for organizing and directing the sales and financing of the properties and was the subject of a

13

cease and desist order barring it from offering securities in
Pennsylvania;

xvii.     the Debtor continued to illegally offer securities in New
Jersey after entry of the consent order requiring compliance
with New Jersey securities laws;

xviii.    the Debtor failed to offer rescission as required by the New
Jersey consent order;

xix.      the investors failed to fund any down payment for the
properties;

xx.       the Debtor and/or its affiliates received significant mortgage
proceeds from the sellers' closing funds without justification;
Mr. Puff or an agent or employee of the Debtor acted as the
attorney-in-fact for the purchaser for all purposes of the sale
while not all of the alleged powers of attorney were recorded;

xxi.      acknowledgment of legal documents that were defective;

xxii.     gaps in the chain of title;

xxiii.    an investor to use the property in a method other than as his
or her primary residence; and

xxiv.     fraudulent documents created by Mr. Puff and the Debtor
stating that the purchaser would use the property as a
primary residence were in fact forged and signed by
someone other than the investor.

In addition, the institutional lenders: (i) did not follow their internal guidelines regulating the

issuance or acquisition of mortgages; (ii) did not follow normal and customary standards of due

diligence in the mortgage industry before issuing or acquiring mortgage loans; (iii) had actual,

constructive and/or inquiry notice and knowledge of the Debtor's fraud and insolvency, as well as

the fraud and collusion of all parties acting in concert with the Debtor; and (iv) may have forgiven

or released an individual or non-corporate investor from the debt reflected in the mortgage note,

thereby making the corresponding mortgage unenforceable.

Individual and non-corporate investors "failed to investigate title to the [properties] and

ignored numerous red flags concerning the Debtor, its fraudulent operations and insolvency, as well

as other warning signs that would have put said [defendants] on notice" of the collusion of any and

all parties acting in concert with the Debtor and Mr. Puff resulting in the "avoidability of the subject

14

mortgage interests."   In fact, "[h]ad the [individual and non-corporate investors] performed any due diligence on the [properties] or the Debtor prior to investing with the Debtor, [they] would have learned that [their] investments were illusory."

More specifically, they did not:

    (i)    conduct any due diligence of the premises;

    (ii)    provide input on the choice of collateral;

    (iii)    investigate when or at what cost the Debtor acquired the premises;

    (iv)    ensure that the investment proceeds would be used to improve the properties;

    (v)    verify that the properties were generating any income, let alone cover the debt allegedly secured by a mortgage;

    (vi)    conduct any due diligence as to the Debtor's financial condition or how the debt was to be repaid; or

    (vii)    ensure delivery to them of the mortgages and promissory notes.

## I.    Counts of the Complaints

The Court's survey of the adversary complaints reveals the following typical counts:

    (i)    avoidance of intentional fraudulent transfers of assets under the Bankruptcy Code and New Jersey state law as to the alleged mortgages, liens, nominal title, debt service, and property maintenance payments;

    (ii)    avoidance of constructive fraudulent transfers under the Bankruptcy Code and New Jersey state law with regard to the purported mortgages, liens, nominal title, debt service, and property maintenance payments;

    (iii)    avoidance of mortgages and assignments for failure to perfect under the Bankruptcy Code;

    (iv)    avoidance of preferential transfers under the Bankruptcy Code as to the debt service and property maintenance payments;

    (v)    recovery of the debt service and property management payments grounded in unjust enrichment;

    (vi)    declaratory relief that the alleged mortgages are unenforceable pursuant to the equities at hand;

    (vii)    avoidance of assignments on the basis of invalid acknowledgment as required by New Jersey state law;

15

(viii) avoidance of mortgages for failure of delivery;

(ix) declaratory judgment that the supposed fractional mortgages are unenforceable under New Jersey state law;

(x) declaratory judgment that the mortgages are unenforceable because the funds purportedly invested are not traceable to the properties;

(xi) declaratory judgment clarifying title to the properties in the Debtor on the basis of unintentional transfer or improper delivery;

(xii) declaratory judgment for sanctions and nullifying deeds recorded in violation of the TRO and the Amended PIO;

(xiii) avoidance of mortgages recorded in violation of the TRO and Amended PIO;

(xiv) relief in the form of a resulting trust in favor of the estate for any part of the properties' purchase prices furnished by the Debtor or its affiliates;

(xv) relief in the form of a constructive trust in favor of the bankruptcy estate for any part of the properties' purchase prices furnished by the Debtor or its affiliates;

(xvi) issuance of an equitable lien in favor of the bankruptcy estate in the amount of debt service and property management payments;

(xvii) a request that the defendants prove the validity, extent, and priority of their alleged mortgages, obligations, or assignments;

(xviii) equitable subordination of the defendants' claims below that of investors and other creditors as well as transference of the defendants' liens to the bankruptcy estate; and

(xix) an accounting of all payments or transfers made to the defendants prior to the petition date with regard to the properties, mortgages, or obligations.

Against this factual and procedural background, the Court turns to its legal conclusions.

## III.    Discussion

### A.    Untimely Filings and Letters of Joinder

A court has the inherent power to control its docket to promote the efficient administration

of justice.  *See CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*, 381 F.3d 131, 141-42 (3d Cir.

2004); *Ray v. Eyster (In re Orthopedic "Bone Screw" Prods. Liab. Litig.)*, 132 F.3d 152, 156

(3d Cir. 1997); *see also Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962).  Pursuant to Federal Rule

of Civil Procedure 16, made applicable to adversary proceedings pursuant to Federal Rule of

Bankruptcy Procedure 7016, a bankruptcy court may enter pre-trial orders setting temporal

limitations for motion practice.   A pre-trial order "controls the course of the action unless the

court modifies it."   FED. R. CIV. P. 16(d) (made applicable to adversary proceedings through

Federal Rule of Bankruptcy Procedure 7016); FED. R. BANKR. P. 7016.   Upon failure to comply

with a pre-trial or scheduling order, a court may impose appropriate sanctions *sua sponte*.

*See* FED. R. CIV. P. 16(f).   Federal Rule of Bankruptcy Procedure 9006 adapts and applies the

provisions of Federal Rule of Civil Procedure 6 to adversary proceedings and permits a

bankruptcy court to enlarge the time specified to complete an act upon a showing of cause.

     The timing requirements of the Case Management Orders, discussed *supra*, are abundantly

clear.   Those Orders were entered in an effort to control the Court's docket and produce an

effective determination of rights on these motions to dismiss.  The vast majority of consolidated

motions to dismiss at issue here were filed by counsel admitted to practice before this Court.   As

such, those practitioners are familiar with motion practice and the filing requirements imposed by

pre-trial orders in this district.

     In addition, certain notices of joinder seek to incorporate arguments made in motions to

dismiss filed in separate adversary proceedings.   This Court has not entered an order of

consolidation in any of the adversary proceedings pending within the Debtor's global bankruptcy

proceeding.   In addition, the Court is not aware of a procedure that permits use of a notice of

joinder to incorporate a motion filed in a separate adversary complaint and the Defendants provide

none. A motion to dismiss requires a statement of the grounds upon which it is made, the nature of relief sought, and an attached proposed form of order. *See* FED. R. BANKR. P. 9013; D.N.J. LBR 9013-1. Certain notices of joinder do not meet this standard.

Many of the notices of joinder operate in a consolidated fashion across multiple adversary proceedings. Typically, these notices are devoid of substance and contain generic language seeking to join in any motion to dismiss already filed or subsequently filed. They make no effort to discern or discriminate as to adversary proceedings in which an actual motion to dismiss has been filed and latch onto any valid argument, made by any other Defendant, in any other adversary proceeding within which a motion to dismiss is filed.

Notwithstanding the procedural deficiencies presented by many of the defendants' motions to dismiss and letters joining in other defendants' motions to dismiss, for purposes of this Opinion and as a matter of judicial economy, the Court will accept the untimely filed submissions and those that rely on motions to dismiss submitted in an adversary proceeding other than their own. Moreover, to the extent a defendant relies on or joins in a motion to dismiss submitted by a defendant in an adversary proceeding that has subsequently been settled or otherwise closed, the Court will allow that defendant to incorporate those arguments in opposition to the Trustee's complaint to ensure the efficient resolution of the adversary proceedings. The Court will, therefore, consider the arguments raised by the parties filing out of time and those joining in the motions submitted by other defendants.

**B.     Pleading Standard**

The Trustee's fraudulent transfer claims seek to avoid pre-petition transfers of property of the Debtor and its affiliates pursuant to actual and constructive fraud provisions of the Bankruptcy

Code and the Uniform Fraudulent Transfer Act (hereinafter "UFTA") as incorporated under New Jersey state law. The pleading requirements are well known. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). "A pleading that states a claim for relief . . . must contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8. These rules are applicable in an adversary proceeding pursuant to Federal Rules of Bankruptcy Procedure 7009 and 7008, respectively.

"[T]he heightened pleading standard invoked by [Federal Rule of Civil Procedure] 9(b) with respect to pleadings asserting, *inter alia*, fraud . . . does not apply to a constructive fraudulent transfer action initiated by a bankruptcy trustee." *Educ. & Research Found. v. Phila. Health Care Trust (In re Allegheny Health)*, 253 B.R. 157, 162 n.2 (Bankr. W.D. Pa. 2000) (citing *In re O.P.M. Leasing Servs., Inc.*, 35 B.R. 854, 862-63 (Bankr. S.D.N.Y. 1983) ("the high degree of [pleading] particularity required in a complaint involving active fraud  . . . [is] inappropriate . . . [in an] action involving merely constructive fraud") (other citation omitted) (emphasis in original)).

> '[A] claim of constructive fraud need not allege the common variety of deceit, misrepresentation or fraud in the inducement. This is because the transaction is presumptively fraudulent and all that need be alleged is that the conveyance was made without fair consideration while the debtor was functionally insolvent.' *Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link Telecom Corp.)*, 327 B.R. 711, 717-18 (Bankr. D. Del. 2005). A complaint alleging a constructively fraudulent conveyance need only 'set forth the facts with sufficient particularity to apprise the defendant fairly of the charges made against him [or her] so that [he or she] can prepare an adequate answer.' *Id.* at 718 (internal quotation, citation omitted). *See Official Comm. of Unsecured Creditors v. DVI Bus. Credit, Inc. (In re DVI, Inc.)*, 326 B.R. 301, 305-06 (Bankr. D. Del. 2005).

19

*AstroPower Liquidating Trust v. Xantrex Tech., Inc. (In re AstroPower Liquidating Trust)*, 335 B.R.

309, 333 (Bankr. D. Del. 2005).  Due to the similarity of the UFTA and the Bankruptcy Code, the

same pleading standard extends to constructively fraudulent transfers under New Jersey state law.

*Compare* N.J. STAT. ANN. §§ 25:2-25(b), 25:2-27(a) (West 2007), *with* 11 U.S.C. § 548(a)(1)(B)

(2007).  Therefore, the Trustee's constructively fraudulent transfer claims must be pleaded in a

manner simply sufficient to meet the notice pleading standard of Rule 8.

The issue next becomes the relevant pleading standard for the remaining causes of action

involving fraud.  Fraudulent transfer actions under Section 548(a)(1)(A) of the Bankruptcy Code

must be pleaded with sufficient particularity to meet the heightened pleading requirements of Rule

9(b).   *See PHP Liquidating, LLC v. Robbins*, 291 B.R. 592, 601 n.6 (D. Del. 2003); *In re DVI,*

*Inc.*, 326 B.R. at 308; *Forman v. Jeffrey Matthews Fin. Grp., LLC (In re Halpert & Co.)*, 254 B.R.

104, 115 (Bankr. D.N.J. 1999).  Due to the similarity of the UFTA and the Bankruptcy Code,

required specificity in pleading also extends to fraudulent conveyance claims with intent to

defraud under New Jersey state law.   *Compare*   N.J. STAT. ANN. § 25:2-25(a) (West 2007),

*with* 11 U.S.C. § 548(a)(1)(A) (2007).

Also, in the context of a Ponzi scheme, the Debtor's intent to defraud under 11 U.S.C.

§ 548(a)(1)(A) (2007) is presumed from the nature of the scheme itself.  *See In re Bernard L.*

*Madoff Inv. Sec. LLC*, 458 B.R. 87, 104 (Bankr. S.D.N.Y. 2011) ("As a matter of law, the 'Ponzi

scheme presumption' establishes the debtor's fraudulent intent . . . because transfers made in the

course of a Ponzi scheme could have been made for no purpose other than to hinder, delay or

defraud creditors.") *leave to appeal denied*, 464 B.R. 578 (S.D.N.Y. 2011); *Conroy v. Shott*, 363

F.2d 90, 92 (6th Cir. 1966), *cert. denied*, 385 U.S. 969 (1966); *Hayes v. Palm Seedling Partners-A*

*(In re Agric. Research & Tech. Grp., Inc.)*, 916 F.2d 528, 535 (9th Cir. 1990) (citations omitted);

*Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)*, 310 B.R. 500, 506 (Bankr.

2002) (citation omitted); *Merrill v. Abbott (In re Indep. Clearing House Co.)*, 77 B.R. 843, 860

(C.D. Utah 1987); *see also Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006) (citation

omitted) (receiver); *Terry v. June*, 432 F. Supp. 2d 635, 639 (W.D. Va. 2006) (receiver); *Drenis v.

Haligiannis*, 452 F. Supp. 2d 418, 429 (S.D.N.Y. 2006) (citations omitted) (limited partners).

Generally, "[p]leadings alleging fraud usually may not be based on information and belief."

2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, § 9.03[1][g] at 9-24.1 (3d ed. 2004)

(hereinafter "MOORE'S FEDERAL PRACTICE").    However, pleading fraud on information and

belief alone is acceptable if the specific fraudulent actions are inaccessible to the pleader.   *Id.* at

n.29 (citing *Weiner v. Quaker Oats Co.*, 129 F.3d 310, 319-20 (3d Cir. 1997) (when factual

information was within the defendants' knowledge or control, plaintiffs met the pleading

requirements for fraud by alleging the same as well as detailing their efforts to obtain the

information)).

Bankruptcy courts have afforded greater pleading liberality in adversary complaints

brought by trustees, because a trustee comes to the action as a "third party outsider to the

fraudulent transaction, that must plead fraud on second-hand knowledge for the benefit of the

estate and all of its creditors."   *Birnberg v. Rancho La Costa, Inc. (In re Reach McClinton & Co.,

Inc.)*, 62 B.R. 978, 981 (Bankr. D.N.J. 1986) (citation omitted); *see Pardo v. Avanti Corp. Health

Sys., Inc. (In re APF Co.)*, 274 B.R. 634, 638 (Bankr. D. Del. 2001) (citing *In re Reach McClinton

& Co., Inc.*, 62 B.R. at 981).

> Where a plaintiff is suing in a representative capacity, *no access or
> limited access to facts particularly within the knowledge of the
> defendants require that the plaintiff be permitted discovery*. The

21

protection against abuse exists by the very nature of the plaintiffs capacity and position. Thus, any balance which is struck between [Federal Rules of Bankruptcy Procedure] 7009 and [7008] must be weighed strongly in favor of liberality in pleading and in elimination of the formalism required by the former considerations of Code pleading. *See Trussell v. United Underwriters, Ltd.*, 228 F. Supp. 757, 774 (D. Colo. 1964).

*In re Reach McClinton & Co., Inc.*, 62 B.R. at *982-83 (emphasis added).

This application is sometimes referred to as the relaxed Rule 9(b) standard in case law.

To satisfy Rule 9(b)'s particularity requirement, a party must ordinarily allege: "(1) the property subject to the transfer, (2) the timing and, if applicable, frequency of the transfer and (3) the consideration paid with respect thereto." *Pereira v. Grecogas Ltd., (In re Saba Enters., Inc.),* 421 B.R. 626, 640 (Bankr. S.D.N.Y. 2009); *see also United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.,* 216 F.Supp. 2d 198, 221 (S.D.N.Y. 2002). Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee, however, courts in this district take "a more liberal view ... since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge." *Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.),* 361 B.R. 369, 395 (Bankr. S.D.N.Y. 2007) (quoting *Picard v. Taylor (In re Park South Sec., LLC),* 326 B.R. 505, 517, 516, 518 (Bankr. S.D.N.Y. 2005)) (internal quotations omitted). As the Second Circuit recently noted, "[f]raud is endlessly resourceful and the unraveling of weaved-up sins may sometimes require the grant of a measure of latitude to a SIPA trustee." *In re BLMIS,* 654 F.3d 229, 238 n. 7 (granting SIPA trustees discretion to determine the method to calculate net equity).

*In re Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. at 106; *see also In re Burlington Coat Factories Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997); *Levitt v. Riddell Sports, Inc., et al. (In re MacGregor Sporting Goods, Inc.),* 199 B.R. 502, 514-15 (Bankr. D.N.J. 1995); *OHC Liquidation Trust v. Nucor Corp. (In re Oakwood Homes Corp.),* 325 B.R. 696, 698 (D. Del. 2005).  Despite the Rule's flexible nature, plaintiffs "must accompany their allegations with facts indicating why the charges against defendants are not baseless and why additional information lies exclusively within defendant['s] control."  *In re Craftmatic Secs. Litig.*, 890 F.2d 628, 646 (3d Cir. 1989) (quoting

*Christidis v. First Penn. Mort. Trust*, 717 F.2d 96, 99-100 (3d Cir. 1983)).  Furthermore, the Rule does not permit plaintiffs to "merely lump multiple defendants together but requires [the complaint to] . . . inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *In re NorVergence*, 424 B.R. 663, 688 (Bankr. D.N.J. 2010).

In the Receiver's report dated October 28, 2005, he identifies only seven of the Debtor's then-known affiliates.  "The books and records for the known Affiliates were maintained in six separate ledgers . . ." and were not up to date.  In addition, "the Defendants were regularly commingling, depositing, disbursing and transferring funds among and between the Affiliates and/or Companies."  Due to this disorganization, neither the Receiver nor his accountants could provide an accurate adjusted report for 2004.  However, both the SEC complaint and the Trustee's complaints name at least seventy-seven different affiliates of the Debtor.  On numerous occasions, this Court has had the opportunity to question the Trustee's progress in deciphering the complex web of transactions alleged.  In response, the Trustee has demonstrated diligence in unraveling this web of fraud as well as addressing specific transactions.

The Trustee's lack of information and attendant disability in pleading fraud as a third-party plaintiff is evident.  The Debtor and its affiliates, totaling at least seventy-seven entities and individuals, operated as a complex Ponzi scheme.  They churned properties amongst each other on numerous occasions and pooled multiple mortgages on singular properties.  To add to the complexity, the Debtor and its affiliates failed to keep complete and/or accurate accounting records, commingled funds, and disbursed monies as they saw fit.  In addition, each investment creates a distinct set of facts as to the manner and substance of the solicitations and investments.  The Trustee is charged with unraveling and pleading transactions between 500 investors, the

Debtor, and the Debtor's seventy-seven affiliates, with incomplete records, multiple fraudulent schemes, and fact-specific transactions, all without the benefit of discovery.

Nevertheless, the Defendants ask this Court to dismiss the Trustee's adversary complaints for failure to plead the "who, what, where, and when" of the seemingly endless fraudulent transactions at issue. The Defendants support this position by referring to the discovery which has taken place in the SEC litigation and the Trustee's alleged unfettered access to those findings. However, this Court is unaware of any access to discovery in the SEC action provided to the Trustee, and the Defendants provide proof of none. Instead, the Trustee only has access to the information gathered by the Receiver, namely the books and records of the corporate Debtor, as in a typical bankruptcy proceeding. The other information known to be available to the Trustee pre-petition is the Receiver's report, which is now public knowledge. Due to the operation of the Debtor as a Ponzi scheme by its principal, Wayne Puff, the complexity of this case, the Trustee's lack of information, the fact-specific and numerous investments, a total lack of discovery in this matter, and the Trustee's position as third-party plaintiff, it is evident that the Trustee would neither be able to, nor should he be required to, plead the facts particular to each and every fraudulent transaction.

Therefore, this Court holds that the notice pleading standard of the Federal Rules of Civil Procedure applies to actual and constructive fraudulent transfer actions under the Bankruptcy Code and New Jersey state law. The issue is whether the Trustee has sufficiently pled the actual and constructively fraudulent transactions so that the Defendants may form a responsive pleading. *See Goldberger v. Shanaughy (In re Black Angus Meats of Paoli, Inc.)*, 31 B.R. 108, 109 (Bankr. E.D. Pa. 1983); *see also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) (framing the general requirements of notice for the purposes of due process).

24

Virtually all of the Trustee's complaints begin by identifying the property at issue as well as classifying the Defendants into categories, such as "Corporate Defendants," "Non-Corporate Lender Defendants," and "Individual Defendants." The complaints then provide a comprehensive recitation of the relevant global facts. The Trustee then makes allegations as to the acts or omissions of multiple (when relevant) and individual classes of defendants, typically upon information or belief. The paragraphs of allegations as to each category of defendants are neatly organized, either grouped at the end of the fact section or inserted just after a relevant factual occurrence. The Trustee then asserts counts of the complaints as against all defendants in the property-specific action. Representative fraud-related counts include:

## COUNT ONE

### (Intentional Fraudulent Transfers — Mortgage Interests)

71.  The Trustee repeats the allegations set forth in the prior paragraphs of this Complaint as if fully set forth herein.

72.  The 1st Mortgage and the 2nd Mortgage (collectively, the "Mortgages") constitute transfers of interests of the Debtor in property. The Obligations constitute obligations incurred by the Debtor.

73.  The Debtor granted the Mortgages and incurred the obligations with the actual intent to hinder, delay or defraud investors and creditors to which the Debtor was liable and thereafter became liable.

74.  The Defendants are the initial transferees of the Mortgages and the Obligations.

75.  The Trustee may avoid the Mortgages and the Obligations under Section 548(a)(1)(A) of the Bankruptcy Code and recover the Mortgages or the value of the Obligations under Section 550(a) of the Bankruptcy Code.

## COUNT TWO

### (Intentional Fraudulent Transfers — Mortgage Interests)

76.  The Trustee repeats the allegations set forth in the prior paragraphs of this Complaint as if fully set forth herein.

25

77.    The Trustee may avoid the Mortgages and the Obligations under [N.J. STAT. ANN. §§] 25:2-25a, 2-29 and 2-30, which are applicable under Section 544 of the Bankruptcy Code, and recover the Mortgages or the value of the Obligations under Section 550(a) of the Bankruptcy Code.

## COUNT THREE

### (Constructive Fraudulent Transfers — Mortgage Interests)

78.    The Trustee repeats the allegations set forth in the prior paragraphs of this Complaint as if fully set forth herein.

79.    Upon information and belief, the Defendants might not have actually invested the funds represented by the Obligations.

80.    Rather, the amount of the Obligations and the Mortgages might reflect the Debtor's statement of accounts for the Defendants, which would include compounded interest at the excessive rates discussed that the Debtor fraudulently represented had accrued over time but were not paid.

81.    Thus, the amount of the Obligations and the Mortgages might far exceed the Defendants' actual investments.

82.    The Debtor received less than a reasonably equivalent value in exchange for the Mortgages and Obligations.

83.    The Debtor was insolvent on the date that the Debtor granted the Mortgages and incurred the Obligations.

84.    On the date that the Debtor granted the Mortgages and incurred the Obligations, the Debtor was engaged in a business or transaction, or was about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small capital.

85.    On the date that the Debtor granted the Mortgages and incurred the Obligations, the Debtor and Puff intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

86.    The Trustee may avoid the Mortgages and the Obligations under Section 548(a)(1)(b) of the Bankruptcy Code and recover the Mortgages or the value of the Obligations under Section 550(a) of the Bankruptcy Code.

## COUNT FOUR

### (Constructive Fraudulent Transfers — Mortgage Interests)

87.     The Trustee repeats the allegations set forth in the prior paragraphs of this Complaint as if fully set forth herein.

88.     There exists at least one creditor whose claim against the Debtor arose prior to the date that the Debtor granted the Mortgages and incurred the Obligations.

89.     The Trustee may avoid the Mortgages and the Obligations under [N.J. STAT. ANN. §§] 25:2-25b, 2-27a, 2-29 and 2-30, which are applicable under Section 544 of the Bankruptcy Code, and recover the Mortgages or the value of the Obligations under Section 550(a) of the Bankruptcy Code.

Complaint ¶¶ 71-89, *Forman v. Chaudhuri* (*In re NJ Affordable Homes Corp.*), No. 06-2740 (Bankr. D.N.J. Sept. 27, 2006). *Forman v. Chaudhuri (In re NJ Affordable Homes Corp.)*, Adv. No. 06-2740.

Based upon the framework as set forth in each of the Trustee's complaints, a few things become evident.   First, all defendants in each action are apprised, on a property-specific basis, of the global facts concerning the Ponzi scheme as well as the facts relevant to them.   Second, the Trustee illustrates the factual acts or omissions of which the defendants are accused.   Lastly, the Trustee condenses those allegations into the counts of the complaints, and lays out the legal  theory supporting each count.

While almost all of the Trustee's complaints accomplish these connections upon information and belief, pleading upon information and belief is sufficient for notice pleading.    In addition, pleading alternatively, inconsistently, and hypothetically is permissible.   *See* FED. R. CIV. P. 8(d).

The Defendants argue that counts structured like Counts Two and Four[1] within the complaint captioned *Forman v. Chaudhuri (In re NJ Affordable Homes Corp.)*, Adv. No. 06-2740, are insufficient because they are reduced to guesswork in forming responsive pleadings.   *See Pardo v. Avanti Corp. Health Sys. (In re APF Co.)*, 274 B.R. 634, 640 (Bankr. D. Del. 2001) ("Without more, the Trustee simply incorporates the previous allegations of the complaint . . . and adds the conclusory assertion that 'the Debtors' transfers of property as a result of the transaction constitute fraudulent transfers under applicable non-bankruptcy law, which are avoidable and recoverable by the Trustee pursuant to 11 U.S.C. § 544 and applicable state law.'").    The subsequent counts within these groups only seek to avoid allegedly fraudulent transfers under parallel state law theories.   In addition, while these counts do incorporate the earlier paragraphs of the complaint, one need look no further than the preceding count to reveal the Trustee's factual predicate for relief.  Moreover, and unlike *Pardo*, the Trustee specifies the legal provisions upon which relief is requested and demonstrates how the alleged transfers are avoidable and recoverable under the Bankruptcy Code.  In no way are the Defendants reduced to "guesswork and conjecture" in fashioning responsive pleadings.   *Id.* at 639.   Therefore, the Court will read the factual allegations of the preceding count into its subsequent counterpart.

This Court's discretionary alternative would be to permit the Trustee to amend the complaints as "leave shall be freely given when justice so requires."   FED. R. CIV. P. 15(a); FED. R. BANKR. P. 7015; *Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321, 330 (1971) (discretion).   However, there does not appear to be any prejudice to the Defendants and estate assets should not be

---

[1] Counts grouped in this pleading fashion consist of: (1) Counts One and Two; (2) Counts Three and Four; (3) Counts Six and Seven; and (4) Counts Eight and Nine.

squandered in order to accomplish so ministerial a task.    Therefore, it is held the Trustee has

sufficiently pled the fraud-related counts of the complaints.

### C.    Federal Rule of Civil Procedure 12(b)(6) Standard: Failure to State a Claim Upon Which Relief Can Be Granted

Federal Rule of Civil Procedure 12(b)(6) is made applicable in adversary proceedings

pursuant to Federal Rule of Bankruptcy Procedure 7012 and governs on a motion to dismiss. A

federal court has a limited role when reviewing the sufficiency of a complaint on a motion to

dismiss. "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is

entitled to offer evidence to support his [or her] claims.'"   *Syncsort, Inc. v. Sequential Software,*

*Inc.*, 50 F. Supp. 2d 318, 325 (D.N.J. 1999) (quoting *Bermingham v. Sony Corp. of Am.*, 820 F.

Supp. 834, 846 (D.N.J. 1992), *aff'd without opinion*, 37 F.3d 1485 (3d Cir. 1994) (other citation

omitted)). "In order to grant a 12(b)(6) motion to dismiss, the court must find that [the plaintiff]

will be unable to prevail even if [he or she proves] all of the allegations in the complaint,

basing its decision solely on the legal sufficiency of the complaint." *Poling v. K. Hovnanian*

*Enters.*, 99 F. Supp. 2d 502, 507 (D.N.J. 2000) (citation omitted); *see Syncsort*, 50 F. Supp. 2d

at 325 (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)) (other citations omitted)).

Federal Rule of Civil Procedure 8 provides that pleadings must contain "a short and plain

statement of the claim showing that the pleader is entitled to relief, in order to give fair notice of

what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41,

47 (1957)). Upon considering a 12(b)(6) motion to dismiss, courts "accept all factual allegations as

true, construe the complaint in the light most favorable to the plaintiff, and determine whether,

under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v.*

29

*Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted); *Ashcroft v.*

*Iqbal*, 556 U.S. 662 (2009).  The factual allegations contained in the complaint "must be enough to

raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Furthermore, "[t]he allegations of the complaint should 'plausibly suggest' the pleader is

entitled to relief."  *Wilkerson v. New Media Tech. Charter Sch. Inc.,* 522 F.3d 315, 321 (3d Cir.

2008) (citing *Twombly*, 550 U.S. at 557).  The Supreme Court clarified the "plausibility" standard

in *Ashcroft v. Iqbal* by holding that in order "[t]o survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citation omitted).  "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant acted unlawfully."  *Id.*  Indeed, mere "labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Thus, Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief."

*Twombly*, 550 U.S. at 555 n.3. Finally, in determining plausibility, this Court must "draw on its

judicial experience and common sense," *Iqbal*, 556 U.S. 679, to decide whether the factual

allegations "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.

In addition, a 12(b)(6) motion to dismiss may be predicated upon a plaintiff's failure to

meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  This Court

will apply the heightened pleading requirement of 9(b) in reviewing the sufficiency of the

fraudulent transfer claims in the Amended Complaint that are based on actual fraud, but not

constructive fraud.  5 COLLIER ON BANKRUPTCY ¶ 548.11[1][a][ii] (Alan N. Resnick & Henry J.

Sommers eds., 16th ed.) ("Most courts hold that Rule 9(b) does not apply to claims for avoidance

of constructively fraudulent transfers because such claims are not based on actual fraud but instead

rely on the debtor's financial condition and the sufficiency of consideration provided by the transferee.").[2]  Rule 9(b) provides that "[i]n alleging fraud or mistake, *a party must state with particularity the circumstances constituting fraud or mistake*.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  FED. R. CIV. P. 9(b) (emphasis added).  The heightened pleading requirement serves "to provide notice, not to test the factual allegations of the claim."  *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 n.2 (3d Cir. 2003).  The requirement is generally deemed satisfied by allegations of date, place, time, and manner, or by "alternative means of injecting precision and some measure of substantiation into [the] allegations of fraud."  *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984); *In re Rockefeller Ctr. Props. Secs. Litg.*, 311 F.3d 198, 217 (3d Cir. 2002) (answering the "who, what, when, where and how" questions will satisfy the 9(b) requirement).

Rigid application of Rule 9(b) prior to discovery, however, has the potential to "permit sophisticated defrauders to successfully conceal the details of their fraud."  *In re Craftmatic Secs. Litg.*, 890 F.2d 628, 645 (3d Cir. 1989) (quoting *Christidis*, 717 F.2d at 99-100).  Thus, courts may apply the Rule with some flexibility, especially where "factual information is peculiarly within [a] defendant's knowledge or control."  *In re NorVergence*, 424 B.R. at 688 (quoting *Saporito v. Combustion Eng'g, Inc.*, 843 F.2d 666, 674-75 (3d Cir. 1988), *vacated on other grounds by Combustion Eng'g, Inc. v. Saporito*, 489 U.S. 1049, 109 S. Ct. 1306, 103 L. Ed. 2d 576 (1989)).  Bankruptcy courts, in particular, will often interpret Rule 9(b) "liberally."  *Id.*  Despite the Rule's

---

[2] For support that Rule 9(b) heightened pleading standards should be applied to avoidance actions based on constructive fraud, the Defendants cite to *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074 (7th Cir. 1997).  While the Court need not determine which standard should apply to the claims for avoidance based on constructive fraudulent transfers for this motion, notably, *GE Capital* applied Rule 9(b) to an alleged constructively fraudulent transfer pursuant to the Illinois Uniform Fraudulent Transfer Act, not section 548(a)(1)(B) of the Bankruptcy Code or the New Jersey Fraudulent Transfer Act, and, thus, is not instructive in this matter.

flexible nature, plaintiffs "must accompany their allegations with facts indicating why the charges against defendants are not baseless and why additional information lies exclusively within defendant['s] control." *In re Craftmatic Secs. Litg.*, 890 F.2d at 646. Furthermore, the Rule does not permit plaintiffs to "merely lump multiple defendants together but requires [the complaint to] . . . inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *In re NorVergence*, 424 B.R. at 688.

A complaint is subject to dismissal if a complete defense appears on its face. *See Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001) (citing *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (internal citation omitted)). All allegations set forth in the complaint must be accepted as true, and all reasonable inferences must be viewed in the light most favorable to the plaintiff. *See Fagin v. Gilmartin*, 432 F.3d 276, 281 (3d Cir. 2005) (citing *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000)); *Griesenbeck*, 897 F. Supp. at 819 (citing *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir. 1991) (other citation omitted)). On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court is "limited to the facts alleged in the complaint, not those raised for the first time by counsel in its legal memorandum." *Griesenbeck*, 897 F. Supp. at 819 (citing *Hauptmann v. Wilentz*, 570 F. Supp. 351, 364 (D.N.J. 1983), *aff'd without opinion*, 770 F.2d 1070 (3d Cir. 1985), *cert. denied*, 474 U.S. 1103 (1986) (other citation omitted)). A court may grant leave to amend, even when a plaintiff does not seek leave to amend, unless doing so would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) (other citations omitted)).

Finally, as a general matter, a "court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410,

1426 (3d Cir. 1997) (citing *Angelastro v. Prudential-Bache Sec., Inc. & Bache Halsey Stuart Shields, Inc.*, 764 F.2d 939 (3d Cir. 1985)).    An exception is that a "'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996); *see also Kaufman v. Trump's Castle Funding (In re Donald J. Trump Casino Sec. Litig.)*, 7 F.3d 357, 368 (3d Cir. 1993) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994))).    In the Third Circuit, the scope of this exception includes documents: (i) attached to the complaint; (ii) incorporated into the pleadings by reference; (iii) of public record; and (iv) integral to or upon which the plaintiff's claim is based. *See In re Bayside Prison Litig.*, 190 F. Supp. 2d 755, 760 (D.N.J. 2002). Essentially, the problem of lack of notice to the plaintiff is dissipated "where plaintiff has actual notice . . . and has relied upon these documents in framing the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (citations omitted).

###    D.    Federal Rule of Civil Procedure 12(b)(1) Standard: Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1), made applicable in adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 12, provides that a Court must dismiss a claim for lack of subject matter jurisdiction. The motion should only be granted where the asserted claim is "insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Stanziale v. Pepper Hamilton LLP (In re Student Fin. Corp.)*, 335 B.R. 539, 545 (D. Del. 2005) (quoting *Coxson v. Commonwealth of Pa.*,

935 F. Supp. 624, 626 (W.D. Pa. 1996) (citations omitted)). Challenges to subject matter jurisdiction may either be "facial" or "factual." *See Turicentro v. Am. Airlines*, 303 F.3d 293, 300 (3d Cir. 2002), *overruled on other grounds by Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462 (3d Cir 2011); *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006).   As in a motion for failure to state a claim upon which relief may be granted, "[w]hen reviewing a facial challenge to this Court's subject matter jurisdiction, we accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff." *Int'l Fin. Corp. v. Kaiser Grp. Int'l Inc. (In re Kaiser Grp. Int'l Inc.)*, 399 F.3d 558, 561 (3d Cir. 2005) (citing *Turicentro*, 303 F.3d at 300 (citing *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 n.7 (3d Cir. 2001))).   In contrast, when considering a factual attack, a plaintiff does not benefit from a presumption of truth.   *See Turicentro*, 303 F.3d at 300.  Instead, "the court must weigh the evidence relating to jurisdiction, with discretion to allow affidavits, documents, and even limited evidentiary hearings."   *Id.* (citations omitted); *accord Cestonaro v. United States*, 211 F.3d 749 (3d Cir. 2000).

###   E.     Ponzi Scheme

It is not the Court's role to determine insolvency, or any question of fact as a general matter, at the pleading stage.  *See In re Chambers Dev. Sec. Litig.*, 848 F. Supp. 602, 618 (W.D. Pa. 1994) (question of fact); *Enron Corp. & NEPCO Power Procurement Co. v. Rexel S. Elec. Supply (In re Enron Corp.)*, 2006 WL 2400096, at *5 (Bankr. S.D.N.Y. June 1, 2006) (insolvency). However, because the Trustee's complaints rise and fall in large part on the operation of the Debtor as a Ponzi scheme, this Court must determine whether the Trustee has properly pled the same.

A Ponzi scheme is defined as:

> [a] fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors, whose example attracts even larger investments. Money from the new investors is used directly to repay or pay interest to earlier investors, usually without any operation or revenue-producing activity other than the continual raising of new funds . . . .

BLACK'S LAW DICTIONARY 1278 (9th ed. 2009); *see Cunningham v. Brown*, 265 U.S. 1 (1924) (seminal case involving Charles Ponzi, creator of the Ponzi scheme, from which the definition stems); *Liebersohn v. Campus Crusade for Christ, Inc. (In re C.F. Foods, LP)*, 280 B.R. 103, 111 (Bankr. E.D. Pa. 2002).

> To prove that [the Debtor] engaged in a Ponzi scheme, the Trustee must establish that: (1) deposits were made by investors; (2) the Debtor conducted little or no legitimate business operations as represented to investors; (3) the purported business operation of the Debtor produced little or no profits or earnings; and (4) the source of payments to investors was from cash infused by new investors.

*In re NorVergence, Inc.*, 405 B.R. at 730 (Bankr. D.N.J. 2009) (quoting *Rieser v. Hayslip (In re Canyon Sys. Corp.)*, 343 B.R. 615, 629-30 (Bankr. S.D. Ohio 2006) (internal citations omitted)).

Here, it cannot reasonably be argued that deposits were not made by investors. In fact, most of the motions to dismiss before the Court, filed by institutional investors and non-institutional investors, admit the same. The Debtor and Wayne Puff promised investors, through fraudulent sales pitches over the internet and radio, as well as in newspapers and in person, that they would receive a 15% to 25% return on investment and that they could double their money within 5 years. In addition, investors were promised continuing returns if they rolled over their investment. Yet, neither the Debtor nor its affiliates maintained operations that could fund these operations. With any due diligence, the Defendants would have realized that the Debtor's

35

operations or the transactions at issue were fraudulent or illusory.   Investors never even received

account statements.   This was due to the Debtor's and/or its affiliates' failure to maintain

separate investor accounts and their commingling of investment funds.   Moreover, in 2002, the

Debtor agreed by consent order not to further violate the securities laws of the State of New

Jersey and to offer recision to all investors whose mortgages were pooled on a single property.

In 2004, the Debtor and Mr. Puff were barred from issuing securities in the Commonwealth of

Pennsylvania.   The Debtor and its affiliates paid earlier investors from infusions of capital

received from later investors and, at all relevant times, neither the Debtor nor its affiliates were

profitable.

In addition, the Receiver's report may be used to support the Trustee's allegations because

the Trustee explicitly references the report, uses data found in the report, and copies excerpts of the

report into his adversary complaints.   The Receiver's report illustrates that the Debtor was

operating as a Ponzi scheme, stating:

(i)     "Our investigation revealed that Defendants were regularly commingling, depositing, disbursing and transferring funds among and between the Affiliates and/or Companies."

(ii)    "The documents show that during the period from January 1, 1999 through June 30, 2005 these Companies did not have the ability to pay their obligations as they came due."

(iii)   "In 2004 the Companies showed an unadjusted combined profit of $2,376,530 . . . ." "Because 2004 was a significant anomaly compared to all other years, we suspect that further analysis would require corrections and adjusting entries resulting in a loss."

(iv)    "The Companies had a negative cash flow of $5,151,177 for the period from January 1, 1999 through June 30, 2005 . . . ."

(v)     "It is evident that [the] Affiliates did not have sufficient cash flow to pay their obligations as they became due and required

36

a monthly infusion of approximately $265,000 from investor funds in order to fully fund the ongoing obligations."

(vi)    For over half of the properties at issue and based on drive-by valuations, "it is apparent that Management's [property] values exceed fair market value."

(vii)    "The current projected monthly debt service of approximately $450,000 exceeds the current potential monthly rental income of approximately $125,000 by $325,000. This is another indication of the Companies' inability to pay their obligations as they come due."

(viii)    "Without liquidating the aforementioned properties, the Receiver does not have sufficient funds to maintain operations."

In light of this support, the alleged contradiction complained of — that the Debtor operated at a profit sometime in 2004 — is either non-existent, or dissipated.   Therefore, this Court holds that the Trustee has sufficiently pled allegations of a Ponzi scheme during the relevant time period to survive a motion to dismiss.1

## F.    Standing

The United States Constitution confers and confines the power of federal courts in deciding cases and controversies.    U.S. CONST. art. III, § 2, cl. 1.    The doctrine of standing is derived directly from this provision. *See Allen v. Wright*, 468 U.S. 737, 750 (1984).    Its focus is whether the party invoking federal jurisdiction is the property party to request adjudication, rather than upon the justiciability of the legal issues involved.    *See Flast v. Cohen*, 392 U.S. 83, 99-100 (1968).

"Thus, . . . the question of standing is related only to whether the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution."    *Id.* at 101.    Therefore, a determination of standing requires emphasis upon whether the party has a "personal stake in the outcome of the controversy,"

*Baker v. Carr*, 369 U.S. 186, 204 (1962), and whether the dispute involves "the legal relations

of parties having adverse legal interests," *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-

41 (1937) (citations omitted).

> [T]he party who invokes the court's authority [is required] to 'show
> that he personally has suffered some actual or threatened injury as
> a result of the putatively illegal conduct of the defendant,'
> *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99 (1979),
> and that the injury 'fairly can be traced to the challenged action'
> and 'is likely to be redressed by a favorable decision,' *Simon v. E.*
> *Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 41 (1976).

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 472

(1982).  Stated otherwise, "[t]he burden to establish standing remains with the party claiming

that standing exists . . . ."   *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)

(citing *E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979, 984 (11th Cir. 1990); 13 CHARLES

ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3522 (2d ed. 1984) (hereinafter

"FEDERAL PRACTICE AND PROCEDURE").

> [T]he federal judiciary has also adhered to a set of prudential
> principles that bear on the question of standing.  Thus, this Court has
> held that 'the plaintiff generally must assert his own legal rights and
> interests, and cannot rest his claim to relief on the legal rights or
> interests of third parties.' *Warth v. Seldin*, 422 U.S. 490, 499 (1975).
> In addition, even when the plaintiff has alleged redressable injury
> sufficient to meet the requirements of [Article] III, the Court has
> refrained from adjudicating 'abstract questions of wide public
> significance' which amount to 'generalized grievances,' pervasively
> shared and most appropriately addressed in the representative
> branches. *Id.* at 499-500. Finally, the Court has required that the
> plaintiff's complaint fall within 'the zone of interests to be protected
> or regulated by the statute or constitutional guarantee in question.'
> *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153
> (1970).

*Valley Forge Christian Coll.*, 454 U.S. at 474-75.

In the Complaints involving the Debtor Properties, the Trustee seeks judgments:

> (a) avoiding the mortgages and assignments allegedly held by the defendants; (b) preserving the mortgages for the benefit of the Debtor's estate under Section 551 of the Bankruptcy Code; (c) avoiding and recovering debt service payments; (d) declaring that the mortgages are unenforceable against the Debtor Properties and the Trustee; (e) directing the defendants to prove the validity, priority and extent of their alleged liens on the Debtor Properties; and (f) directing the defendants to provide an accounting of all payments or other transfers made to the defendants prior to the Petition Date, and of all investments, loans or other transfers made by the defendants to the Debtor.

(Br. Chapter 7 Trustee Opp'n Mots. Dismiss at 14,  Jan. 12, 2007, ECF No. 2126)

"In the Complaints involving the Nominee Properties, the Trustee seeks a declaration that

[the Debtor's] estate, and not the Individual Defendants, is the true legal and equitable title holder

to the Nominee Properties."   *Id.* at 15.

> Since the Trustee asserts that the Nominee Properties are property of the bankruptcy estate, the Complaints involving these Properties also seek: (a) to avoid the Corporate Defendants' and the Non-Corporate Lender Defendants' purported liens on the Properties; and (b) other legal and equitable relief on the estate's behalf.  Again, the legal theories supporting these claims include avoidance of fraudulent transfers pursuant to Sections 544 and 548 of the Bankruptcy Code and [New Jersey] state law . . . , avoidance of preferential transfers pursuant to Section 547 of the Bankruptcy Code . . . , equitable subordination of the Corporate Defendants' claims pursuant to Section 510(c) of the Bankruptcy Code . . . , and various equitable claims including unjust enrichment and establishment of a resulting trust, constructive trust, and equitable lien . . . .

*Id.*

A trustee may commence actions on behalf of the estate.

> Such actions will fall into two categories: (1) those brought by the trustee as successor to the debtor's interest included in the estate under Section 541 [of the Bankruptcy Code] or those assigned to the trustee against third parties for the benefit of the estate; and (2) those brought under one or more of the trustee's avoiding powers.

3 COLLIER ON BANKRUPTCY ¶ 323.03[2] (Alan N. Resnick & Henry J. Sommer eds.,16th ed. rev.)

It is a well-settled principle that a Trustee has standing to avoid and recover pre-petition

transfers of a debtor's property pursuant to 11 U.S.C. §§ 544, 547, 548, 549 and 550.  *See Official*

*Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 356 (3d Cir. 2001); 11

U.S.C. § 544(a) ("The trustee . . . may avoid any transfer of property of the debtor. . . ."); 

11 U.S.C. § 547(b) ("the trustee may avoid any transfer of an interest of the debtor in property"); 11

U.S.C. § 548(a)(1) ("The trustee may avoid any transfer . . . of an interest of the debtor in

property, or any obligation  . . . incurred by the debtor . . . ."); 11 U.S.C. § 548(b) ("The trustee

of a partnership debtor may avoid any transfer of an interest of the debtor in property, or any

obligation incurred by the debtor . . . ."); 11 U.S.C. § 549(a) ("[T]he trustee may avoid a

transfer of property of the estate . . . ."); 11 U.S.C. § 550(a) ("[T]o the extent that a transfer is

avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may

recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of

such property . . . .").

The Defendants argue that the Trustee's avoidance counts are *ultra vires* in that the Trustee

seeks to enforce actions on behalf of creditors of the Debtor as well as the Debtor itself.

Generally, a bankruptcy trustee lacks standing to prosecute claims exclusively on behalf of

specific creditors.  *See Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 434

(1972).  However,  the Bankruptcy Code permits a trustee to bring claims founded on the rights of

the debtor and on certain rights of creditors.  *See Hirsch*, 72 F.3d at 1093 (citations omitted);

11 U.S.C. §§ 541, 544, 547.  The trustee stands in the shoes of the debtor, and can only maintain

those actions that the debtor could have brought prior to commencement. *Hirsch*, 72 F.3d at

40

1093 (citing *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991)).

"Whether the rights belong to the debtor or the individual creditors is a question of state law."

*Hirsch*, 72 F.3d at 1093 (citing *St. Paul Fire & Marine Ins. Co. v. Pepsico, Inc.*, 884 F.2d 688,

700 (2d Cir. 1989); *see also Sobchack v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs)*,

17 F.3d 600, 607 (2d Cir. 1994)).

This Court has already determined that the Debtor maintains at least an equitable interest in

the properties.   In addition, the Trustee alleges that the Debtor, directly or through its affiliates, paid

for the costs of acquisition, maintenance, and debt service as to the properties.  Assuming the

truth of these allegations, the Trustee properly seeks a determination that the properties

constitute property of the estate.

The Trustee also alleges that the mortgages, encumbrances, and obligations are

responsibilities of the Debtor.  As such, the Debtor provided the mortgage, debt service, and

maintenance payments.  Assumed as true, these allegations provide remedies, as discussed *infra*,

for the Debtor to avoid and recover the payments made by the Debtor relating to the properties.

These remedies account for the injury to the Debtor as it is alleged that the Debtor provided the

payments sought to be avoided.  In addition, the Trustee properly seeks to avoid the liens against

the properties and to preserve them on behalf of the estate under the same rubric.  A trustee has

standing to prosecute an action to determine whether property belongs to the estate.   *See*

*Lafferty*, 267 F.3d at 356; *see also* 11 U.S.C. § 323(b) (2007) (power to sue); 11 U.S.C. § 541

(property of the estate); 11 U.S.C. § 704(a)(1) (collect and reduce the property to money).   A

trustee may also bring actions as a successor to the debtor's interest, measured at

commencement.   *See Lafferty*, 267 F.3d at 356.    In a voluntary Chapter 7 proceeding,

commencement is determined by the filing of the bankruptcy petition, *i.e.*, the petition date.

41

*See Clarke v. Paige (In re Clarke)*, 266 B.R. 301, 305 (Bankr. E.D. Pa. 2001). Therefore, pursuant to Section 541, the trustee of a corporate debtor may prosecute causes of action in which the corporation held a legal or equitable interest on the petition date.

The Trustee alleges, and the Receiver's report evidences, that the Debtor, Wayne Puff and their affiliates commingled assets, as well as failed to trace assets by account, property, or investors. As such, the Debtor's affiliates made transfers of either the Debtor's assets or the Debtor's interest in those assets. This is further supported by the Amended PIO Order, which authorized the orderly liquidation of the Debtor's and its affiliates' real property and related assets for the benefit of creditors of the Debtor. To bar the Trustee's standing to avoid and recover transfers by the Debtor's affiliates would render the Amended PIO Order hollow. Clearly, the Trustee has standing to pursue avoidance and recovery claims against the recipients of payments made by the Debtor's affiliates to the extent those payments constitute the Debtor's property.

A bankruptcy trustee has also been afforded standing to assert equitable claims of unjust enrichment, constructive trust, and resulting trust. *See McGavin v. Segal (In re McGavin)*, 189 F.3d 1215, 1221 (10th Cir. 1999) (constructive trust and resulting trust); *Rosener v. Majestic Mgmt. (In re OODC, LLC)*, 321 B.R. 128, 145 (Bankr. D. Del. 2005) (unjust enrichment); *Billingham v. Simpson (In re Simpson)*, 334 B.R. 298, 305-06 (Bankr. D. Mass. 2005) (constructive trust and resulting trust); *Goodman v. Phoenix Container, Inc. (In re Demert & Dougherty, Inc.)*, 271 B.R. 821, 835-39 (Bankr. N.D. Ill. 2001) (constructive trust).

> A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest is otherwise effectively disposed of.

42

RESTATEMENT (SECOND) OF TRUSTS § 404 (1959).  The resulting trust rises up to correct defects in the execution of the transferring party's intent.   Here, the Trustee alleges it was not the Debtor's intent to transfer legitimate mortgages or title of properties to nominee holders. Instead, these holders merely provided a line of credit in order to finance the Debtor's operations and in exchange received a purported lien on property.  Therefore, the Trustee's set of facts would support his entitlement to the relief he seeks in the context of a resulting trust.

On the other hand, a constructive trust "is imposed not because of the legally inferred intention of the parties but because the court concludes that the person holding the title to the property, if permitted to keep it, would profit by a wrong or would be unjustly enriched." RESTATEMENT (THIRD) OF TRUSTS § 7 cmt. d.   Again, the Trustee alleges that it would be unjust to permit the nominee title holders to retain a legal interest in the properties.    As alleged: (i) the title holders paid little to nothing for the properties, (ii) some of those payments were funded by the Debtor, and (iii) the Debtor maintained the debt service, taxes, and mortgage payments on the properties.   Therefore, this Court cannot say that the Debtor does not maintain such an equitable interest in the properties on the alleged facts insufficient to constitute a plausible entitlement to relief.

To prove a claim of unjust enrichment, "the plaintiff must establish that the defendant received a benefit, that the defendant was aware of the benefit, and that the benefit was accepted by the defendant under circumstances that would make the acceptance inequitable without payment for its value."  *In re OODC, LLC*, 321 B.R. at 145 (citing *Jackson Nat'l Life Ins. Co., v. Kennedy*, 741 A.2d 377, 393 (Del. Ch. 1999)).   The Trustee argues that the defendants took not only a lien on the properties at issue, but also nominal title, without paying for the property, maintaining

the property or servicing the mortgage.   The defendants were aware of this as they were

solicited to "use" their credit in order to buy a home and execute a mortgage that the Debtor

would pay for.   As the defendants did not exchange valuable consideration for title, the Trustee

has stated a claim of unjust enrichment.   In addition, the Trustee argues that the investments were

illusory.   On these facts, the defendants did not provide valuable consideration for the mortgages.

Therefore, the Trustee has stated a plausible entitlement to relief on account of unjust enrichment.

### G.   *In Pari Delicto*

Under New Jersey law, the doctrine of "in pari delicto potior est conditio defendentis"

(hereinafter "*in pari delicto*") is an equitable defense to claims in equity and means that "in a case

of equal or mutual fault . . . the position of the [defending] party . . . is the better one."

*Lowenschuss v. Resorts Int'l, Inc. (In re Resorts Int'l, Inc.)*, 181 F.3d 505, 512 (3d Cir. 1999)

(applying New Jersey law) (quoting BLACK'S LAW DICTIONARY 791 (6th ed. 1990)).   The doctrine

is equally applicable under federal law.   *Official Comm. of Unsecured Creditors v. R.F. Lafferty &*

*Co.*, 267 F.3d 340, 354 (3d Cir. 2001) (applying Pennsylvania law, which is almost

indistinguishable to the doctrine as it exists under New Jersey law).   While the premise upon

which the doctrine is founded involves other defenses dependent on whether the claim asserted

is one of, *inter alia*, tort or contract, the doctrine may be applied uniformly across different claims

because the analysis "will typically be the same."   *Id.* at 354-55.

Absent an explicit federal statutory provision of special federal interest, state law governs

the imputation of fraud.   *O'Melveny & Myers v. Fed. Deposit Ins. Corp.*, 512 U.S. 79, 83-85

(1994). Under New Jersey law, a corporation is presumed to be a distinct entity, separate

from its stockholders and officers.   *Lyon v. Barrett*, 89 N.J. 294, 300 (N.J. 1982).   However, this

44

presumption "cannot be carried so far as to enable the corporation to become a means of fraud; and knowledge of fraud on the part of the officers, who are also the principal stockholders and whose interests are identical, is properly to be imputed to the corporation itself."  *J. J. McCaskill Co. v. United States*, 216 U.S. 504 (1910).

In *Rochez Bros., Inc. v. Rhoades*, 527 F.2d 880 (3d Cir. 1975), the Third Circuit Court of Appeals fashioned a two-prong test of general applicability for determining whether the fraud of an officer of a corporation may be imputed to the corporation itself.  Fraud is imputed "when the officer's fraudulent conduct was (1) in the course of his employment, and (2) for the benefit of the corporation."  *Id.* at 884; *see also In re Pers. & Bus. Ins. Agency*, 334 F.3d 239, 243 (3d Cir. 2003).

> *Rochez Brothers* makes clear that a corporate officer's fraud is imputed to the corporation 'even if the officer's conduct was unauthorized, effected for his own benefit but clothed with apparent authority of the corporation, or contrary to instructions.' *Id.* The reason for this is that 'a corporation can speak and act only through its agents and so must be accountable for any acts committed by one of its agents within his actual or apparent scope of authority and while transacting corporate business.' *Id.*

*In re Cendant Corp. Litig.*, 264 F.3d 201, 238 (3d Cir. 2001).

In New Jersey, imputation precludes suits by a principal against a third party in instances where the principal's agent defrauded the third party while acting within the scope of his or her employment.  *NCP Litig. Trust v. KPMG LLP*, 187 N.J. 353, 371-72 (N.J. 2006) (citing *Hollingsworth v. Lederer*, 125 N.J. Eq. 193, 211 (N.J. Ch. 1939) ("If any . . . agent acting within the general scope of his powers acquires knowledge of a particular fact while committing a fraud upon a third person in a matter pertaining to the business of the corporation . . . the corporation will be imputable with such knowledge, as well as with knowledge of the fraud

. . . ."). In addition, the New Jersey Supreme Court addressed the distinction made in imputation cases in determining whether the agent's fraud was "adverse to or for the benefit of the corporation," noting that "there can be difficulty in differentiating between whether the malfeasant conduct benefits or harms the corporation." *NCP Litig. Trust v. KPMG LLP*, 187 N.J. at 381 (citations omitted). However, the Court stated unequivocally, that "we find that inflating a corporation's revenues and enabling a corporation to continue in business 'past the point of insolvency' cannot be considered a benefit to the corporation. *Id.* (citations omitted).

Two exceptions exist to the imputation of fraud and, therefore, to the application of the doctrine of *in pari delicto*. The adverse interest exception bars imputation of fraudulent conduct if the officer's interests were adverse to, and not for the benefit of, the corporation. *See id.* at 382; *Lafferty*, 267 F.3d at 359 (applying law substantially similar to that of New Jersey). Under New Jersey law, courts may disallow the *in pari delicto* defense if its invocation would produce an inequitable result under the rubric of public policy. *See Bd. of Educ. v. N.J. Educ. Ass'n*, 96 N.J. Super. 371, 388 (N.J. Ch. 1967) (citing *Pendleton v. Gondolf*, 85 N.J. Eq. 308, 314 (N.J. Ch. 1915)); *Hansen v. Int'l Ass'n of Bridgemen*, 140 N.J. Eq. 586, 590 (N.J. Ch. 1947) (citing *Pendleton*, 85 N.J. Eq. at 314).

The *in pari delicto* "defense is the legal corollary of the equitable unclean hands doctrine which requires not even equal fault on the part of the plaintiff in order to bar the lawsuit." *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 756 (3d Cir. 1990) (citing *Rothberg v. Rosenbloom*, 808 F.2d 252, 256 n.6 (3d Cir. 1986), *cert. denied*, 481 U.S. 1017 (1987)). The doctrine stems from the ancient maxim that he who comes into equity must come with clean hands. It "embraces the principle that a court should not grant equitable relief to a party who is a wrongdoer with respect to the subject matter of the suit." *Inter Med. Supplies v. EBI Med. Sys.*,

975 F. Supp. 681, 687 (D.N.J. 1997) (quoting *Pellitteri v. Pellitteri*, 266 N.J. Super. 56, 65,

628 A.2d 784 (App. Div. 1993) (internal citation omitted)).

> The doctrine of unclean hands is to be applied flexibly in the interest
> of fairness and justice. *City of Paterson v. Schneider*, 31 N.J. Super.
> 598 (App. Div. 1954). Relief can be awarded to a former
> wrongdoer[, and even a plaintiff-wrongdoer,] where in the particular
> case public policy has been found to be best served by that course. *Id.*
> at 606; *Casini v. Lupone*, 8 N.J. Super. 362, 366 (N.J. Ch. 1950);
> *Hansen v. Local No. 373*, 140 N.J. Eq. 586, 590 (N.J. Ch. 1947);
> *Pendleton*, 85 N.J. Eq. at 314.

*United Stations of N.J. v. Kingsley*, 99 N.J. Super. 574, 584 (Ch. Div. 1968).   Therefore, even in

the context of two parties, both having unclean hands, a court may aid the one who is

comparatively more innocent.  *Laurino v. Laurino*, 28 N.J. Super. 119, 124 (App. Div. 1953).

> Such an exigency arises where there are collateral and incidental
> circumstances attending the transaction and affecting the relations of
> the two parties which render one of them comparatively free from the
> accusation of willfully and deliberately engaging in the dishonorable
> and unscrupulous undertaking. Such circumstances commonly
> exhibit the exercise of imposition, dominance, undue influence,
> deceit, and the like influences in inducing the one party to engage in
> the dishonest transaction. 2 Pom. Eq. Jur. § 942; *vide*, *Tami v.
> Pikowitz*, 138 N.J. Eq. 410 (N.J. Ch. 1946).

*Laurino*, 28 N.J. Super. at 124.   The only relevant distinction between the *in pari delicto* defense

and the doctrine of unclean hands is one of degree of fault.   *Compare Lowenschuss*, 181 F.3d at

512, *with McAdam*, 896 F.2d at 756.

> A corporate receiver represents not only the corporation but all of its
> creditors; in order to secure all the assets available, the receiver
> succeeds to their rights and has all the powers to enforce such rights
> that the creditors before the appointment had in their own behalf,
> even though such powers are beyond those which the receiver has as
> the representative of the corporation alone.

65 Am. Jur. 2d Receivers § 371 n.3 (citations omitted).

47

> However, while any defense good against the original party is
> generally good against the receiver, the rule is subject to exceptions,
> since, for example, defenses based on a party's unclean hands or
> inequitable conduct do not generally apply against that party's
> receiver. So when an act has been done in fraud of the rights of the
> creditors of an insolvent corporation, the receiver may sue for their
> benefit, even though the defense set up might be valid as against the
> corporation itself.

65 AM. JUR. 2D RECEIVERS § 372 (citing *FDIC v. O'Melveny & Myers*, 61 F.3d 17, 18 (9th Cir.

1995) (general proposition); *Lyons v. Benney*, 79 A. 250 (Pa. 1911) (example) (questioned in its

unrelated application by *Waslow v. Grant Thornton LLP (In re Jack Greenberg, Inc.)*, 240 B.R. 486

(Bankr. E.D. Pa. 1999))).   Unlike trustees in bankruptcy, receivers are not subject to the limits of

11 U.S.C. § 541 (2007).  *See Lafferty*, 267 F.3d at 358.

A trustee "stands in the shoes of the bankrupt, and the property which comes into his hands

as assets is subject to all the equities impressed upon it in the hands of the bankrupt." *In re*

*Chandler*, 290 F. 988, 991 (E.D. Pa. 1923) (citing *Security Warehousing Co. v. Hand*, 206 U.S. 415

(1907); *Zartman v. First Nat'l Bank of Waterloo*, 216 U.S. 134 (1910); *Thompson v. Fairbanks*, 196

U.S. 516 (1905) (other citation omitted)).  *See generally Lafferty*, 267 F.3d at 340.   Because a

trustee may take no rights greater than the debtor had on the petition date under Section 541, he may

not use his status to insulate himself from the debtor's pre-petition wrongdoing and any applicable

defenses must be applied as of the petition date without regard to post-petition events.   *Lafferty*,

267 F.3d at 356-58.   However, a court may consider post-petition events to preclude the application

of the *in pari delicto* defense when a trustee sues based upon Section 548, at a minimum, and

arguably all of his avoidance powers.  *See McNamara v. PFS (In re Pers. & Bus. Ins. Agency)*, 334

F.3d 239, 246-47 (3d Cir. 2003) (Where the issue at hand was "whether a court may consider post-

petition events, in this case the appointment of the Trustee, in actions based on a trustee's

48

avoiding powers"); *see also In re CITX Corp., Inc.*, 2005 WL 1388963, *11 (E.D. Pa. June 7, 2005) (prohibiting the court from considering post-petition events, such as the appointment of a trustee, for actions pursued on the estate under section 541, but allowing the consideration of post-petition events for actions brought by the trustee pursuant to its avoidance powers).

Here, Mr. Puff and the other persons or entities involved in the solicitations of investments are alleged to be agents of the Debtor.  It is claimed and undisputed that Mr. Puff acted, at all relevant times, as the Debtor's principal, director, and sole shareholder.   The purported agents of the Debtor, who participated in soliciting investments or with regard to actions involving the properties, worked at his direction.  In so doing, they received either a fee or commissions for their involvement.   Therefore, the Trustee has sufficiently pled that Mr. Puff and the Debtor's affiliated entities or individuals acted as agents for the Debtor.

Mr. Puff's participation in the Ponzi scheme is beyond cavil.   In addition, Mr. Puff was acting within the scope of his employment when soliciting investments.  In fact, it was his role alone, as principal of the Debtor, to organize and coordinate the solicitation of investments.   As in *NCP Litig. Trust*, this Court is faced with "difficulty in differentiating between whether the malfeasant conduct benefits or harms the corporation."   *NCP Litig. Trust*, 187 N.J. at 381. Like *NCP Litig. Trust*, the operation of the Ponzi scheme here caused the Debtor to operate at a continual cash flow deficit and to file for bankruptcy.   However, unlike the *NCP Litig. Trust* decision where the auditing firm's failure to follow strict accounting and auditing guidelines resulted in overstated revenues and understated liabilities, Mr. Puff's alleged fraudulent actions caused a direct benefit to the Debtor: revenue via investment.  Therefore, this Court will impute Mr. Puff's fraud to the Debtor.

The Defendants portray the application of the *in pari delicto* defense, and in parallel the doctrine of unclean hands, under these circumstances as a foregone conclusion given the Third Circuit Court of Appeals's decision in *Lafferty*.   The Trustee argues instead, that this Court should apply the equitable exception recognized in *O'Melveny & Myers*, and *Scholes*, based upon the appointment of the Receiver pre-petition.   *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995).   The Trustee places particular emphasis on the factual similarity and reasoning of *In re Edgewater Medical Center*.   *Edgewater Med. Ctr. v. Rogan (In re Edgewater Med. Ctr.)*, 332 B.R. 166 (Bankr. N.D. Ill. 2005).

*Lafferty* involved Chapter 11 petitions in bankruptcy, necessitated by the implosion of a Ponzi scheme.   The scheme involved the issuance of debt certificates induced by fraudulent misstatements and omissions of corporate financial statements by a wholly-owned subsidiary, in a purported effort to raise capital for its parent corporation.   The scheme originated and was controlled by the sole shareholder of a third corporation, which maintained 100% ownership of the parent company for which capital was raised.   When the corporations were unable to pay their debts in a timely fashion, the parent and subsidiary corporations filed voluntary Chapter 11 petitions.   A trustee and an unofficial committee of unsecured creditors were appointed. By way of a court-approved stipulation, the committee was authorized to commence litigation on behalf of the debtor estates and "effectively acquired all the attributes of a bankruptcy trustee . . . ." *Lafferty*, 267 F.3d at 345.

The committee brought a civil proceeding, grounded in federal and state law, against the debtors' sole shareholder and his co-conspirators, including the debtors' accountant and underwriters, for conspiring to render opinions fraudulently misstating the debtors' financial positions.   On appeal, the Third Circuit Court of Appeals reviewed and affirmed the lower

50

court's dismissal of the action as to the accountant and underwriters.   In so doing, the court

imputed the wrongdoing of the sole shareholder and members of his family who were involved in

the conspiracy to the debtors under Pennsylvania law and held that the *in pari delicto* defense

barred the trustee's suit as to the accountant and underwriters.

At this point, it becomes evident that *Lafferty* only partly controls the case at hand. The

propositions cited *supra*, remain binding upon this Court.    However, *Lafferty* did not involve a

pre-petition receiver.    Therefore, it remains an open question in the Third Circuit whether a

trustee is barred from suit, under 11 U.S.C. § 541 as well as his avoidance powers, pursuant to the

*in pari delicto* defense and the parallel doctrine of unclean hands when he succeeds a pre-petition

receiver.   Indeed, the *Lafferty* Court made a concerted effort not to determine the issue presented

here, stating:

> We certainly acknowledge that, in the receivership context, several
> courts have declined to apply *in pari delicto* to bar the receiver from
> asserting the claims of an insolvent corporation on the ground that
> application of the doctrine to an innocent successor would be
> inequitable. These courts have thought it proper to consider events
> arising after a corporation enters into receivership. *O'Melveny &
> Myers*, 61 F.3d at 19 ("While a party may itself be denied a right or
> defense on account of its misdeeds, there is little reason to impose the
> same punishment on . . . [an] innocent entity that steps into the
> party's shoes pursuant to court order or operation of law."); *Scholes*,
> 56 F.3d at 754 (stating that "the defense of in pari delicto loses its
> sting when the person who is in pari delicto is eliminated"). 
> These cases are easily distinguishable, however; unlike bankruptcy
> trustees, receivers are not subject to the limits of Section 541.

*Lafferty*, 267 F.3d at 358.

This Court is cognizant that a trustee in bankruptcy, unlike a receiver, is limited to causes of

action pursuant to 11 U.S.C. § 541 and the avoidance provisions of the Bankruptcy Code.   *See* 3

COLLIER ON BANKRUPTCY ¶ 323.03 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.);

51

*Lafferty*, 267 F.3d at 358.    However, for the reasons stated in this Court's standing analysis, *supra*, the Trustee's causes of action do not seek to enlarge or supersede those powers. Therefore, because the Third Circuit Court of Appeals did not consider the effect of a pre-petition receiver, its holding as to the application of the *in pari delicto* defense does not control the case at bar.

This Court now turns to the Trustee's cases to analyze whether *in pari delicto* bars actions brought by a receiver.    *Scholes* also resulted from the implosion of a Ponzi scheme.    *Scholes*, 56 F.3d at 753.   The mastermind of the scheme created three corporations, which in turn, created three limited partnerships.    The three corporations acted as general partners and marketed limited partnership interests to public investors.    The limited partnerships were to trade commodities and provide investors a 10% to 20% monthly return on their investment.    Although some trading did occur, the purported interest on earlier investments was in large part paid from subsequent investments of principal.    A receiver was appointed to the mastermind of the scheme as well as the three corporations.    The receiver succeeded in recovering money siphoned from the corporations, based upon actual fraudulent conveyance counts under Illinois state law, and distributed the funds to investors, representing a 40% refund of their total investments pro rata. *Id.* at 752-53.

The *Scholes* court reasoned that though injured by the fraud of their principal, the corporations could not be heard to complain while under his control because of their complicity in his fraud as attributed to them.    *Id.* at 754.    In addition, the purpose of fraudulent conveyance statutes is that a wrongdoer not be permitted to profit from his own fraud by recovering property he parted with in an effort to defraud his creditors.    *Id.*  However, the reason does not apply when the wrongdoer is removed from the scene and is replaced by an innocent successor.    *Id.* Moreover, the notion that a return would benefit investors complicit in the fraud "is just to say

that anything that helps a corporation helps those who have claims against its assets." *Id.*

"Put differently, the defense of *in pari delicto* loses its sting when the person who is *in pari delicto*

is eliminated." *Id.* at 754-55 (citing *McCandless v. Furlaud*, 296 U.S. 140, 160 (1935) (other

citation omitted)).

> The conceivable alternatives to these suits for getting the money back
> into the pockets of its rightful owners are a series of individual suits
> by the investors, which, even if successful, would multiply litigation;
> a class action by the investors — and class actions are clumsy
> devices; or, most plausibly, an adversary action in bankruptcy,
> brought by the trustee in bankruptcy. . . .
>
> We add that if in place of the receiver's actions the
> investors had brought a class action against the present
> defendants, or had sued them individually, the defendants would no
> doubt be arguing that the action was improper because the injury
> was to the corporations and only derivatively to investors in the
> corporations. *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d
> 774, 777 (7th Cir. 1994); *Kagan v. Edison Bros. Stores*, 907 F.2d
> 690 (7th Cir. 1990); *Manson v. Stacescu*, 11 F.3d 1127, 1131 (2d
> Cir. 1993).

*Scholes*, 56 F.3d at 755.   While it is unclear whether the *Scholes* court held that the corporate fraud

did not impute to the receiver, or that the fraud did impute but the *in pari delicto* defense was

simply inapplicable to the receiver as an innocent successor, the difference is immaterial — *in

toto*, the receiver was permitted to prosecute the actions.   *Id.*

In *O'Melveny & Myers*, a failed savings and loan association was put into receivership under

the control of a federal instrumentality.   The receiver then brought suit against the former

legal counsel to the savings and loan, claiming professional negligence in connection with two real

estate syndications.   The role of legal counsel was to create memoranda describing and inducing

investment in a limited partnership regarding two real estate deals.   Receivership was

necessitated by the fraudulent acts of the two acquirers of the savings and loan as well as one

53

of its directors, which included: (i) the overvaluation of assets, (ii) sham sales of assets to record

inflated profits, and (iii) "cook[ing] the books."

While finding it a "closer question under state law than federal law," the Ninth Circuit Court

of Appeals concluded that the entity's fraud was not imputed to the receiver and therefore the

receiver's action was not barred by the *in pari delicto* defense or the doctrine of unclean hands.

*F.D.I.C. v. O'Melveny & Myers*, 61 F.3d 17, 19 (9th Cir. 1995).

> While a party may itself be denied a right or defense on account of its
> misdeeds, there is little reason to impose the same punishment on a
> trustee,[3] receiver or similar innocent entity that steps into the
> party's shoes pursuant to court order or operation of law.
>
> A receiver, like a bankruptcy trustee and unlike a normal successor
> in interest, does not voluntarily step into the shoes of the
> [entity]; it is thrust into those shoes. It was neither a party to the
> original inequitable conduct nor is it in a position to take action
> prior to assuming the [entity's] assets to cure any associated defects
> . . . .
>
> Also significant is the fact that the receiver becomes [the
> entity's] successor as part of an intricate regulatory scheme
> designed to protect the interests of third parties who also were
> not privy to the [entity's] inequitable conduct. That scheme would
> be frustrated by imputing the [entity's] inequitable conduct to the
> receiver, thereby diminishing the value of the asset pool held by
> the receiver and limiting the receiver's discretion in disposing of
> the assets.  (citations omitted).

*Id.* at 19.   A contrary holding would elevate form over substance, something courts of equity

have historically resisted so long as the "superior equities" of third parties are unaffected.  *Id.*

(citing *Drexel v. Berney*, 122 U.S. 241, 254 (1887)).

---

[3]  In the Third Circuit, a trustee in bankruptcy may be barred from suit by the in pari delicto defense when prosecuting
an action under 11 U.S.C. § 541 (2007) without the existence of a break in the chain of imputation pre-petition.  *See
generally Lafferty*, 267 F.3d at 340.

*In re Edgewater Medical Center* involved a Medicare fraud scheme. The scheme's operation involved illegal payments to physicians in exchange for referring patients to the hospital in issue. Those payments were then obfuscated by mechanisms, such as the execution of purported contracts, designed to create an illusion of payment for legitimate services. These fraudulent transactions were subsequently discovered by Medicare, who suspended payment on all pending claims. One month later, a receiver was appointed. The receiver was in place for two months when his powers were expanded and he was re-appointed custodian. That same day, the custodian filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The debtor continued to operate as a debtor-in-possession and brought suit against all co-conspirators in the fraud. *In re Edgewater Med. Ctr.*, 332 B.R. 166, 170-72 (Bankr. N.D. Ill. 2005).

The United States Bankruptcy Court for the Northern District of Illinois in *In re Edgewater Medical Center* relied upon *Scholes*, then binding precedent, for the proposition that the *in pari delicto* defense was inapplicable to a receiver. *Id.* at 178. The court then extended this same principle to the custodian, stating:

> [w]hen the . . . custodian filed this bankruptcy, the custodian-controlled corporation became the debtor in possession and stepped into [its] shoes . . . . This plaintiff is now at least two levels removed from any wrongful actors who engaged in the Medicare fraud. In this suit, the debtor in possession is engaged in the collection of assets for distribution to creditors, not for its own benefit. Given that [the debtor] was organized as a not-for-profit hospital, it seems unlikely that any potential creditors could be parties who were engaged in the Medicare fraud scheme. Nevertheless, should this be the case, the very equitable defenses asserted in this case and the equitable subordination of this category of creditors' claims serve to ensure that these wrongful actors will not recover from the estate.

*Id.*

55

The Trustee cannot rely upon being two levels removed from the fraud to garnish inapplicability of the *in pari delicto* defense on his 11 U.S.C § 541 (2007) claims.   *See Lafferty*, 267 F.3d at 356-58.    However, the opposite is true of the Trustee's 11 U.S.C. § 548 (2007) actions.   *See In re Pers. & Bus. Ins. Agency*, 334 F.3d at 246-47.    This Court finds it appropriate under the circumstances to extend the Trustee's ability to use post-petition events, such as his status, to preclude application of the *in pari delicto* defense and the parallel doctrine of unclean hands to all of his avoidance actions.   *Compare Lowenschuss*, 181 F.3d at 512, *with McAdam*, 896 F.2d at 756 (unclean hands parallel).   *See also In re Pers. & Bus. Ins. Agency*, 334 F.3d at 246-47.

It is fundamental that an "overarching bankruptcy policy [is the] equality of distribution among creditors by requiring a creditor that has received a greater payment than others of the class of which the creditor is a member to disgorge so that all members of the class may share equally on a *pro rata* basis."   *Walsh v. Dutil (In re Demko)*, 264 B.R. 404, 407 (Bankr. W.D. Pa. 2001) (citing *Union Bank v. Wolas*, 502 U.S. 151, 160-61 (1991)).   To preclude a receiver from suit would prohibit a *pro-rata* distribution of estate assets recoverable by the Trustee.   As all defrauded investors who did not conspire in the Ponzi scheme are tort creditors of the Debtor, this Court sees no reason in law or equity to permit certain tort creditors to recover more than others.   This Court also realizes the sharp split of authority regarding recoverability of the principal payback resulting from a Ponzi scheme.   However, that issue is not before the Court.    Instead, it is enough that interest is recoverable in this scenario. Therefore, to promote the equitable distribution in bankruptcy, and for the reasons set forth in *Scholes* as well as *O'Melveny & Myers*, this Court holds the *in pari delicto* defense and the doctrine of unclean hands inapplicable to causes of action that could have been brought by the Receiver under the circumstances *sub judice*.

56

From this holding, it is only a short step to the conclusion that the Trustee as a successor-in-interest stands in a similar position. For the purposes of 11 U.S.C. § 541, the Receiver was in place at the commencement of this bankruptcy case. The Trustee took cleansed causes of action, limited to those provided to the Trustee under the Bankruptcy Code, as an innocent successor. The same is true of the Trustee's avoidance actions. However, the Trustee's ability to prosecute the avoidance actions gains additional support. The Trustee is now two levels removed from the fraud, first by the appointment of the Receiver and then his own appointment. *See In re Edgewater Medical Ctr.*, 332 B.R. at 178 (two levels); *Scholes*, 56 F.3d at 754-55 (receiver); *O'Melveny & Myers*, 61 F.3d at 19-20 (receiver).

Thus, this Court holds that on the facts before it, the Trustee's actions are not barred by either the *in pari delicto* defense or the doctrine of unclean hands.

### H.   Timeliness Under The New Jersey Uniform Fraudulent Transfer Act

Actual and constructive fraudulent transfers may be avoided pursuant to the New Jersey Uniform Fraudulent Transfer Act at New Jersey Statutes Annotated section 25:2-25.

The New Jersey Uniform Fraudulent Transfer Act also provides an additional avenue for avoiding fraudulent transfers under New Jersey Statutes Annotated section 25:2-27. The statutory timing rules for commencing such actions, as amended in 2002, state in relevant part:

> A cause of action with respect to a fraudulent transfer or obligation under this article is extinguished unless action is brought:
>
> a.    Under [N.J. STAT. ANN. § 25:2-25(a)], within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was discovered by the claimant;

b.      Under [N.J. Stat. Ann. § 25:2-25(b)] or [N.J. Stat. Ann. § 25:2-27(a)], within four years after the transfer was made or the obligation was incurred; or

c.      Under [N.J. Stat. Ann. § 25:2-27(b)], within one year after the transfer was made or the obligation was incurred.

N.J. Stat. Ann. § 25:2-31 (West 2007).

A statute of limitations procedurally limits the remedy under an available cause of action. *See Williams v. EMC Mortg. Corp. (In re Williams)*, 276 B.R. 394, 398 (Bankr. E.D. Pa. 2002). In contrast, a statute of repose is a legislative determination that after a prescribed period of time a plaintiff loses the substantive right to prosecute the action. *Id.* Because a statute of repose provides an absolute time bar to the commencement of an action, it is not subject to equitable tolling. *See Neuner v. C.G. Realty Capital Ventures-I.L.P. (In re Sharps Run Assocs., L.P.)*, 157 B.R. 766, 783 (D.N.J. 1993). Many courts applying New Jersey law have determined that New Jersey Statutes Annotated section 25:2-31 is a statute of repose. *See Official Comm. of Asbestos Claimants v. Bank of N.Y. (In re G-I Holdings, Inc.)*, 2006 U.S. Dist. LEXIS 45510, *26-28 n.18 (D.N.J. June 21, 2006) ("*G-I Holdings I*") (quoting N.J. Leg., 203rd Leg., 1st Sess., Ch. 74 (N.J. 1988) (enacted) ("Finally, the bill [— later to become N.J. Stat. Ann. § 25:2-31 —] also provides a statute of limitations that bars the right rather than the remedy on the expiration of the statutory periods prescribed.") (other citations omitted)); *Gibbons v. First Fid. Bank, N.A. (In re Princeton-New York Investors, Inc.)*, 199 B.R. 285, 293 n.4 (Bankr. D.N.J. 1996) (hereinafter "*Princeton I*") (prior to 2002 amendment); *Tsai v. Bldgs. by Jamie, Inc. (In re Bldgs. by Jamie)*, 230 B.R. 36, 45 (Bankr. D.N.J. 1998) (same); *Intili v. Di Giorgio*, 300 N.J. Super. 652 (N.J. Super. Ct. Ch. Div. 1997) (same); *Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 277 B.R. 20, 30 (S.D.N.Y. 2002) ("*G-I Holdings II*") (applying New Jersey law —

same); *see also Sasco 1997 Ni v. Zudkewich*, 166 N.J. 579 (N.J. 2001) (referring to the statute as

one of limitations, but not deciding the issue of distinction from a statute of repose).  *Contra G-I*

*Holdings, Inc. v. Those Parties Listed On Exhibit A (In re G-I Holdings, Inc.)*, 313 B.R. 612, 632

(Bankr. D.N.J. 2004) ("*G-I Holdings III*"); *Orr v. Bernstein (In re Bernstein)*, 259 B.R. 555, 558

n.1 (Bankr. D.N.J. 2001).

Here, the Defendants argue in the alternative that: (i) the time to bring an action under the

statute of repose expired pre-petition and therefore the Trustee has no cause of action, or (ii) the one-

year discovery provision applicable to actions pursuant to New Jersey Statutes Annotated section

25:2-25(a) should not be perpetual but instead capped to a reasonable aggregate temporal

limitation.

The New Jersey Supreme Court has held that the four-year timing provision of pre-

amendment New Jersey Statutes Annotated section 25:2-31(a) ran from the date of the alleged

fraudulent transfer due to the clear legislative intent enunciated by use of the word "transfer."  *See*

*Sasco 1997 Ni*, 166 N.J. at 586.   This is equally true of all the timing provisions of New Jersey

Statutes Annotated section 25:2-31 and as to either a "transfer" or "obligation."   Therefore, this

Court holds that the timing provisions of the statute of repose are triggered on the date of the

transfer or obligation at issue.   *See G-I Holdings I*, 2006 U.S. Dist. LEXIS 45510, *12-13

(post-amendment); *Sasco 1997 Ni*, 166 N.J. at 588 (pre-amendment); *Princeton I*, 199 B.R. at

293 (same); *In re Bldgs. by Jamie*, 230 B.R. at 45 (same); *Intili*, 300 N.J. Super. at 661 (same).

It is beyond cavil that the Trustee  may  maintain avoidance actions under the umbrella of

Section 544(b) and pursuant to New Jersey Statutes Annotated sections 25:2-25(a) and (b), as

well  as  New  Jersey  Statutes  Annotated  section  25:2-27(a),  if  the  transfers  occurred  or  the

obligations were incurred in the four years prior to the petition date, namely from November 22, 2001 through November 22, 2005. Equally beyond reproach is the Trustee's ability to prosecute actions under New Jersey Statutes Annotated section 25:2-27(b) if the transfers occurred or the obligations were incurred in the year prior to the petition date, November 22, 2004 through November 22, 2005.

The amendments to New Jersey Statutes Annotated section 25:2-31 became effective in 2002. Pre-amendment, a claimant could benefit from the one-year tolling provision of New Jersey Statutes Annotated section 25:2-25(a) only if the four-year provision had already expired. *See* N.J. STAT. ANN. § 25:2-31(a). In addition, the one-year timeline under the tolling provision began counting when the claimant could reasonable have discovered the fraud. *Id.* A trustee may still only act under the tolling provision once the four-year provision has expired. *See* N.J. STAT. ANN. § 25:2-31. However, the statute as amended alters the tolling provision to provide a one-year limitation upon actual discovery. *See* N.J. STAT. ANN. § 25:2-31(a).

The amendment to New Jersey Statutes Annotated section 25:2-31 was enacted in response to *Sasco 1997 Ni*, in which the New Jersey Supreme Court determined that default was sufficient to trigger the one-year provision, as default is a point at which the fraudulent conveyance was reasonably discoverable. The New Jersey Supreme Court expressly rejected the argument that the one-year provision ran as of the date of a judgment. *Sasco 1997 Ni*, 166 N.J. at 587-88. As evidenced by legislative history, the amended provision:

> provides that the one year of statute of limitations for certain fraudulent transfers runs from the time a creditor actually discovers a fraudulent conveyance, rather than when a creditor 'could reasonably' have discovered the fraudulent conveyance, and thus eliminates the need to conduct unnecessary annual asset searches during the term of every loan that goes into default.

N.J. Leg. 100, 220th Leg., 1st Sess., Ch. 100 (N.J. 2002).

When interpreting a statute, a court's role is to determine legislative intent. *See Sasco 1997 Ni*, 166 N.J. at 586 (quoting *State of N.J., Dept. of Law & Pub. Safety, Div. of Gaming Enforcement v. Gonzalez*, 142 N.J. 618, 627 (N.J. 1995); citing *Roig v. Kelsey*, 135 N.J. 500, 515 (N.J. 1994); *Lesniak v. Budzash*, 133 N.J. 1, 8 (N.J. 1993)).   Statutory language is the best indicator of legislative intent. *See Sasco 1997 Ni*, 166 N.J. at 586 (quoting *Alan J. Cornblatt, P.A. v. Barow*, 153 N.J. 218, 231 (N.J. 1998) (internal citation omitted)); *Med. Soc. of N.J. v. N.J. Dep't of Law & Public Safety, Div. of Consumer Affairs, State Bd. of Physical Therapy*, 120 N.J. 18, 26 (N.J. 1990).   A court should "try to give effect to every word of the statute, and should not assume that the Legislature used meaningless language." *Med. Soc. of N.J.*, 120 N.J. at 26-27 (citing *Gabin v. Skyline Cabana Club*, 54 N.J. 550, 555 (N.J. 1969)).   A statutory reading should not render any portion of the statute superfluous. *See Med. Soc. of N.J.*, 120 N.J. at 27 (citing *Paper Mill Playhouse v. Millburn Twp.*, 95 N.J. 503, 521 (N.J. 1984); *Peper v. Princeton Univ. Bd. of Trs.*, 77 N.J. 55, 68 (N.J. 1978)).   "If the language is plain and clearly reveals the meaning of the statute, the court's sole function is to enforce the statute in accordance with those terms." *Sasco 1997 Ni*, 166 N.J. at 586 (quoting *State of N.J., Dep't of Law & Pub. Safety, Div. of Motor Vehicles v. Bigham*, 119 N.J. 646, 651 (N.J. 1990)).   The "task is to harmonize the individual sections and read the statute in the way that is most consistent with the overall legislative intent." *Id.*

The statutory language of:  "or, if later, within one year after the transfer or obligation was discovered by the claimant," is patently clear.   If the four-year provision has expired, a claimant may still act upon the tolling provision to assert a cause of action within one year of actual discovery of the fraudulent conveyance.   This reading is consistent with the overall

legislative intent.   As reflected in the Assembly Notes, the Legislature made a conscious choice

in eliminating the constructive discovery rule.   *See* N.J. Leg. 100, 220th Leg., 1st Sess., Ch. 100

(N.J. 2002).   Instead, it chose to institute an actual discovery rule.   Therefore, by operation of

New Jersey Statutes Annotated section 25:2-31, a trustee may also bring a claim under New

Jersey Statutes Annotated section 25:2-25(a) if the four-year limitations period expired and one

unsecured creditor exists who first learned of the fraudulent conveyance within the year prior

to the petition date.

Under 11 U.S.C. § 544(b), a trustee succeeds to the rights of an unsecured creditor in

existence at commencement who may avoid the transfer or obligation under state or federal law.

*See G-I Holdings III*, 313 B.R. at 632 (citing 5 COLLIER ON BANKRUPTCY ¶ 544.09[1] (Alan N.

Resnick & Henry J. Sommer eds.,15th ed. rev. 2003); *see also Forman v. Jeffrey Matthews Fin.*

*Grp., LLC (In re Halpert & Co.)*, 254 B.R. 104, 122 (Bankr. D.N.J. 1999) ("Section 544(b) grants

the trustee the same rights as any unsecured creditor to avoid transfers under applicable state law")

(other citation omitted)).   The Trustee's rights pursuant to 11 U.S.C. § 544(b) are derivative of an

actual unsecured creditor and are limited by the rights of avoidance, including applicable

defenses, of the creditor asserting the same on his own behalf.   *See G-I Holdings III*, 313 at 633

(citing *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re*

*Cybergenics Corp.)*, 226 F.3d 237, 243 (3d Cir. 2000), *vacated on other grounds*, 310 F.3d 785 (3d

Cir. 2002); 5 COLLIER ON BANKRUPTCY ¶ 544.09[3] (Alan N. Resnick & Henry J. Sommer eds.,15th

ed. rev. 2003)).

For an avoidance action to accrue, the transfer or obligation must be voidable on the petition

date.   *See In re Bernstein*, 259 B.R. at 558. If an action is timely brought under Section 544, the

temporal limitation on a trustee's exercise of his avoidance powers is expanded by Section 546(a).

*Id.* at 559 (citing *First Union Nat'l Bank v. Gibbons (In re Princeton-N.Y. Investors, Inc.)*, 219 B.R.

55, 64-65 (D.N.J. 1998) ("*Princeton II*")).

> (a)    An action or proceeding under section 544, 545, 547, 548, or
> 553 of this title may not be commenced after the earlier of –
>
>    (1)    the later of —
>
>        (A)    2 years after the entry of the order for relief; or
>        (B)    1 year after the appointment or election of the
>            first trustee under section 702, 1104, 1163,
>            1202, or 1302 of this title if such appointment
>            or such election occurs before the expiration
>            of the period specified in subparagraph (A); or
>
>    (2)    the time the case is closed or dismissed.

11 U.S.C. § 546(a) (2007).

Pursuant to Section 546(a), the Trustee had one year from the date of his appointment, or

until November 23, 2006, to file avoidance actions under Section 544.   However, the Trustee has no

cause of action under Section 544(b), and no extension of time to sue under Section 546(a), if the

creditor in whose place the Trustee stands could not bring a timely action at the commencement of

the Debtor's global bankruptcy proceeding.  *In re Bernstein*, 259 B.R. at 559.  "The [Bankruptcy]

Code does not resurrect a cause of action which did not exist as of the petition date."  *Id.*

"In order to prevail under the § 544(b) avoiding power, a trustee must demonstrate the

existence of an actual creditor holding an allowable unsecured claim who could avoid the challenged

transfer under the applicable state or federal law."  *G-I Holdings III*, 313 B.R. at 632 (citations

omitted).  As an exemplary allegation, "[t]here exists at least one creditor whose claim against the

Debtor arose prior to the date that the Debtor granted the mortgages and incurred the obligations."

Complaint ¶ 52, *Forman v. Nat'l City Mortg. Co. (In re NJ Affordable Homes Corp.)*, No. 06-

2947 (Bankr. D.N.J. Nov. 10, 2006).   Given the Trustee's allegation that an unsecured creditor of

63

the Debtor exists, who did not have knowledge of the mortgage transactions at issue and who

could have filed a timely pre-petition complaint under New Jersey's Uniform Fraudulent

Transfer Act, the Defendants' motions to dismiss are denied insofar as they assert that the

Trustee's actions are untimely, as discussed *supra*.   *See In re Bernstein*, 259 B.R. at 560.

## I.    Preference Counts

The Defendants next argue that the preference counts under Section 547 must be dismissed

due to the Trustee's failure to state rudimentary facts surrounding the transfers.   To this end,

the requirements of pleading under Section 547 have been viewed differently.

> [T]he following information must be included in a complaint to avoid
> preferential transfers in order to survive a motion to dismiss: (a) an
> identification of the nature and amount of each antecedent debt and
> (b) an identification of each alleged preference transfer by (i) date,
> (ii)  name of debtor/transferor, (iii) name of transferee and (iv) the
> amount of the transfer.

*Valley Media v. Borders (In re Valley Media)*, 288 B.R. 189, 192 (Bankr. D. Del. 2003) (citation

omitted); *see TWA Inc. Post Comfirmation Estate v. Marsh USA Inc. (In re TWA Inc. Post

Confirmation Estate)*, 305 B.R. 228, 232-34 (Bankr. D. Del. 2004); *Official Comm. of Unsecured

Creditors v. DVI Bus. Credit, Inc. (In re DVI, Inc.)*, 326 B.R. 301, 311 (Bankr. D. Del. 2005).

Merely reciting the statutory requisites is insufficient.  *See In re Valley Media*, 288 B.R. 189, 192

(Bankr. D. Del. 2003) (citing *Kubick v. FDIC (In re Kubick)*, 171 B.R. 658, 660 (9th Cir.

B.A.P. 1994)).

Other Courts have declined to follow this heightened pleading standard, recognizing the

liberal notice pleading requirements and stating:

> [w]hile  plaintiffs  should  be  encouraged  to  provide  specific
> information in support of their claims whenever possible, to require

them to do so in their initial pleading in all cases, particularly with the specificity demanded by *In re Valley Media*, is in this court's view inappropriate and unnecessarily harsh.

*Official Comm. of Unsecured Creditors of the IT Grp. v. Brandywine Apartments (In re IT Grp., Inc.)*, 313 B.R. 370, 373 (Bankr. D. Del. 2004); *see Neilson v. Cor Karaffa (In re Webvan Grp., Inc.)*, 2004 Bankr. LEXIS 270 (Bankr. D. Del. Mar. 9, 2004); *see also Family Golf Ctrs., Inc. v. Acushnet Co.(In re Randall's Island Family Golf Ctrs., Inc.)*, 290 B.R. 55, 65 (Bankr. S.D.N.Y. 2003).

The pleading of preference actions is governed by Federal Rule of Civil Procedure 8, made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7008. While Rule 7008 does require additional and specific pleading requirements, it does not necessitate a heightened pleading standard for preference actions.   *See* FED. R. BANKR. P. 7008; *Angell v. Ber Care, Inc. (In re Caremerica, Inc.)*, 409 B.R. 737 (Bankr. E.D.N.C. 2009) (recognizing a split in the Delaware bankruptcy courts with respect to the pleading requirements for a preference claim and finding that "the majority of courts which have addressed the pleading requirements for § 547 claims have required something less than the standard implemented in *Valley Media* to survive a 12(b)(6) motion to dismiss."); *In re IT Grp., Inc.*, 313 B.R. at 373 (quoting *In re Randall's Island Family Golf Ctrs., Inc.*, 290 B.R. at 65); *In re Webvan Grp., Inc.*, 2004 Bankr. LEXIS 270, at *7 (citing *see In re Randall's Island Family Golf Ctrs., Inc.*, 290 B.R. at 65).   The fair notice due and owing to the Defendants is easily met without pleading the extensive facts required by *In re Valley Media* and its progeny.   *See In re IT Grp., Inc.*, 313 B.R. at 373 (quoting *In re Randall's Island Family Golf Ctrs., Inc.*, 290 B.R. at 65).

In evaluating the sufficiency of a complaint, this Court concerns itself with the existence of a plausible entitlement to relief. *Twombly*, 550 U.S. 555. The liberal pleading rules are intended to provide a decision upon the merits provided fair notice to the Defendants is provided in the pleadings. *See Wasserman v. Halperin (In re Classica Grp.)*, 2006 Bankr. LEXIS 2599, at *34-35 (Bankr. D.N.J. Sept. 29, 2006) (quoting *Conley*, 355 U.S. at 48 (internal citation omitted)). To hold otherwise would tend to terminate valid claims prematurely to the detriment of creditors. *See In re IT Grp., Inc.*, 313 B.R. at 373 (quoting *In re Randall's Island Family Golf Ctrs., Inc.*, 290 B.R. at 65); *In re Webvan Grp., Inc.*, 2004 Bankr. LEXIS 270, at *7 (citing *In re Randall's Island Family Golf Ctrs., Inc.*, 290 B.R. at 65).

"Too often, debtors fail to maintain complete books and records, or a trustee inherits books and records that he cannot interpret." *In re IT Grp., Inc.*, 313 B.R. at 373 (quoting *In re Randall's Island Family Golf Ctrs., Inc.*, 290 B.R. at 65). This is especially true given the timing constraints for filing preference actions. *See In re Webvan Grp., Inc.*, 2004 Bankr. LEXIS 270, at *8 (footnote omitted). While facts similar to those necessitated by *In re Valley Media* may ultimately be required for a decision on the merits, a lower threshold operates in pleading. *See In re IT Grp., Inc.*, 313 B.R. at 373. This Court is in accord with the rationale set out in *In re IT Grp., Inc.* As a result, no heightened pleading requirement will exist for preference actions under Section 547.

Dismissal under Federal Rule of Civil Procedure 8(a) "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." *In re DVI, Inc.*, 326 B.R. at 306 (quoting *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (citation omitted)). If a court can understand the allegations and determine that they state a claim for relief, the complaint satisfies Rule 8. *Id.*

66

The preference requirements are well known and provided in 11 U.S.C. § 547.

> (b)    Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property —
>
> > (1)    to or for the benefit of a creditor;
> > (2)    for or on account of an antecedent debt owed by the debtor before such transfer was made;
> > (3)    made while the debtor was insolvent;
> > (4)    made —
> >
> > > (A)    on or within 90 days before the date of the filing of the petition; or
> > > (B)    between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> >
> > (5)    that enables such creditor to receive more than such creditor would receive if —
> >
> > > (A)    the case were a case under chapter 7 of this title;
> > > (B)    the transfer had not been made; and
> > > (C)    such creditor received payment of such debt to the extent provided by the provisions of this title.
>
> . . . .
>
> (f)    For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

11 U.S.C. §§ 547(b) and (f) (West 2007).

The Trustee has attempted to unwind the Debtor's extensively commingled and fragmented books and records while meeting the time constraints to file the instant actions. His complaints provide a lengthy recitation of the Debtor's various schemes to defraud. Those various schemes undoubtedly provide fair notice to the Defendants of the gamut of allegations that may be raised

against them.  The allegations are pointed out in the counts of the Trustee's complaints and the complaints additionally narrow the allegations to specific properties.  The Trustee's general factual allegations undoubtedly meet the elements of a preferential transfer allegation under Section 547(b).  He alleges that payments were made to Defendants on account of debts owed prior to the transfer.  These transfers constitute the debt service and maintenance payments made by the Debtor on the mortgage obligations.  These debt service and maintenance payments arose from obligations incurred by the Debtor in, *inter alia*, the mortgage and title scams.  The transfers that fall within these allegations are narrow in that they could only have occurred within the ninety days pre-petition, while the Debtor was presumed insolvent.  In addition, the Receiver was in place from September 12, 2005 through November 22, 2005, the petition date.  Therefore, the temporal range of payments is narrowed further and constitutes only the fifty days prior to the Receiver's appointment.  Finally, the complaints make the requisite allegation that the Defendants received more than they would have through Chapter 7 liquidation, non-transfer, and Title 11 of the United States Code.

The institutional defendants argue that the Trustee failed to allege that they expected payments from the Debtor and not the straw-men used in the title scams.  This allegation is belied by the typical title scam transaction.  The property purchased was owned by the Debtor or one of its affiliates.  The Debtor provided the down payment and costs of acquisition.  The Debtor provided the individual with one of an exclusive list of closing attorneys, who themselves regularly performed service for the Debtor or its affiliates.  The Debtor or its affiliates paid the debt service and related maintenance costs, including taxes and insurance.  The Debtor exchanged payment directly with the institutional lender via a "Special Specific Power of Attorney."  In many cases, the mortgage was executed by an agent of the Debtor, without the investor's

knowledge.  Finally, these transactions took place on repeat occasions and involved only a finite

number of institutional lenders.   These allegations, when accepted as true, more than adequately

create an expectation of payment from the Debtor or one of its affiliates.

### J.    Mortgage Interests

#### 1.    Acknowledgment

The Trustee alleges that all assignments of mortgages not acknowledged before an officer

duly authorized under New Jersey Statutes Annotated § 46:14-6.1 are avoidable as well as recoverable

pursuant to New Jersey Statutes Annotated  § 46:22-1 and Sections 544 and 550(a) of the Bankruptcy

Code.

As a prerequisite to recordation, "[a]ny instrument affecting title to or interest in real estate

or containing any agreement in relation to real estate" must be "acknowledged or proved in the

manner provided by this title."   N.J. STAT. ANN. § 46:15-1.1 (West 2007), *repealed by* Real

Estate – Title Recordation, 2011 N.J. SESS. LAW SERV. CH. 217 § 2 (West) (codified at N.J. STAT.

ANN. § 46:26A-3, effective May 1, 2012).[4]

> i.    To acknowledge a deed or other instrument the maker of the
> instrument shall appear before an officer specified in [N.J.
> STAT. ANN. § 46:14-6.1] and acknowledge that it was
> executed as the maker's own act.  To acknowledge a deed or
> other instrument made on behalf of a corporation or other
> entity, the maker shall appear before an officer specified in
> [N.J. STAT. ANN. § 46:14-6.1] and state that the maker was
> authorized to execute the instrument on behalf of the entity
> and that the maker executed the instrument as the act of the entity.

> . . . .

---

[4] While the statute cited by the Trustee has since been repealed, it remains operative to the current dispute as the
determination to be made by the Court is whether the mortgage interests at issue complied with the operative statutory
requirements at the time of transfer.  *See In re Buchholz*, 224 B.R. 13, 21 (Bankr. D.N.J. 1998) (Recognizing that the
relevant statutory provisions had been appealed, stated that "[t]he prior recording statutes and cases interpreting those
statutes, however, are applicable to documents executed prior to the repeal.

        c.      The officer taking an acknowledgment or proof shall sign a certificate stating that acknowledgment or proof. The certificate shall also state:

        (1)      that the maker or the witness personally appeared before the officer;

        (2)      that the officer was satisfied that the person who made the acknowledgment or proof was the maker of or the witness to the instrument;

        (3)      the jurisdiction in which the acknowledgment or proof was taken;

        (4)      the officer's name and title;

        (5)      the date on which the acknowledgment was taken.

N.J. STAT. ANN. §§ 46:14-2.1(a) and (c).

Every deed or instrument of the nature or description set forth in [N.J. STAT. ANN. § 46:16-1] shall, until duly recorded or lodged for record in the office of the county recording officer in which the affected real estate or other property is situate, be void and of no effect against subsequent judgment creditors without notice, and against all subsequent *bona fide* purchasers and mortgagees for valuable consideration, not having notice thereof, whose deed shall have been first duly recorded or whose mortgage shall have been first duly recorded or registered; but any such deed or instrument shall be valid and operative, although not recorded, except as against such subsequent judgment creditors, purchasers and mortgagees.

N.J. STAT. ANN. § 46:22-1.

New Jersey's recording statute, New Jersey Statutes Annotated section 46:22-1, is a race-notice statute. *See Midlantic Nat'l Bank v. Bridge (In re Bridge)*, 18 F.3d 195, 198 n.1 (3d Cir. 1994); *Lieberman v. Arzee Mid-State Supply Corp.*, 306 N.J. Super. 335, 341 (N.J. Super. Ct. App. Div. 1997). "[I]n order for a subsequent purchaser to have a priority she must achieve a dual status: she must not only take without notice of the prior interest, but she must also put her interest on the record before the holder of the prior interest is able to do so." *In re Bridge*, 18

70

F.3d at 198 n.1 (quoting 6A RICHARD R. POWELL, THE LAW OF REAL PROPERTY

¶ 905[1][iii] (1993)); *see Lieberman*, 306 N.J. Super. at 341.  While an unrecorded transfer of

an interest in real property remains effective against parties in privity, *see Lieberman*, 306 N.J.

Super. at 341 (citing *Tobar Constr. Co.*, 293 N.J. Super. at 413), it is void as to third parties who

record first without actual, constructive, or record notice, *Friendship Manor v. Greiman*, 244 N.J.

Super. 104, 107 (N.J. Super. Ct. App. Div. 1990), *cert. denied*, 126 N.J. 321 (N.J. 1991) (citing

*Scult v. Bergen Valley Builders, Inc.*, 76 N.J. Super. 124, 135 (N.J. Super. Ct. Ch. Div. 1962),

*aff'd,* 82 N.J. Super. 378 (N.J. Super. Ct. App. Div.1964); *see also Palamarg Realty Co. v. Rehac*,

80 N.J. 446 (N.J. 1979).  Third parties are charged with constructive notice of instruments properly

recorded.  *See Cox v. RKA Corp.*, 164 N.J. 487, 496 (N.J. 2000) (citing *Friendship Manor*, 244

N.J. Super. at 108).

Under New Jersey Statutes Annotated section 46:15-12, now repealed, an improper

acknowledgment precluded the recording of a mortgage until cured.  *See In re Buchholz*, 224 B.R.

13, 22 (Bankr. D.N.J. 1998).  While applying New Jersey Statutes Annotated section  46:15-12 to

documents executed prior to its repeal, former Chief Judge William H. Gindin of the United States

Bankruptcy Court for the District of New Jersey noted that:

> [i]n any event, even if the new recording statute was applicable, the
> new recording statute, [N.J. STAT. ANN. § 46:14-2.1], still requires
> the execution of an acknowledgment in the presence of a notary. In
> addition, under the new statute, [N.J. STAT. ANN. § 46:15-1.1], an
> acknowledgment is still a prerequisite to the recording of a mortgage.

*In re Buchholz*, 224 B.R. at 22.

To prevail over certain competing real property interests, a creditor's security interest must

be perfected.  *Id.* at 21 (citing *Partridge v. Mechs.' Nat'l Bank of Burlington*, 77 N.J. Eq. 208, 212

71

(N.J. Super. Ct. Ch. Div. 1910), *aff'd*, 78 N.J. Eq. 297 (N.J. 1911) (proving context)). Prior to acknowledgment, a designated officer must affirm that the acknowledging party is the "identical person named in, and who executed, the instrument." *In re Buchholz*, 224 B.R. at 21 (citing *Smiley v. Hanna*, 94 N.J. Eq. 573, 581 (N.J. Super. Ct. Ch. Div. 1923) (citing *In re H__ C__, Jr.*, 81 N.J. Eq. 8 (N.J. Super. Ct. Ch. Div. 1912))). "A recorded mortgage which contains an acknowledgment which is invalid, is in violation of the New Jersey recording statutes. Accordingly, the lien is not perfected until the mortgage is properly acknowledged (or cured)." *In re Buchholz*, 224 B.R. at 21 (citations omitted).

While such requirements seem formalistic, it is appropriate that "the Recording Act should be strictly construed." *Id.* at 21-22 (citing *N.J. Bank v. Azco Realty Co., Inc.*, 148 N.J. Super. 159 (N.J. Super. Ct. App. Div. 1977)). "'[A]bsent any unusual equity' the stability of titles and conveyancing requires the judiciary to follow that course 'that will best support and maintain the integrity of the recording system.'" *Cox*, 164 N.J. at 497 (quoting *Friendship Manor, Inc.*, 244 N.J. Super. at 113 (quoting *Palamarg Realty Co.*, 80 N.J. at 453)). Here, no unusual equity has been asserted. A rule of strict compliance promotes transparency and confidence in record title, ordained by the prerequisites to and requirements of proper recording. "Accordingly, a mortgage which has been inadvertently recorded with a defective acknowledgment does not serve as notice to a subsequent purchaser or encumbrancer and does not provide constructive notice of the security interest." *In re Buchholz*, 224 B.R. at 22 (citing *Longley v. Sperry*, 72 N.J. Eq. 537 (N.J. Super. Ct. Ch. Div. 1907); *N.J. Bank*, 148 N.J. Super. at 163 (other citation omitted)).

As of commencement, a trustee in bankruptcy has the rights and powers of, or may avoid a transfer of a debtor's interest in property as well as an obligation incurred by a debtor voidable by, a hypothetical *bona fide* purchaser of real property for value holding a perfected interest. *See*

72

11 U.S.C. § 544(a)(3) (2007).  Section 550(a) permits a trustee to recover a transfer avoided

under Section 544 for the benefit of the bankruptcy estate.  Here, the Trustee might be able to

prove that a *bona fide* purchaser, who had no notice of the assignments at issue, could have filed a

timely pre- petition action.  *See also Logan v. Citifinancial, Inc. (In re Stewart)*, 256 B.R. 259, 262

(Bankr. S.D. Ohio 2000); *Lichtenstein v. MBNA Am. Bank, N.A. (In re Computer Personalities*

*Sys.)*, 284 B.R. 415, 420 (Bankr. E.D. Pa. 2002) (Section 544(a)(1) context).

Therefore, this Court cannot say as a matter of law that the Trustee may not avoid the

assignments of mortgages made or recorded without proper acknowledgment.

## 2.      Failure to Perfect

In a similar vein, the Trustee alleges that the promissory notes secured by mortgages, the

mortgages themselves, and assignments of mortgages are unenforceable in a count entitled

"Avoidance of Mortgages and Assignments — Failure to Perfect."    Complaint ¶¶ 90-95,

*Forman v. Chaudhuri* (*In re NJ Affordable Homes Corp.*), No. 06-2740 (Bankr. D.N.J. Sept. 27,

2006)..  The substance of the count asserts that: (i) the mortgages, assignments and obligations

qualify as securities; (ii) the original mortgages as well as promissory notes were not delivered

to the Defendants and the original assignments were not delivered to assignees; and (iii) the

Trustee may avoid and recover the mortgages and assignments thereof under New Jersey Statutes

Annotated 12A:9-312(a) and 12A:9-313(a) and other relevant law.  *Id.* ¶¶ 91-95.   The

Defendants argue that this count must be dismissed as "[t]he secured transaction portions of the

[New Jersey] Uniform Commercial Code are inapplicable to perfection of mortgage interests in real

property." Mot. to Dismiss at 16, *Forman v. Calderone* (*In re NJ Affordable Homes Corp.*), No.

06-2594 (Bankr. D.N.J. Nov. 30, 2006).

As previously stated by this Court:

> The Federal Rules of Civil Procedure reject the notion that pleading
> is a technical skill where one misstep by counsel can prove fatal.
> *Conley*, 355 U.S. at 48 (internal citation omitted).  Instead, pleading
> merely facilitates proper decision upon the merits of claims.  *Id.*  To
> achieve this goal, a theme of liberality permeates the application of
> the rules.  *Lundy v. Adamar of N.J.*, 34 F.3d 1173, 1186 (3d Cir.
> 1994).  It would seem to this Court that the essence of pleading
> relates to the factual and substantive allegations asserted in the claim
> itself.  Therefore, this Court will give greater weight to the substance
> of the counts . . . .

*Wasserman v. Halperin (In re Classica Grp.)*, 2006 Bankr. LEXIS 2599, at *27 (Bankr. D.N.J.

Sept. 29, 2006).  The guidepost of notice pleading is that "[a]ll pleadings shall be so construed as

to do substantial justice."  FED. R. CIV. P. 8(f).

Despite the Trustee's reference to the mortgages, assignments and obligations as securities

under various statutes, this Court has no doubt that the substantive allegation of failure to perfect

under the New Jersey Uniform Commercial Code (hereinafter "NJUCC") due to improper delivery,

provided the Defendants fair notice of the basis for the claim.  *See Conley*, 455 U.S. at 48.  As

support for this determination, this Court points to four paragraphs within the count that

reference either improper delivery, failure to perfect, or the NJUCC statutory provisions relevant to

both.  *See* Complaint ¶¶ 92-95, *Forman v. Chaudhuri (In re NJ Affordable Homes Corp.)*, No.

06-2740 (Bankr. D.N.J. Sept. 27, 2006).  Within those paragraphs, the Trustee points out the

specific NJUCC provisions dealing with priority for failure to perfect due to lack of delivery or

possession, NEW JERSEY STATUTES ANNOTATED sections 12A:9-312(a) and 12A:9-313(a).  *Id.*

¶ 95.  Additional evidence is found in the Defendants' own motions to dismiss, in which

they argue specifically that New Jersey Statutes Annotated sections 12A:9-312(a) and 12A:9-

313(a) are inapplicable to the transactions at issue.  Mot. to Dismiss at 16-17, *Forman v.*

*Calderone* (*In re NJ Affordable Homes Corp.*), No. 06-2594 (Bankr. D.N.J. Nov. 30, 2006).; (Br.

Supp. Mot. Dismiss of Irrevocable Trust FBO Goldie Keitz, Beverly Keitz, Stuart Keitz and Lois

S. Perlman and the Estate of Marvin Hyman and the Marvin Hyman Defined Benefit Plan at 15,

Dec. 21, 2006, ECF No. 1793).

The issue is whether the Trustee has set forth a valid claim for avoidance and turnover

grounded in failure to perfect due to improper delivery.   The Trustee argues that failure to deliver

the original promissory notes, secured by the mortgages, and assignments, as required by the

NJUCC, renders the mortgage interests unenforceable.  Two Opinions rendered by Judge Stripp

of the United States Bankruptcy Court for the District of New Jersey are instructive.

In his earlier opinion, Judge Stripp was presented with a motion to avoid liens on real

property asserted by a creditor, William Kander, on two promissory notes in the possession of the

debtors, to preserve the liens for the benefit of the bankruptcy estate, and to declare Mr. Kander's

claim unsecured.[5]   *See generally In re Investors & Lenders, Ltd.*, 156 B.R. 145 (Bankr. D.N.J. 1993)

(substantively consolidated) (hereinafter "*In re Investors & Lenders, Ltd. I*").   In 1989, Mr.

Kander made a loan in the amount of $94,000 to one of the debtors, secured by

assignments of two mortgages held by another debtor against real property.   *Id.* at 148.   While

Mr. Kander received the assignment of mortgages, he never came into possession of the original

promissory notes secured by the mortgages.   *Id.*   He was in possession of copies of the promissory

notes, however.  *Id.* Despite his failure to obtain possession of the original promissory

notes, Mr. Kander recorded the assignments.   *Id.*

---

[5] While the moving party in both of Judge Stripp's Opinions was the official committee of unsecured creditors on
behalf of the debtors-in-possession, this fact fails to distinguish the Opinions from the case at bar.  It is incontrovertible
that a trustee in bankruptcy possesses all the rights afforded to a debtor-in-possession under Section 1107(a).

> Perfection of a security interest is governed by state law. *In re Bristol Assocs., Inc.*, 505 F.2d 1056, 1059 (3d Cir. 1974). A promissory note is an 'instrument' as defined by the New Jersey Uniform Commercial Code. [N.J. STAT. ANN.] §§ 12A:9-105(1)(g) and 12A:3-104(2)(d) [(West 1993)]; *First Nat'l Bank of Boston v. Larson (In re Kennedy Mortgage Co.)*, 17 B.R. 957, 963 (Bankr. D.N.J. 1982). With exceptions not pertinent here, a security interest in instruments can be perfected only by the secured party's taking possession. [N.J. STAT. ANN.] § 12A:9-304(1) [(West 1993)]. Therefore, a security interest in a promissory note can only be perfected by taking possession of the note. *Sec. & Exch. Comm'n v. Elliot*, 953 F.2d 1560, 1580 (11th Cir. 1992); *Starr v. Bruce Farley Corp. (In re Bruce Farley Corp.)*, 612 F.2d 1197, 1199 (9th Cir. 1980); *In re Kennedy Mortgage Co.*, 17 B.R. at 963. An assignment of a mortgage without a transfer of possession of the underlying note does not perfect a security interest in the note. *Elliott*, 953 F.2d at 1581; *In re Kennedy Mortgage Co.*, 17 B.R. at 965. It follows that Kander's recordation of the assignments to him of the subject mortgages without possession of the notes did not perfect a security interest in the notes.

*In re Investors & Lenders, Ltd. I*, 156 B.R. at 148.

Possession of copies of the notes was insufficient to perfect Kander's interest because the debtor in possession of the notes could have subsequently transferred them a second time and "[s]uch transferee would not have notice of Kander's alleged security interest in the notes because only actual possession provides such notice." *Id.* (citing *Huffman v. Wikle (In re Staff Mortg. & Inv. Corp.)*, 550 F.2d 1228, 1231 (9th Cir. 1977)).

As Mr. Kander's security interest in the promissory notes was not properly perfected, the interest was avoidable pursuant to Sections 544(a)(1) and 544(a)(2) and the avoided liens were preserved for the benefit of the estate under Section 551. *In re Investors & Lenders, Ltd. I*, 156 B.R. at 147-48 (citing *In re Blease*, 605 F.2d 97, 99 (3d Cir. 1979) (avoidance); *Kellman v. Palese (In re Italiano)*, 66 B.R. 468, 478 (Bankr. D.N.J. 1986) (same).

Judge Stripp then extended his previous opinion to non-negotiable instruments under Article 9 of the NJUCC only one year later.    *See Official Comm. of Unsecured Creditors of Investors & Lenders, Ltd. v. Field* (hereinafter "*In re Investors & Lenders, Ltd.*"), 165 B.R. 389 (Bankr. D.N.J. 1994) (*In re Investors & Lenders, Ltd. II*).    Before the Court were cross-motions for summary judgment in an adversary proceeding seeking to avoid, and preserve for the benefit of the estate, liens allegedly held by claimants designated as Class 9 in the confirmed Chapter 11 plan.    *Id.* at 391-92.    The named defendants also made loans to one debtor and received assignments of mortgages held by another debtor as to real property.    *Id.* at 392.    The assignee defendants had, again, recorded the assignments of mortgages but had never received possession of the original underlying notes.    *Id.*    The defendants attempted to distinguish Judge Stripp's previous decision, claiming that it did not apply to non-negotiable notes.    *Id.* at 393.

Judge Stripp first determined the applicability of the NJUCC to non-negotiable notes secured by an interest in real property.

> In this case, the defendants took a security interest in the secured obligation, namely the notes, and although the notes were secured by real property to which Chapter 9 does not apply, the defendants' security interest is in the notes themselves and, therefore, Chapter 9 applies. *See In re Bristol Assocs., Inc.*, 505 F.2d at 1064 n.3.

*In re Investors & Lenders, Ltd. II*, 165 B.R. at 94.

He then opined that non-negotiable notes were within the statutory definition of "instrument,"[6] set forth in New Jersey Statutes Annotated section 12A:9-105(1)(i) (West Supp. 1993).    *Id.*    Namely, the notes constituted "any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary

---

[6] Here, the parties do not address, and this Court will not confront, whether the notes constitute general intangibles as defined in N.J. STAT. ANN. § 12A:9-102(a)(42) (West 2007).

course of business transferred by delivery with any necessary indorsement or assignment."   *Id.*

As such, they were required to be perfected by possession as no explicit statutory exception listed

in New Jersey Statutes Annotated section 12A:9-304 (West Supp. 1993) applied.   *Id.* at 396-97.

Judge Stripp held that the security interests were properly avoided and preserved for the

benefit of the estate pursuant to Sections 544 and 551 of the Bankruptcy Code.   *Id.* at 397.

This conclusion stemmed from a bankruptcy trustee's position as a lien creditor, with rights

superior to those holding an unperfected security interest, as of the petition date.   *Id.*

Upon comparative review, the NJUCC provisions relied upon by Judge Stripp have

undergone no substantive amendment since his Opinions in *In re Investors & Lenders, Ltd.*[7]   As

additional support, Judge Stripp's earlier Opinion is cited in two relevant NJUCC provisions.   *See*

---

[7] The following is a listing of the provisions relied upon by Judge Stripp in both *In re Investors & Lenders, Ltd.*
opinions as compared to the NJUCC provisions as they provided at the time relevant to these transactions.

    a.    *Compare* N.J. STAT. ANN. § 12A:1-201(20) (West 1993), *with* N.J. STAT.
ANN. § 12A:1-201(20) (West 2007) (not permitting the finding of Judge
Stripp that the debtor, in possession of the note payable to an identified
person, is a "holder," but reaffirming the only aspect necessary for Judge
Stripp's decision, i.e. that if the note is in the possession of the debtor, the
creditor cannot be a holder).

    b.    *Compare* N.J. STAT. ANN. § 12A:3-104(2)(d) (West 1993), *with* N.J.
STAT. ANN. §§ 12A:3-104(e), *and* (j) (West 2007) (The interplay of
subsections e and j evidence that "[a]n instrument is a 'note' if it is a
promise" separate and apart from a certificate of deposit, which poses
additional requirements and constitutes "a note of the bank." While
subsection (b) of this provision states that an "[i]nstrument means a
negotiable instrument" for purposes of Article 3, this Court's Opinion
deals only in Article 9.  In addition, as the parties have neither placed the
promissory notes before the Court nor argued that the security interests
are non-negotiable, this Court cannot make a determination as to whether
the restrictive language alters Judge Stripp's Opinion in *In re Investors &
Lenders, Ltd. II*.).

    c.    *Compare* N.J. STAT. ANN. § 12A:3-201(1) (West 1993), *with* N.J. STAT.
ANN. §§ 12A:3-203(b) and 12A:3-306 (West 2007).

    d.    *Compare* N.J. STAT. ANN. § 12A:3-202(1) (West 1993), *with* N.J. STAT.
ANN. § 12A:3-201(a) (West 2007) (with the exception of a transfer from
an issuer).

    e.    *Compare* N.J. STAT. ANN. § 12A:3-301 (West 1993), *with* N.J. STAT.
ANN. § 12A:3-201 (West 2007).

    f.    *Compare* N.J. STAT. ANN. § 12A:9-102(1)(a) (West Supp. 1993), *with*
N.J. STAT. ANN. § 12A:9-109(a) (West 2007).

N.J. Stat. Ann. § 12A:3-104 (West 2007) (citing *In re Investors & Lenders, Ltd. I*, 156 B.R. at 145); N.J. Stat. Ann. § 12A:9-102 (West 2007) (citing *In re Investors & Lenders, Ltd. I*, 156 B.R. at 145).

Here, the Trustee cites the relevant provisions of the NJUCC dealing with priority for failure to perfect on the basis of lack of delivery and possession, New Jersey Statutes Annotated sections 12A:9-312(a) and 12A:9-313(a) (West 2007).   As recounted above, assuming away the possibility of perfection by filing, the lack of delivery can constitute a failure to perfect avoidable pursuant to Section 544(a)(1).   The transfer avoided is automatically preserved for the benefit of the estate to the extent it consists of property of the estate under Section 551, and is recoverable by a trustee pursuant to Section 550.   Therefore, the Trustee has stated a viable cause of action under the NJUCC.

---

g.     *Compare* N.J. Stat. Ann. § 12A:9-102(3) (West Supp. 1993), *with* N.J. Stat. Ann. § 12A:9-109(b) (West 2007).

h.     *Compare* N.J. Stat. Ann. § 12A:9-104 (West Supp. 1993), *with* N.J. Stat. Ann. § 12A:9-109(c) (West 2007).

i.     *Compare* N.J. Stat. Ann. § 12A:9-105(1)(i) (West 1993), *with* N.J. Stat. Ann. § 12A:9-105(1)(i) (West Supp. 1993), *with* N.J. Stat. Ann. § 12A:9- 102(a)(47) (West 2007).

j.     *Compare* N.J. Stat. Ann. § 12A:9-301(1)(b) (West Supp. 1993), *with* N.J. Stat. Ann. § 12A:9-102(a)(52) (West 2007).

k.     *Compare* N.J. Stat. Ann. § 12A:9-301(3) (West Supp. 1993), *with* N.J. Stat. Ann. § 12A:9-317(a)(2) (West 2007).

l.     *Compare* N.J. Stat. Ann. § 12A:9-304(1) (West 1993), *with* N.J. Stat. Ann. § 12A:9-304(1) (West Supp. 1993), *and* N.J. Stat. Ann. §§ 12A:9- 313(a) (West 2007) (perfection by possession for negotiable documents), 12A:9-312(a) (West 2007) (perfection by filing also permitted for negotiable documents and instruments).

m.    *Compare* N.J. Stat. Ann. §§ 12A:9-304(4) and (5) (West 1993), *with* N.J. Stat. Ann. §§ 12A:9-304(4) and (5) (West Supp. 1993), *with* N.J. Stat. Ann. §§ 12A:9-312(e-g) (West 2007).

n.     *Compare* N.J. Stat. Ann. § 12A:9-308(a) (West Supp. 1993), *with* N.J. Stat. Ann. § 12A:9-330(d) (West 2007) (additional good faith requirement).

o.     *Compare* 11 U.S.C. § 544(a)(1) (1993), *with* 11 U.S.C. § 544(a)(1) (1994), *with* 11 U.S.C. § 544(a)(1) (2007).

p.     *Compare* 11 U.S.C. § 544(a)(2) (1993), *with* 11 U.S.C. § 544(a)(2) (2007).

q.     *Compare* 11 U.S.C. § 551 (1993), *with* 11 U .S.C. § 551 (1994), *with* 11 U.S.C. § 551 (2007).

### 3.    Fractional Mortgages

In a count entitled "Declaratory Judgment on Fractional Mortgages," the Trustee asks this Court to find that fractional mortgage interest holders are not permitted to enforce the mortgages or their attendant obligations against the properties at issue under state law.

The Trustee relies on the following facts in support.   During its operation, the Debtor granted multiple mortgages on a single property to various investors, creating fractional mortgage interests.  Despite entering into a consent order to comply with New Jersey's securities laws and not to engage in any act which operates as a scheme to deceive or defraud, the Debtor continued to sell unregistered securities in a fraudulent manner.   Holders of fractional mortgage interests purportedly assigned their mortgage interests to other investors.   However, none of the fractional holders assigned their interest in the underlying promissory notes and those notes were never delivered to the assignees.   Instead, mortgage interests were satisfied by payment or account adjustments.  No discharge of mortgage interests evidencing satisfaction was executed.

The Trustee argues that the fractional mortgage count survives a motion to dismiss in any one of three scenarios.   First, as the underlying notes were satisfied, there exists no debt to the assignor secured by the alleged mortgage interest, rendering the mortgage unenforceable.   (Br. Chapter 7 Trustee Opp'n Mots. Dismiss at 52-53,  Jan. 12, 2007, ECF No. 2126).   Second, the mortgage interests are void because the assignment of a mortgage interest is invalid without the assignment of the attendant note.   *Id.* at 53.   Third, as discussed *supra*, failure to receive delivery of the original promissory notes renders the mortgage interests invalid.  *Id.*

While the Trustee's three theories might be legally operable, he overlooks the more basic defect of failure to meet the requirements of notice pleading.   The count at issue is only

80

three sentences long, each sentence split into a separate numbered paragraph.    In the first

paragraph, the Trustee incorporates the allegations of all previous paragraphs in the complaint.

In the remaining two paragraphs, the Trustee then states that "[t]he Fractional Interest Holders are

not authorized by law to enforce the mortgages or the obligations.    The mortgages are

unenforceable against the property and the Trustee under applicable state law."   Complaint ¶¶

123-25, *Forman v. Chaudhuri* (*In re NJ Affordable Homes Corp.*), No. 06-2740 (Bankr. D.N.J.

Sept. 27, 2006).

A plaintiff need not plead facts in excess of those necessary to notify a defendant of the

"general factual background of a plaintiff's claims."   *Stanziale v. Nachtomi (In re Tower Air,*

*Inc.)*, 416 F.3d 229, 237 (3d Cir. 2005).   The notice pleading standard is recited in Federal Rule

of Civil Procedure 8(a), made applicable to adversary proceedings pursuant to Federal Rule of

Bankruptcy Procedure 7008.

The "short and plain statement of the claim showing that the pleader is entitled to relief,"

FED. R. CIV. P. 8(a), and evidence in support must provide "enough notice to a trial court of

whatever theory underlies the action" *In re Linda Coal & Supply Co.*, 255 F.2d 653, 657 (3d Cir.

1958).   The hallmark of notice required by due process of law is that"reasonably calculated, under

all the circumstances, to . . . afford (interested parties) an opportunity to present their objections."

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed.

865 (1950).   While the reasons for holding a litigant to his announced theories becomes more

compelling as litigation advances, *id.*, the required statement of a legal theory of relief is not

obviated, *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004) (analyzing the rubric of

notice pleading in the context of relation-back).   Despite the imprecision permitted by notice

pleading, the plaintiff must "give the defendant fair notice of what the plaintiff's claim is and the

81

grounds upon which it rests." *TWA Inc. Post Confirmation Estate v. Marsh USA Inc. (In re TWA Inc. Post Confirmation Estate)*, 305 B.R. 228, 232 (Bankr. D. Del. 2004) (quoting *Conley*, 355 U.S. at 47); *see Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 124 (3d Cir. 1998) ("[P]laintiff[s] generally need not explicitly allege the existence of every element in a cause of action if fair notice of the transaction is given and the complaint sets forth the material points necessary to sustain recovery.").

While not stated directly, the three factual scenarios illustrated in support of this count in the Trustee's opposition are each described within the statement of facts of each complaint. Those facts are then incorporated into the fractional mortgage count.   The Trustee argues either that satisfaction of the underlying note renders the mortgage interest unenforceable or that failure to assign the underlying note renders the assigned mortgage interest unenforceable.   Upon review of the Trustee's complaints, these two factual allegations are able to operate within the instant count.

A "mortgage is merely security for the debt and without a subsisting debt or obligation, the mortgage has no efficacy.   Thus, when the underlying obligation fails, the mortgage becomes a nullity." *Great Falls Bank v. Pardo*, 263 N.J. Super. 388, 397 (N.J. Super. Ct. Ch. Div. 1993), *aff'd*, 273 N.J. Super. 542 (N.J. Super. Ct. App. Div. 1994) (citing *Grennon v. Kramer*, 162 A. 758, 759-60 (N.J. 1932); *Mardirossian v. Wilder*, 76 N.J. Super. 37, 40 (N.J. Super. Ct. Ch. Div.1962).   Assuming that the obligations and, therefore, the underlying promissory notes were satisfied in full, the mortgages are unenforceable.   Any assignment of an inoperative interest is equally unenforceable.

The assignment of a mortgage, without assignment of the promissory note secured thereunder, confers no rights upon the assignee.  *In re Kemp*, 440 B.R. 624, 632-33 (Bankr. D.N.J. 2010); *Johnson v. Clarke*, 28 A. 558, 559 (N.J. Super. Ct. Ch. Div. 1894) (citing *Stevenson v. Black*, 1 N.J. Eq. 338 (N.J. Super. Ct. Ch. Div. 1831)).  To permit such a fracture of the mortgage and underlying note would be to subject the mortgagor to two prosecutions for the identical debt. *See Kemp*, 440 B.R. at 633; *Johnson*, 28 A. at 559.  Taking for true that mortgages were assigned without the attendant assignment of the underlying note, an assignee has no legal rights to enforce either the note or the mortgage interest.

As these two theories correlate to viable causes of action sufficient to survive a motion to dismiss and the Defendants were on notice of the underlying factual allegations in the Complaint, the Court finds that these counts shall not be dismissed pursuant to 12(b)(6).  The Trustee's third theory, that failure to deliver the underlying note renders the mortgage unenforceable, must be dismissed, however.  As previously discussed, this allegation is incorporated in the Trustee's failure to perfect count.  Therefore, its application here is duplicative.

### 4.    Proof of Liens

A typical proof of lien count of the Trustee's complaints states that:

> [t]he Defendants bear the burden to prove the validity, extent and priority of the Mortgages, Obligations and the Assignments. In the event the Defendants fail to prove the extent, validity and priority of the Mortgages, Obligations or Assignments, the Mortgages, Obligations and Assignments are unenforceable in whole or in part against the Property, the Trustee and the estate.

Complaint ¶¶ 127-128, *Forman v. Chaudhuri* (*In re NJ Affordable Homes Corp.*), No. 06-2740

(Bankr. D.N.J. Sept. 27, 2006).

The Defendants argue that the burden of proof may not be allocated to them under Federal

Rule of Civil Procedure 26, made applicable in adversary proceedings pursuant to Federal

Rule of Bankruptcy Procedure 7026.    Discovery Rule 7026 requires that all parties provide their

adversaries with evidence of both their own as well as their adversary's claims and defenses.    The

Defendants argue that because the Trustee must provide any evidence in his control during

discovery to prove the Defendants' liens, to the extent that the Defendants do not possess any,

the proof of lien counts must be dismissed.

The defect of this argument is clear.   The Trustee is not attempting to "play 'hide the ball'

with any evidence related to the liens in question."  (Br. Supp. Mot. Dismiss of Irrevocable Trust

FBO Goldie Keitz, Beverly Keitz, Stuart Keitz and Lois S. Perlman and the Estate of Marvin

Hyman and the Marvin Hyman Defined Benefit Plan at 16,  Dec. 21, 2006, ECF No. 1793).   The

Trustee's allegation is not linked to discovery.    The Trustee only seeks to require the Defendants

to carry the burden of proof of the validity, extent, and priority of their purported liens as

opposed to his disproving the same.

As stated in the case cited to by the Defendants, dismissal under Federal Rule of Civil

Procedure 8(a) "is usually reserved for those cases in which the complaint is so confused,

ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised."  *In

re DVI, Inc.*, 326 B.R. at 306 (quoting *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (internal

citation omitted)).  If a court can understand the allegations and determine that they state a claim

for relief, the complaint satisfies Rule 8.    *Id.*

The general thrust of the Trustee's complaints is the resolution of all claims and avoidance of any and all alleged liens against the properties in order to promote equitable distribution. It is dubious to think that not a single creditor with a valid, secured mortgage exists. This is especially true given the number of Defendants. In addition, the Trustee's complaints preempt the ability of the alleged liens to pass through the bankruptcy and retain validity as an *in rem* action post-discharge.[8]  *See Reed v. S&T Bank (In re Reed)*, 274 B.R. 155, 158 (Bankr. W.D. Pa. 2002). From this understanding, it is evident that the Trustee would seek to plead in the alternative in order to confront the liens for which no proof of claim would be filed, and to bifurcate claims to be filed as secured or unsecured. Pleading in the alternative is expressly permitted in Federal Rule of Civil Procedure 8(d)(2) and its corollary applicable here, Federal Rule of Bankruptcy Procedure 7008. Therefore, the Court will treat this count as a request for determination of secured status pursuant to 11 U.S.C. § 506.  *See generally Allegheny-Ludlum Brackenridge Fed. Credit Union v. Fassinger (In re Fassinger)*, 246 B.R. 513, 520 (Bankr. W.D. Pa. 2000).

For Section 506(a) to be applicable, a claim must be "allowed." Section 502(a) provides that a filed claim is deemed allowed unless a party of objects.  *See In re Fassinger*, 246 B.R. at 520 (applying the Section 502 burden-shifting analysis to a Section 506 action involving personalty). From this requirement, case law has construed a presumption of *prima facie* validity

---

[8]  The discharge debtor received in connection with his personal liability in connection with the mortgage did not adversely affect [the] mortgage lien against debtors' personal residence. *See Dewsnup v. Timm*, 502 U.S. 410, 418 (1992) (citing *Farrey v. Sanderfoot*, 500 U.S. 291, 297 (1991) ("Ordinarily, liens and other secured interests survive bankruptcy"); *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) ("Rather, a bankruptcy discharge extinguishes only one mode of enforcing a claim — namely, an action against the debtor *in personam* — while leaving intact another — namely, an action against the debtor *in rem*"). Its right to foreclose on the mortgage lien survived and passed through bankruptcy unaffected. *Owen v. Owen*, 500 U.S. 305, 308-09 (1991) (superseded by statute on other grounds) (citing *Long v. Bullard*, 117 U.S. 617 (1886)). Moreover, the mortgage lien remained a vehicle for bringing an *in rem* action involving debtor. *Johnson*, 501 U.S. at 84 ("[T]here can be no doubt that the surviving mortgage interest corresponds to an 'enforceable obligation' of the debtor.") *In re Reed*, 274 B.R. at 158 (internal citations added).

of a properly filed claim.    *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992).

Once an objection is filed, a claim may be disallowed for any reason stated in Section 502.

The burden-shifting framework set forth in *In re Allegheny Int'l, Inc* governs the determination

of allowance versus disallowance of a claim.    *See In re Fassinger*, 246 B.R. at 520.

> The burden of proof for claims brought in the bankruptcy court under
> 11 U.S.C. § 502(a) rests on different parties at different times.
> Initially, the claimant must allege facts sufficient to support the claim.
> If the averments in his filed claim meet this standard of sufficiency,
> it is '*prima facie*' valid. *In re Holm*, 931 F.2d 620, 623 (9th Cir.
> 1991) (quoting 3 L. King, COLLIER ON BANKRUPTCY § 502.02, at
> 502-22 (15th ed. 1991)).  In other words, a claim that alleges facts
> sufficient to support a legal liability to the claimant satisfies the
> claimant's initial obligation to go forward.  The burden of going
> forward then shifts to the objector to produce evidence sufficient
> to negate the *prima facie* validity of the filed claim.  It is often said
> that the objector must produce evidence equal in force to the *prima
> facie* case. *Id.*; *see In re Windsor Communications Grp., Inc.*, 45 B.R.
> 770, 773 (Bankr. E.D. Pa. 1985). In practice, the objector must
> produce evidence which, if believed, would refute at least one of the
> allegations that is essential to the claim's legal sufficiency. If the
> objector produces sufficient evidence to negate one or more of the
> sworn facts in the proof of claim, the burden reverts to the claimant
> to prove the validity of the claim by a preponderance of the
> evidence. *See In re WHET, Inc.*, 33 B.R. 424, 437 (Bankr. D.
> Mass. 1983). The burden of persuasion is always on the claimant.
> *Holm*, 931 F.2d at 623 (quoting 3 COLLIER ON BANKRUPTCY
> § 502.02 at 502.22); *Windsor Communications*, 45 B.R. at 773.

*In re Allegheny Int'l, Inc.*, 954 F.2d at 174.  (emphasis added)

The Trustee's complaint seeks to allocate to the Defendants the burden of "proof."

The burden of proof and the burden of persuasion are synonymous.  *See Dir., Office of*

*Worker's Comp. Programs, Dept. Of Labor v. Greenwich Collieries*, 512 U.S. 267, 275

(1994) (citations omitted); *Hill v. Smith*, 260 U.S. 592, 594 (1923).  As made clear in *In re*

*Allegheny Int'l, Inc.*, the burden of persuasion, also the burden of proof as defined by the United

States Supreme Court, is held by the proponent of the lien at all times.  *In re Allegheny Int'l,*

*Inc.*, 954 F.2d at 174 (claiming that the burden of proof is upon different parties at different times, but recognizing that the burden of persuasion is always upon the proponent of the lien). Because these terms are synonymous, the Trustee could have properly cited either the burden of proof or persuasion.   Therefore, this Court will read the burden shifting analysis of *In re Allegheny Int'l, Inc.* into the proof of lien count.   *See In re Fassinger*, 246 B.R. at 520 (citing *In re Robertson*, 135 B.R. at 352 (citations omitted).

As discussed in this Opinion on numerous occasions, the Trustee's allegations, when accepted as true, are more than sufficient to overcome the presumptive validity of a claim, as well as relegate it to unsecured status or disallow it completely.   Therefore, the Trustee has stated a cause of action sufficient to overcome a motion to dismiss.


**K.      Equitable Subordination**

It is well-settled that a Bankruptcy Court, as a court of equity, may subordinate claims on equitable grounds.   *Pepper v. Litton*, 308 U.S. 295, 307-08 (1939) (bankruptcy courts have the equitable power "to sift the circumstances surrounding any claim to see that injustice is not done in the administration of the bankrupt estate").

Section 510(c) is a codification of the doctrine of equitable subordination enunciated in *Pepper*, *Ansel Props. v. Nutri/System Assocs. (In re Nutri/System Assocs.)*, 178 B.R. 645, 656 (E.D. Pa. 1995), and states that a court may:

> (1)      under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or
>
> (2)      order that any lien securing such a subordinated claim be transferred to the estate.

*Id.*

87

Because equitable subordination is an extraordinary departure from the usual scheme of distribution and equality of distribution principles in bankruptcy, it is a remedy to be granted only in extraordinary circumstances.    *See Waslow v. MNC Commercial Corp. (In re Paolella)*, 161 B.R. 107, 117, 122 (E.D. Pa. 1993).  As stated in the seminal case of *In re Mobile Steel Co.*, in order to equitably subordinate a claim:

> (i)    The claimant must have engaged in some type of inequitable conduct.
>
> (ii)   The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant.
>
> (iii)  Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act.

*In re Paolella*, 161 B.R. at 117 (quoting *In re Mobile Steel Co.*, 563 F.2d 692, 700 (5th Cir. 1977)) (citations omitted); *see, e.g., In re Missionary Baptist Found.*, 818 F.2d 1135, 1143 (5th Cir. 1987) ("This formula was not a novel statement but rather, was arrived at through a 'distillation of case law.'") (citation omitted); 4 COLLIER ON BANKRUPTCY ¶ 510.05 (Alan N. Resnick & Henry J. Sommer eds.,15th ed. rev.).

Although the *Mobile Steel* test is generally accepted, courts struggle to define conduct that constitutes grounds for equitable subordination.  Types of inequitable conduct sufficient for equitable subordination of insider's claims include: (1) fraud, illegality, or breach of fiduciary duty; (2) undercapitalization; or (3) the claimant's use of the debtor as an instrumentality or alter ego.  *See In re Paolella*, 161 B.R. at 117 (citations omitted); *In re Fabricators, Inc.*, 926 F.2d 1458, 1467 (5th Cir. 1991) (citing *In re Missionary Baptist Found., Inc.*, 712 F.2d 206, 212 (5th Cir. 1983)).   The inequitable conduct need not relate to the assertion or acquisition of the claim.   *In re Mobile Steel Co.*, 563 F.2d at 700.

88

In determining whether these conditions have been satisfied, certain principles govern. "The first is that inequitable conduct directed against the bankrupt or its creditors may be sufficient to warrant subordination of a claim irrespective of whether it was related to the acquisition or assertion of that claim." *Id.* "The second principle is that a claim or claims should be subordinated only to the extent necessary to offset the harm which the bankrupt and its creditors suffered on account of the inequitable conduct." *Id.* at 701.

The third relates to allocation of the burden of proof. *Id.* In applying these principles, courts distinguish between insider and non-insider claimants in the severity of misconduct to be shown and the degree of scrutiny of the claimant's actions. *In re Paolella*, 161 B.R. at 117.

> The burden and sufficiency of proof required are not uniform in all cases. Where the claimant is an insider or a fiduciary, the trustee bears the burden of presenting material evidence of unfair conduct. Once the trustee meets his burden, the claimant then must prove the fairness of his transactions with the debtor or his claim will be subordinated. If the claimant is not an insider or fiduciary, however, the trustee must prove more egregious conduct such as fraud, spoliation or overreaching, and prove it with particularity.

*Id.* (quoting *In re N & D Properties, Inc.*, 799 F.2d 726, 731 (11th Cir. 1986) (other citations omitted)); *accord In re Mobile Steel Co.*, 563 F.2d at 701-02. On the other hand, when dealing with non-insiders, no burden shifting framework is used. Instead, the proponent of subordination always bear the burden of proof. *See* 4 COLLIER ON BANKRUPTCY ¶ 510.05 n.63 (citing *80 Nassau Assocs. v. Crossland Fed. Sav. Bank (In re 80 Nassau Assocs.)*, 169 B.R. 832, 840 n.5 (Bankr. S.D.N.Y. 1994).

Whether a claimant constitutes an insider is a question of fact and law governed by 11 U.S.C. § 101(31) (2007). *In re Winstar Commc'ns, Inc.*, 554 F.3d 382, 394-95 (3d Cir.

2009); *In re Nutri/System Assocs.*, 178 B.R. at 657. In the instant matter, the term "insider" is

defined as:

> (B)    if the debtor is a corporation —
>
>> (i)      director of the debtor;
>> (ii)     officer of the debtor;
>> (iii)    person in control of the debtor;
>> (iv)    partnership in which the debtor is a general partner;
>> (v)     general partner of the debtor; or
>> (vi)    relative of a general partner, director, officer, or
>>           person in control of the debtor;
>
> . . . .
>
> (E)    affiliate, or insider of an affiliate as if such affiliate were the
>           debtor. . . .

11 U.S.C. § 101(31) (2007).

"[A] non-insider creditor will be held to a fiduciary standard only where his ability to

command the debtor's obedience to his policy directives is so overwhelming that there has been, to

some extent, a merger of identity." *In re Paolella*, 161 B.R. at 117. "[C]ases subordinating

the claims of creditors that dealt at arm's length with the debtor are few and far between." *Id.*

(quoting *Kham & Nate's Shoes No. 2, Inc. v. First Bank*, 908 F.2d 1351, 1356 (7th Cir. 1990)).

Courts struggle to articulate the required misconduct to subordinate the claims of a non-

insider of the debtor, concluding such conduct much clearly be "gross or egregious." *In re

Paolella*, 161 B.R. at 117 (citing BENJAMIN WEINTRAUB & ALAN N. RESNICK, BANKRUPTCY

LAW MANUAL ¶ 5.15 (3d ed. 1992); *see also In re Osborne*, 42 Bankr. at 997)); *In re Dry Wall

Supply, Inc.*, 111 Bankr. 933, 938 (D. Colo. 1990). The nature of the conduct must involve

"moral turpitude or some breach of duty or some misrepresentation whereby other creditors were

deceived to their damage" or as gross misconduct amounting to fraud, overreaching or spoliation.

90

*In re Paolella*, 161 B.R. at 117 (quoting *In re Osborne*, 42 Bankr. at 996); *see In re Teltronics*, 29

Bankr. at 173; *In re Pinetree Partners, Ltd.*, 87 Bankr. 481, 488 (Bankr. N.D. Ohio 1988); *accord*

*In re Mayo*, 112 Bankr. 607, 650 (Bankr. D. Vt. 1990).   Therefore, "[a] mere statement that the

creditor is guilty of 'inequitable conduct' will not suffice."   *In re W.T. Grant*, 4 B.R. 53, 75-76

(Bankr. S.D.N.Y. 1980), *aff'd*, 699 F.2d 599 (2d. Cir. 1983).

  Here, the Trustee alleges inequitable conduct on the part of co-conspirators to the fraud.

Inequitable conduct is alleged either by complicity or by taking advantage of the Debtor after the

defendants had reason to know or were made aware of the Debtor's fraudulent conduct.  In addition,

payments from a Ponzi scheme are presumed fraudulent.  The injury to the remaining creditors and

the unfair advantage are one and the same: those defendants who invested early-on in the

Debtor's scheme or those who demanded payment, generally received payments of their principal

and interest while subsequent investors lost the same.   This Court must pay heed to an

overarching premise of the Bankruptcy Code, equality of creditors.  While there is a split of

authority as to the recoverability of principal investment in this scenario, this split is immaterial

on a motion to dismiss.   Thus, the Trustee's cause of action for equitable subordination survives

the instant motions to dismiss.


  **L.**  **Accounting**

  The Trustee's complaints seek an accounting of payments or transfers made by the Debtor

or its affiliates to the Defendants, prior to the petition date, in connection with the property,

mortgages or obligations at issue as to all counts of the complaints.   The typical requests for

an accounting state as follows:

> The Trustee is entitled to an accounting of all payments or other
> transfers made to the Non-Corporate Lender Defendants prior to the

Petition Date in connection with the Subject Property, the Mortgage or the Obligation, whether made directly by the Debtor, or indirectly through one or more Affiliates.

**WHEREFORE**, Plaintiff hereby demands judgment against the Individual, Non-Corporate Lender Defendants and the Corporate Defendants as follows:

. . . .

Q.      On Count Thirty-Five of the Complaint (Accounting), (i) directing the Non-Corporate Lender Defendant to provide an accounting of all payments or other transfers made to the Non-Corporate Lender Defendants prior to the Petition Date, and of all investments, loans or other transfers made by the
Non-Corporate Lender Defendants to the Debtor either directly or indirectly. . . .

Complaint at 43-44, 49, *Forman v. Nat'l City Mortg. Co.* (*In re NJ Affordable Homes Corp.*), No.

06-2947 (Bankr. D.N.J. Nov. 10, 2006).

The Trustee is entitled to an accounting of all payments or other transfers made to the Defendants prior to the Petition Date in connection with the Property, the Mortgages, or the Obligations.

**WHEREFORE**, the Trustee hereby demands judgment against the Defendants as follows:

. . . .

J.      On Count Sixteen (Accounting), (i) directing the Defendants to provide an accounting of all payments or other transfers made to the Defendants prior to the Petition Date, and of all investments, loans or other transfers made by the Defendants to the Debtor. . . .

Complaint at 26, 28, *Forman v. Chaudhuri* (*In re NJ Affordable Homes Corp.*), No. 06-2740

(Bankr. D.N.J. Sept. 27, 2006).

The Defendants argue that an action for an equitable accounting requires an implied or express contractual obligation, fiduciary duty, or trust relationship.   *See Onderdonk v. Presbyterian Homes of N.J., Inc.*, 85 N.J. 171 (N.J. 1981).   The Trustee argues, however, that this count does not seek relief under the doctrine of "equitable accounting" as discussed in *Onderdonk*.   "Rather, the Trustee is seeking an accounting of funds invested and repaid as a compliment to his fraudulent transfer causes of action."   (Br. Chapter 7 Trustee Opp'n Mots. Dismiss at 57, Jan. 12, 2007, ECF No. 2126).   To provide the accounting sought, as to all counts of the complaints, the Trustee relies upon New Jersey Statutes Annotated section 25:2-29(a)(3)(c) (West 2007).

> a.    In an action for relief against a transfer or obligation under this article, a creditor, subject to the limitations in [N.J. STAT. ANN. §] 25:2-30 [(West 2007)], may obtain:
>
> . . . .
>
> (3)    Subject to applicable principles of equity and in accordance with applicable rules of civil procedure,
>
> . . . .
>
> > (c)    Any other relief the circumstances may require.

N.J. STAT. ANN.  §  25:2-29(a)(3)(c).   Therefore, the Trustee seeks an accounting that is statutory in nature, as New Jersey Statutes Annotated section 25:2-29(a)(3)(c) is governed by "applicable principles of equity."

Dismissal under Federal Rule of Civil Procedure 8(a) is reserved for complaints that are so ambiguous or otherwise unintelligible that their true substance is disguised.   *See In re DVI, Inc.*, 326 B.R. at 306 (quoting *Kittay*, 230 F.3d at 541).   If a court can understand the allegations and

93

determine that they state a claim for relief, the complaint satisfies Rule 8.  *Id.*  The Trustee's complaints clearly state the relief of an accounting of pre-petition payments or transfers made by the Debtor or its affiliates to the Defendants, relating to the property, mortgages or obligations at issue.  Therefore, the Trustee's cause of action seeking an accounting survives the instant motions to dismiss.

### 1.    Abandonment

Section 554 of the Bankruptcy Code governs a trustee's abandonment power and states as follows:

> i.    After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
>
> ii.    On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
>
> iii.    Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.
>
> iv.    Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

11 U.S.C. § 554 (2007).

The abandonment power permits a trustee to rid the bankruptcy estate of burdensome assets as well as those of inconsequential value and benefit.  *See City of N.Y. v. Quanta Res. Corp. (In re Quanta Res. Corp.)*, 739 F.2d 912, 915 (3d Cir. 1984) (questioned on other grounds). Abandonment also protects bankruptcy estate assets against diminution.  *Id.*  "Courts are in agreement that fully encumbered assets are unlikely to benefit the estate."  *Staiano v. Cain (In re Lan Assocs. XI, L.P.)*, 192 F.3d 109, 119 (3d Cir. 1999) (citations omitted).

However, abandonment of estate assets is neither automatic nor required in the face of alleged liens. Instead, "the trustee must ascertain the property's fair market value and the amount and validity of the outstanding liens against the property." *N.J. Dept. of Envtl. Prot. v. Nat'l Smelting of N.J., Inc. (In re Nat'l Smelting of N.J., Inc.)*, 49 B.R. 1012, 1014 (D. Colo. 1985) (citing *In re Brannan*, 5 B.R. 505, 507 (D.V.I. 1980) (other citation omitted)); *McGahren v. First Citizens Bank & Trust Co. (In re Weiss)*, 111 F.3d 1159, 1167 (4th Cir. 1997), *cert. denied*, 522 U.S. 950 (1997) (quoting *In re Nat'l Smelting of N.J., Inc.*, 49 B.R. at 1014).

> The debtor's interest under state law may be subject to competing claims to title or interests of third parties in the property. Abandonment was not intended as a process to determine and resolve conflicts regarding who has title to the abandoned property or the validity of competing liens or other interests of third parties in the property. The determination of competing claims to the abandoned property must be made either by the state courts after abandonment, or by adversary proceeding procedure under [Federal Rule of Bankruptcy Procedure] 7001.

*In re Pilz Compact Disc, Inc.*, 229 B.R. 630, 639 (Bankr. E.D. Pa. 1999) (quoting 3 NORTON BANKRUPTCY LAW & PRACTICE 2d, § 53.1, at 53-2 through 53-4 (1997) (footnotes omitted) (other citations omitted)).

> Neither the Bankruptcy Code nor Federal Rule of Bankruptcy Procedure 6007 specifies the time in which the trustee must act to abandon. The trustee must ascertain the property's fair market value and the amount and validity of the outstanding liens against the property.

5 COLLIER ON BANKRUPTCY ¶ 544.02 (Alan N. Resnick & Henry J. Sommer eds.,15th ed. rev.).

Undoubtedly, a "trustee should immediately abandon fully secured property or uninsured property of no value to the estate." HANDBOOK FOR CH. 7 TRS. § 8-3 (2006); 2 U.S. TR. MANUAL § 2.5.4 (2000). In determining value to the bankruptcy estate, a Chapter 7 trustee must

consider the "amount, validity and perfection of purported security interests against such property." *Id.* In so doing, a trustee has the duty to bring an avoidance action if it would likely benefit the bankruptcy estate. *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003) (citation omitted). Indeed, "to the extent a purported lien is invalid or could be avoided by the trustee, the property should not be abandoned if the value thereof without the lien would benefit the estate." HANDBOOK FOR CH. 7 TRS. § 8-3 (2006); 2 U.S. TR. MANUAL § 2.5.4 (2000).

The Defendants argue that because the properties are oversecured, the Trustee must abandon them at this time. This argument puts the cart before the horse. The purpose of the vast majority of the Trustee's adversary complaints is to avoid the liens or mortgages against the properties and in liquidation create a pool of funds to be used for equitable distribution to creditors. The benefit to the bankruptcy estate is a larger pool of assets to pay creditors. On the instant motions to dismiss, the Trustee benefits from the assumed truth of his allegations. *See Fagin*, 432 F.3d at 281. Given this posture and the discussion of the Trustee's surviving causes of action throughout this Opinion, the Trustee's avoidance actions will likely benefit the estate. *See Chinery*, 330 F.3d at 568. The Court will not compel the Trustee to abandon the properties at this juncture.

### 2.    Failure To Join An Indispensable Party

Federal Rule of Civil Procedure 12(b)(7), made applicable in adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7012, governs on a motion to dismiss. Dismissal of an adversary proceeding for failure to join an indispensable party is governed by Federal Rule of Civil

Procedure 19, made applicable in adversary proceedings pursuant to Federal Rule of Bankruptcy

Procedure 7019.   *See* FED. R. CIV. P. 12(b)(7).

       i.    A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction of the action must be joined as a party if: (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party.

    . . . .

      ii.    If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

FED. R. CIV. P. 19.[9]

---

[9] The quoted language represents Rule 19 as it appeared when the motions were filed. The language of Rule 19 was subsequently amended as part of the general restyling of the Civil Rules for the purpose of clarity and consistency. The changes were stylistic and have no material effect on the substance of the Rule.

Rule 19 clearly establishes a staged analysis for compulsory joinder. First, the Court must determine whether an entity is necessary, as enumerated in Rule 19(a). Second, the Court must determine whether the entity can be made a party. If not, the Court must decide whether the proceeding may continue, or in the alternative be dismissed, using the factor analysis enumerated in Rule 19(b).

The purpose of joinder rules is to promote both the public and judicial interest in trial convenience, expeditious settlement of controversies, and prevent duplicative as well as inconsistent judgments. *See Massaro v. Bard Access Sys.*, 209 F.R.D. 363, 365 (E.D. Pa. 2002) (citation omitted). While typically joined, "[a] defendant's right to contribution or indemnity from an absent . . . party does not render that absentee indispensable pursuant to Rule 19." *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 844 F.2d 1050, 1054 (3d Cir. 1988) (citation omitted).

The Defendants claim to be harmed by the Amended PIO Order, which prevents suit against the Debtor, Mr. Puff, their affiliated entities, and Mr. Puff's relatives, including Kyu Nam Park, Gary Puff and Bruce Puff. This restriction includes counter-claims, cross-claims and third-party claims. Due to their inability to prosecute their claims against these absentee parties, they allege that the Trustee's adversary complaints are subject to dismissal for failure to join the same. Specifically, the Defendants argue that multiple absentee parties are necessary and indispensable, including, but not limited to: (i) the Debtor, (ii) Wayne Puff, (iii) one or more of the Debtor's affiliates, (iv) the closing attorneys for loans and purchases on the properties, (v) the appraisers who overvalued the properties, and (vi) the agents and/or brokers who handled the loan applications.

In opposition, the Trustee points out that absentees against whom third-party claims would be brought are not *de facto* indispensable.   In addition, the Trustee alleges that there is no risk of inconsistent judgments or multiple obligations because the Trustee is the only entity authorized to pursue the avoidance actions and 11 U.S.C. § 541 claims.   Lastly, the Trustee points out that the addition of these absentees would not affect relief requested by the Trustee and that the Defendants may instead (or in some cases already have) mitigate by commencing separate actions against the absentees.

The Trustee's points are well taken.   The instant litigation affords the Trustee relief and joinder of third parties is not always necessary, albeit customary.   Joinder here, in the Court's view, will not serve the purpose suggested by Defendants.   To the extent of their damages, they may look to third parties in separate litigations.   For these reasons, joinder is denied

### M.       More Definite Statement

The Defendants next argue that the Trustee's: (i) wholesale re-incorporation of facts and allegations into all counts of the complaints is in direct violation of Federal Rule of Civil Procedure 8(a)(2); (ii) use of compound sentences and multiple sentences per numbered paragraph contradicts the mandate of Federal Rule of Civil Procedure 10(b); and (iii) use of ambiguous terms and contradictory allegations, re-incorporated into counts of the complaints, require a more definite statement under Federal Rule of Civil Procedure 12(e).

The Trustee responds that the complaints are not in violation of Rule 8(a)(2) as he "has alleged, in painstaking detail, [Wayne] Puff's operation of [the Debtor] as a Ponzi scheme and its ultimate downfall.   The Complaints describe the involvement and/or benefit that the Corporate, Non-Corporate Lender, and Individual Defendants had and derived from this web of fraud." (Br.

99

Chapter 7 Trustee Opp'n Mots. Dismiss at 59, Jan. 12, 2007, ECF No. 2126). Instead, a simple set of facts controls the Trustee's duties as to affirmative causes of action. The Debtor operated as a Ponzi scheme, made transfers or payments out of the Ponzi scheme, which were an essential part of the Ponzi scheme, and which were received by the Defendants. *Id.* The remaining allegations, while relevant, are not required to state an affirmative cause of action. *Id.* In the alternative, the Trustee argues that if this Court looks upon the complaints as shotgun pleadings, that finding alone does not constitute cause for amendment. *Id.* at 60.

"Rule 8's liberal pleading principles do not permit dismissal for failure in a complaint to cite a statute, or to cite the correct one . . . . Factual allegations alone are what matters." *In re DVI, Inc.*, 326 B.R. at 309 (quoting *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004)). Neither a difficulty in understanding the complaint, nor the inclusion of irrelevant facts i s sufficient to require dismissal. *See In re DVI, Inc.*, 326 B.R. at 309. The Court agrees that the numerous paragraphs of factual allegations providing the Defendants with a firm overview of the Debtor's fraud sufficiently detail the alleged Ponzi scheme to satisfy the Rule 8 notice pleading standard. Here, the Trustee has re-incorporated and re-alleged each fact of the complaint in each of his counts. Each count specifies the relief sought. Neatly stated, the Trustee has notified the Defendants of each and every variation of the Debtor's fraudulent schemes and the legal claims springing therefrom. The Defendants alone are aware of their exact and specific involvement in those schemes. The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2) is satisfied.

The Defendants next argue that the Trustee has failed to satisfy the pleading requirements of Federal Rule of Civil Procedure 10(b).

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b).

A determination of what constitutes a "single set of circumstances" is fully dependent on the nature of the litigation and turns upon the basic objective of Rule 10, namely the composition of a lucid pleading.    *See Gibbons ex rel. U.S. v. Kvaerner Phila. Shipyard, Inc.*, 2006 U.S. Dist. LEXIS 5172, *24 (E.D. Pa. Feb. 10, 2006) (quoting 5A FEDERAL PRACTICE AND PROCEDURE § 1322 (3d ed. 2004)); *Folkman v. Roster Fin. LLC*, 2005 U.S. Dist. LEXIS 18117, *10 (D.N.J. Aug. 16, 2005) (quoting 5A FEDERAL PRACTICE AND PROCEDURE § 1324 (3d ed. 2004) (citing *Anderson v. Dist. Bd. of Trs. of Cent. Fl. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)). Lengthy factual paragraphs do not necessitate amendment under Rule 10(b).    *See Gibbons ex rel. U.S.*, 2006 U.S. Dist. LEXIS 5172 at *24-25.

A court may require the plaintiff to re-plead where: (i) multiple claims are alleged; (ii) the claims stem from separate transactions or occurrences; and (iii) separate statements will facilitate clarity of presentation.    *See Thomas v. Luzerne Cnty. Corr. Facility*, 310 F. Supp. 2d 718, 721 (M.D. Pa. 2004); *Folkman*, 2005 U.S. Dist. LEXIS 18117 at *10 (citations omitted).    Cause for amendment may lie when a complaint is brought against distinct defendants and separate statements as to each defendant would be particularly helpful in ascertaining individualized claims.    *See Folkman*, 2005 U.S. Dist. LEXIS 18117 at *10-11 citing (5A FEDERAL PRACTICE AND PROCEDURE § 1324 (3d ed. 2004) (citing *Barnard v. Pa. Range Boiler Co.*, 32 F.R.D. 58, 59 (E.D. Pa. 1962) (citing *Coral Gables, Inc. v. Skehan*, 47 F. Supp. 1 (D.N.J. 1942) (other citations

omitted)))). However, "[w]here the essence of the complaint against multiple defendants is a scheme, plan or course of conduct, [Rule] 10(b) does not require that each claim against each defendant be stated separately merely because all of the defendants may not be involved in each transaction or occurrence." *Thomas*, 310 F. Supp. 2d at 721 (citations omitted).

The Trustee has divided the requisite facts into numbered paragraphs. While some paragraphs are lengthy in nature, their consistency is due to the complexity of the adversary complaints and the alleged Ponzi scheme. It is evident that the Trustee has made a concerted effort to focus the paragraphs as much as practicable. The paragraphs clearly deal with factual sub-plots. Where lengthy or complex, or both, the Trustee has divided the numbered paragraphs into separate and itemized sub-paragraphs to facilitate comprehension. Notably, the Trustee is an outsider to these transactions. From this position, given the scope, complexity, and disorganization of the Debtor's and its affiliates' financial records, the Trustee is forced to plead generally. Even in doing so, he separates claims into individual counts and divides the Defendants into classes, making allegations against each group as necessary. Despite the obvious point that each Defendant was involved in individualized transactions or occurrences, at their base, the Trustee's allegations are based upon a general scheme to defraud, to which he alleges all Defendants were complicit. Therefore, the Trustee's complaints are in compliance with Federal Rule of Civil Procedure 10(b) as no clarity of presentation would be gained by amendment.

The final issue then becomes whether the requested relief of a more definite statement should issue pursuant to Federal Rule of Civil Procedure 12(e).

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If

the court orders a more definite statement and the order is not
obeyed within 14 days after notice of the order or within the time
the court sets, the court may strike the pleading or issue any other
appropriate order.

FED. R. CIV. P. 12(e).

A court has discretion in deciding whether to require a more definite statement. *Clark v.
McDonald's Corp.*, 213 F.R.D. 198, 232 (D.N.J. 2003) (citing *Page Steel & Wire Co. v. Blair
Eng'g Co.*, 22 F.2d 403, 407 (3d Cir. 1927) (bill of particulars context) (other citations omitted)).

Compliance with the short and plain statement requirement of Rule 8(a)(2) as well as
successfully stating a claim upon which relief can be granted under Rule 12(b)(6) does not insulate
a pleading from a motion for a more definite statement. *Clark*, 213 F.R.D. at 233. It is the
purpose of Rule 12(e) to require enhanced specificity when an improper Rule 8(a)(2) pleading
leaves a defendant unable to properly form a responsive pleading to an otherwise legally
sufficient complaint. *Id.* However, a Rule 12(e) amendment is used in the "strictest necessity," so
as not to permit "barristerial shadow boxing" by imposition of unnecessarily heightened pleading
standards over and above Rules 8(a)(2) and 12(b)(6). *Id.* (quoting *Lincoln Labs., Inc. v. Savage
Labs., Inc.*, 26 F.R.D. 141, 142 (D. Del. 1960) (other citation omitted)).

Courts in the Third Circuit grant a Rule 12(e) motion "when the pleading is 'so vague or
ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without
prejudice to [itself].'" *Clark*, 213 F.R.D. at 232-233 (quoting *Sun Co., Inc. (R&M) v. Badger
Design & Constructors, Inc.*, 939 F. Supp. 365, 368 (E.D. Pa. 1996) (quoting 5A FEDERAL
PRACTICE & PROCEDURE § 1376 (1990)).

Amendment for a more definite statement should issue when the complaint is "not
sufficiently specific" such that a responsive pleading might omit a waivable defense or, when in the

103

absence of information within the command of the plaintiff, a defendant cannot respond with a

general denial or disclaimer of knowledge.  *Clark*, 213 F.R.D. at 233 (citing L*understadt v.*

*Colafella*, 885 F.2d 66, 68-69 (3d Cir. 1989) (waivable defense); *Lincoln Labs., Inc. v. Savage Labs.,*

*Inc.*, 26 F.R.D. 141, 143 (D. Del. 1960) (general denial)).

> [However, motions] for a more definite statement are also an
> appropriate vehicle to pare down 'shotgun' pleadings. By requiring
> more definiteness, issue may be joined on particular claims, discrete
> defenses can be interposed in discrete fashion, and the litigation may
> be made more manageable, through more controlled discovery, to the
> benefit of the litigants and the district court alike.

*Clark*, 213 F.R.D. at 233 (citing *Anderson*, 77 F.3d at 366-67; *Byrne v. Nezhat*, 261 F.3d 1075,

1128-34 (11th Cir. 2001); *but cf. Microtron Corp. v. Minn. Mining & Mfg. Co.*, 269 F. Supp. 22, 26

(D.N.J. 1967)).

> The typical shotgun complaint contains several counts, each one
> incorporating by reference the allegations of its predecessors, leading
> to a situation where most of the counts (i.e., all but the first) contain
> irrelevant factual allegations and legal conclusions. Consequently, in
> ruling on the sufficiency of a claim, the trial court must sift out the
> irrelevancies, a task that can be quite onerous.

*OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*, 340 B.R. 510,

525 n.4 (Bankr. D. Del. 2006) (quoting *In re DVI, Inc.*, 326 B.R. at 309 (Bankr. D. Del. 2005)

(quoting *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th

Cir. 2002)).

Here, the relief sought by the Trustee in all the Complaints is premised on the existence

of the "Ponzi" scheme and the transfers made out of the "Ponzi" scheme, which were a critical

component for perpetuating the "Ponzi" scheme.  In other words, the Trustee has alleged, in

detail, a "Ponzi" scheme perpetrated by the Debtor, its affiliates, and its principal, and how it

leads to their downfall.   Furthermore, the Complaints describe the involvement and/or benefit

that the Corporate, Non-Corporate Lender, and Individual Defendants had derived from the

scheme.   The complex nature of the fraudulent "Ponzi" scheme in this case, as alleged in the

Complaints, renders the notion of limiting paragraphs to a single, non-compound sentence,

virtually impossible and certainly impracticable.

## 1.      Attorneys' Fees

Federal Rule of Bankruptcy Procedure 7008(b) provides that "[a] request for an award of

attorney's fees shall be pleaded as a claim in a complaint, cross-claim, third-party complaint, answer,

or reply as may be appropriate."   *See also* 10 COLLIER ON BANKRUPTCY ¶ 7008.07 (Alan N.

Resnick & Henry J. Sommer eds.,16th ed. rev.) ("This section requires a party seeking an award of

attorney's fees to plead as a claim the basis of such relief, together with a demand for judgment for

that relief").   Federal Rule of Civil Procedure 10(b), made applicable in adversary

proceedings pursuant to Federal Rule of Bankruptcy Procedure 7010, requires all averments

of a claim to be made in numbered paragraphs.    In addition, as stated in Federal Rule of Civil

Procedure 9(g), made applicable in adversary proceedings pursuant to Federal Rule of

Bankruptcy Procedure 7009, "[i]f an item of special damage is claimed, it must be stated."

"Claims for attorney fees are items of special damage which must be specifically pleaded under

Federal Rule of Civil Procedure 9(g).    In the absence of allegations that the pleader is entitled to

attorney's fees, therefore, such fees cannot be awarded."   *Maidmore Realty Co. v. Maidmore

Realty Co.*, 474 F.2d 840, 843 (3d Cir. 1973) (non-bankruptcy foreclosure action) (citing *W. Cas.

& Sur. Co. v. Sw. Bell Tel. Co.*, 396 F.2d 351, 356 (8th Cir. 1968)).   "Rule 9(g) does not require

that the amount of special damages be pleaded, but only that the kind of special damages be

specified." *United Ins. Co. v. B. W. Rudy, Inc.*, 42 F.R.D. 398, 405 (E.D. Pa. 1967) (quoting 2A

JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 9.08 (Matthew Bender 3d ed.)

(hereinafter "MOORE'S FEDERAL PRACTICE 3d")).

The Trustee cites *In re King's Place, Inc.* for the proposition that the insertion of a demand

for attorneys' fees in an *ad damnum* clause is sufficient for purposes of Federal Rule of Bankruptcy

Procedure 7008.   *In re King's Place, Inc.*, 6 B.R. 305, 309 (Bankr. E.D. Pa. 1980).   However, *In

re King's Place, Inc.* was decided prior to August 1, 1983, the effective date of Rule 7008(b).

On the contrary, the Defendants point the Court to *In re Odom*, which specifically held that

failure to demand attorneys' fees in a claim was insufficient under Rule 7008(b).   *In re Odom*,

113 B.R. 623, 625 (Bankr. C.D. Cal. 1990).   Notably, however, the comment upon which *In re

Odom* relied — "[i]t is not sufficient under Rule 7008(b) to include the request for attorney fees in

the prayer" for relief — was subsequently eliminated from the Rule 7008 comments.   *Compare*

FED. R. BANKR. P. 7008 eds. cmt. (2005), *with* FED. R. BANKR. P. 7008 (2006).   While this arguably

indicates a trend towards decreased formality in pleading attorneys' fees as special damages, the

principle enunciated in Rule 7008(b) and supported by *In re Odom* remains the law.

The Defendants then cite *In re Odom* for the incomplete proposition that any failure to plead

attorneys' fees bars their recovery.   However, Defendants are incorrect in that a failure to meet

the pleading requirements after requesting attorneys' fees does not bar recovery, while failure to

timely request attorneys' fees does bar their recovery unless an exception to the American Rule

exists. *See V. M. v. S. S. (In re S.S.)*, 271 B.R. 240 (Bankr. D.N.J. 2002) (non-dischargeability

action); *see also Maidmore Realty Co.*, 474 F.2d at 843.   Instead, liberal amendment of the

complaint is a remedy for a violation of Rule 9(g), and in effect Rule 7008(b).   *See Maidmore

Realty Co.*, 474 F.2d at 843.   Here, the Trustee does not contest that the prayers throughout all

106

of the adversary complaints are found solely within the *ad damnum* clauses to counts of those

complaints. Therefore, this Court must determine whether the Trustee also violated the

specificity requirement of Rule 9(g) and whether leave to amend is warranted.

> [I]n order to substantiate a cause of action, it should not be alleged
> generally that plaintiff has suffered special damage. There must be
> precisely alleged what special damage resulted from the act alleged
> to have caused the harm. Nevertheless, so long as 'the nature of the
> damages' is clear, no exhaustive list of special damages in detail is
> required. Normally, if a complaint alleges special damages without
> specifically stating what those damages are, a defendant should move
> for a definite statement; in the absence of such a motion, the
> defendant may be held to have waived the requirement of Rule 9(g).

10 COLLIER ON BANKRUPTCY ¶ 7009.08 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

In support of the requirements for pleading special damages, Collier's cites the passage from

Moore's Federal Practice referred to in *In re King's Place, Inc.*

> Itemization, however, is not required beyond the point at which it
> becomes too evidentiary. Further, if injuries are of a nature as to
> preclude precise allegations as to the amount of special damages at
> the time of the initial pleading, relief will not be denied simply
> because the damage or loss computation or manner of proof was not
> alleged with certainty. In these instances, it will be sufficient for a
> claimant to state the general nature of the special damages, in
> anticipation that the damage issue will be further explored in
> discovery.

10 COLLIER ON BANKRUPTCY ¶ 7009.08 n.1 (quoting 2A MOORE'S FEDERAL PRACTICE

3d 9.08[1][b] (internal footnotes omitted)).

Allegations of special damages must be sufficient to provide notice to a defending party and

permit them to prepare a defense. 2A JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE

§ 9.08[1][b] (4th ed. 2004)). Because the purpose of Rule 9(g) is notice, the more natural the

damages are in connection to the cause of action, the less particularity is needed. *Id.* "Once

items are deemed special damages, an indispensable allegation in a demand for relief is at least a

general statement of the causes giving rise to the special damages. Special damages should be set forth in an itemized form rather than in a lump sum." *Id.* (citations omitted).

Here, the Trustee may amend his pleadings by leave of court. *See* Fed. R. Civ. P. 15(a). "[L]eave shall be freely given when justice so requires." *Id.* The Federal Rules of Civil Procedure reject the notion that pleading is a technical skill where one misstep by counsel can prove fatal. *See Conley v. Gibson*, 355 U.S. 41, 48 (1957) (citation omitted). Instead, pleading merely facilitates proper decision upon the merits of claims. *Id.*

The Trustee is granted leave to insert explanations of why attorneys' fees are warranted into the complaints.

## IV.    Conclusion

For any and all of the foregoing reasons, and in the context of the consolidated motions to dismiss, this Court holds that: (i) the Trustee may amend the Complaints to provide explanation for his requests of attorney's fees, if he so elects; and (ii) the remaining arguments set forth in the consolidated motions to dismiss are all overruled and denied.

An Order in conformance with this Opinion has been entered by the Court and a copy is attached hereto.

*s/ Donald H. Steckroth*

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: November 8, 2013

108